## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

FATMA MAROUF and BRYN ESPLIN, a
married couple,
1060 Cotton Depot Lane #640,
Fort Worth, TX 76102;

*Plaintiffs*,

v.

ALEX AZAR, in his official capacity as
Secretary of the UNITED STATES
DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
200 Independence Avenue, S.W.,
Washington, D.C. 20201;

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
200 Independence Avenue, S.W.
Washington, D.C. 20201;

STEVEN WAGNER, in his official
capacity as Acting Assistant Secretary for
the ADMINISTRATION FOR
CHILDREN AND FAMILIES,
330 C Street, S.W.,
Washington, D.C. 20201;

ADMINISTRATION FOR CHILDREN
AND FAMILIES,
330 C Street, S.W.,
Washington, D.C. 20201;

SCOTT LLOYD, in his official capacity as
Director of the OFFICE OF REFUGEE
RESETTLEMENT,
330 C Street, S.W.,
Washington, D.C. 20201;

Civil Action No. 1:18-cv-378

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND
MONETARY DAMAGES

OFFICE OF REFUGEE                               )
RESETTLEMENT,                                   )
330 C Street, S.W.,                             )
Washington, D.C. 20201; and                     )
                                                )
UNITED STATES CONFERENCE OF                     )
CATHOLIC BISHOPS, a non-profit                  )
corporation,                                    )
3211 Fourth Street, N.E.,                       )
Washington, D.C. 20017                          )
                                                )

                        *Defendants.*

─────────────────────────────────────

## **Introduction**

1.      Plaintiffs Fatma Marouf and Bryn Esplin bring this action seeking declaratory and injunctive relief and monetary damages against Alex Azar, in his official capacity as Secretary of the United States Department of Health and Human Services; United States Department of Health and Human Services; Steven Wagner, in his official capacity as Acting Assistant Secretary for the Administration for Children and Families; Administration for Children and Families; Scott Lloyd, in his official capacity as Director of the Office of Refugee Resettlement; and Office of Refugee Resettlement (together, "Federal Defendants") for unlawful funding of certain child welfare organizations that perform federal taxpayer-funded services relating to unaccompanied refugee children[1] in federal care and custody in a manner that impermissibly discriminates against same-sex couples who are prospective foster and adoptive parents. The organizations use religious doctrine regarding same-sex relationships to exclude such couples categorically from applying to be foster parents. By enabling federal taxpayer-funded child welfare services, for children in federal care and custody, to be performed in reliance on such doctrine, Federal Defendants are depriving children of the opportunity to be placed in eligible homes that serve their best interests. Federal Defendants are also impermissibly denying eligible foster and adoptive parent applicants, such as Plaintiffs, the opportunity to provide loving homes to children in need on account of

---

[1]      Plaintiffs use the term "unaccompanied refugee children" to refer to children served under either the Unaccompanied Refugee Minor Program or the Unaccompanied Alien Children Program.

the organizations' religious beliefs regarding the applicants' sexual orientation and sex and the same-sex character of their marriage. Federal Defendants' actions are contrary to the best interests of children, whose welfare Federal Defendants are charged with protecting, and violate the United States Constitution.

## Jurisdiction and Venue

2.      This case arises under the Constitution of the United States, and presents federal questions within this Court's jurisdiction pursuant to 28 U.S.C. § 1331.

3.      This Court has jurisdiction to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and the inherent equitable powers of the Court.

4.      Venue is proper in this District because:

- pursuant to 28 U.S.C. § 1391(b)(1), Defendant United States Conference of Catholic Bishops is an entity incorporated under the laws of the District of Columbia with its principal place of business in the District of Columbia, and the remaining Defendants are officers or employees of an agency of the United States in their official capacities or agencies of the United States; and

- pursuant to 28 U.S.C. § 1391(b)(2), Defendants conduct a continuous and systematic portion of their business in this District, where a substantial part of the events giving rise to the claims,

including the unlawful administration of federal funds by Federal Defendants, occurred.

## Parties

5.     **Plaintiffs Fatma Marouf ("Fatma") and Bryn Esplin ("Bryn")**, both women, are a married lesbian couple. Plaintiffs are residents of Fort Worth, Texas, and federal taxpayers. Their taxpayer dollars contribute to the administration of federal child welfare programs, including those at issue in this action. In accordance with the United States Constitution, Plaintiffs object to paying for federally funded child welfare services that are provided in a discriminatory manner, based on religious principles to which they do not subscribe, that fail to serve the best interests of children.

6.     Plaintiffs suffered the additional harms alleged in this Complaint when organizations receiving federal funds denied them the opportunity to be foster parents on the basis of the organizations' religious beliefs regarding their sexual orientation and sex and the same-sex character of their marriage. Federal Defendants enabled such discrimination against Plaintiffs.

7.     Plaintiffs bring suit against **Defendant Alex Azar** in his official capacity as Secretary of the United States Department of Health and Human Services. In that capacity, Defendant Azar oversees the United States Department of Health and Human Services.

8.     Plaintiffs bring suit against **Defendant United States Department of Health and Human Services ("HHS")**, which is headquartered in the District

of Columbia, and is charged with enhancing and protecting Americans' health and well-being via the provision of health and human services. HHS is the federal agency that is responsible for overseeing the Office of Refugee Resettlement's functions and responsibilities involving the care and custody of children under the Unaccompanied Refugee Minor ("URM") Program and the Unaccompanied Alien Children ("UC") Program.

9.      Plaintiffs bring suit against **Defendant Steven Wagner** in his official capacity as Acting Assistant Secretary for the Administration for Children and Families. In that capacity, Defendant Wagner oversees the Administration for Children and Families.

10.     Plaintiffs bring suit against **Defendant Administration for Children and Families ("ACF")**, which is headquartered in the District of Columbia, and is the division of HHS that is responsible for implementing certain human services programs, including those focused on fostering the economic and social welfare of youth and families, such as the URM Program and the UC Program administered by ORR.

11.     Plaintiffs bring suit against **Defendant Scott Lloyd** in his official capacity as Director of the Office of Refugee Resettlement. In that capacity, Defendant Wagner oversees the Office of Refugee Resettlement.

12.     Plaintiffs bring suit against **Defendant Office of Refugee Resettlement ("ORR")**, which is headquartered in the District of Columbia, and is

the office within ACF that is responsible for the care and custody of children in the UC Program and the URM Program.

13.     Plaintiffs bring suit against **Defendant United States Conference of Catholic Bishops ("USCCB")**, a non-profit organization incorporated in the District of Columbia with its headquarters and principal place of business located in the District of Columbia. USCCB has a legal and financial interest relating to the subject of this action. Disposing of this action in USCCB's absence would necessarily impair the interests it has by virtue of its grants, cooperative agreements, and funding from HHS. Because USCCB is subject to service and its participation will not deprive this Court of subject matter jurisdiction, its joinder pursuant to Federal Rule of Civil Procedure 19(a)(1) is required to permit this Court to accord complete relief among the parties, without exposing Federal Defendants to the risk of inconsistent obligations.

## Factual Allegations

*The Unaccompanied Refugee Minor Program and the Unaccompanied Alien Children Program*

14.     The federal government currently cares for thousands of unaccompanied refugee children, many of whom are fleeing violence.

15.     Federal Defendants administer the URM Program, which provides for the care of children who are under the age of 18, unaccompanied by an adult, and any of the following: refugees, entrants, asylees, victims of trafficking, certain minors with special immigrant juvenile status, or U visa holders.

5

16. Federal Defendants also administer the UC Program, which provides for the care of children who arrive in the United States unaccompanied by a parent or legal guardian, and who lack lawful immigration status in the United States. When such children are apprehended by the United States Department of Homeland Security, they are assigned to the care and custody of ORR.

17. ORR's responsibilities under both programs include awarding and administering grants to and cooperative agreements with child welfare organizations, which can include religiously affiliated organizations, to perform child welfare services on ORR's behalf, and ensuring that such organizations abide by applicable federal laws in providing such federally funded services.

18. Through grants to and cooperative agreements with child welfare organizations, ORR provides services to the children in its custody, including but not limited to shelter, foster care and residential placement, and adoption services. ORR is charged with guaranteeing that the best interests of the children are paramount in implementing its child welfare programs. The child welfare organizations to which ORR awards grants and cooperative agreements are charged with, among other things, matching children in their care with qualified families in accordance with ORR's standards of care.

19. Religiously affiliated organizations are among the providers of federally funded care for children under the URM Program and the UC Program. Although the organizations that receive federal grants and cooperative agreements under these programs may be faith-based organizations, they may not use federal

6

funds to proselytize or for other sectarian purposes, such as restricting access to federally funded child welfare services based on faith-based principles.

20.   ORR has an obligation to ensure that the organizations that receive grants or cooperative agreements to provide federal child welfare services relating to unaccompanied refugee children in its custody do so without discriminating against foster or adoptive parent applicants based on their sexual orientation, their sex, the same-sex character of their marriage, or the religious beliefs of the organizations.

21.   There are more children in the care of Federal Defendants under the URM Program and the UC Program than there are eligible foster or adoptive homes seeking placement or adoption of such children.

22.   There is no valid basis for the government to prefer different-sex couples over same-sex couples when considering or approving would-be foster or adoptive parents or making placement or adoption decisions. The scientific community has reached consensus that children reared by lesbian or gay parents are just as likely to be well-adjusted as children of heterosexual parents. This consensus has been recognized by every major professional organization dedicated to children's health and welfare, including:  the American Academy of Pediatrics, the American Psychological Association, the American Medical Association, the National Association of Social Workers, and the Child Welfare League of America. There is no basis in social science or child welfare principles for categorically barring same-sex spouses from being foster or adoptive parents.

7

23.     When Federal Defendants enable organizations to turn away qualified foster or adoptive parent applicants based on criteria unrelated to child welfare, such as the applicants' sexual orientation or sex or the same-sex character of their marriage, or the religious beliefs of the organizations, the number of potential homes for children is reduced.

24.     Such exclusions that reduce the number of placement or adoption options for children can also result in placing children with less suitable parents who are unable to meet the children's individualized needs, causing harm to children in ORR's custody and care.

*United States Conference of Catholic Bishops*

25.     USCCB, a grantee of ORR, is one of the primary organizations that implements the URM Program and the UC Program on behalf of Federal Defendants. USCCB, through its affiliates and sub-grantees, determines appropriate placements for children under the URM Program and the UC Program, among other responsibilities.

26.     USCCB receives millions of dollars in grants from ORR annually under the URM Program and the UC Program. ORR authorizes USCCB to use those funds to award sub-grants to other organizations, including its sub-grantee, Catholic Charities of Fort Worth ("CCFW"), to perform services for children in the Fort Worth region of Texas under the URM Program and the UC Program.

27.     USCCB is the sole or primary source of funding for CCFW's services for children under the URM Program and the UC Program.

28.     In its URM grant application for the relevant period, USCCB informed ORR that "USCCB must ensure that services provided under this application are not contrary to the authentic teaching of the Catholic Church, its moral convictions, or religious beliefs."

29.     In its UC grant application for the relevant period, USCCB similarly informed ORR that "USCCB must ensure that services provided under this application are not contrary to the authentic teaching of the Catholic Church, its moral convictions, and religious beliefs in an approach that is consistent with the ACF Policy on Grants to Faith-Based Organizations."

30.     USCCB also notified ORR in its UC grant application that it would require sub-grantees to comply with an agreement provision entitled "Catholic Identity," under which sub-grantees:

> must ensure that services provided to those served under this Agreement are not contrary to the authentic teaching of the Catholic Church, its moral convictions, and religious beliefs. Accordingly, [USCCB] expects that the Sub-recipient will provide services under this Agreement within certain parameters including, among other things, that the Sub-recipient will not provide, refer, encourage, or in any way facilitate access to contraceptives or abortion services.

31.     When ORR awarded the URM and UC grants to USCCB for the relevant period, it did not prohibit USCCB from administering the grants based on religious considerations, as set forth in USCCB's grant applications. Nor did ORR implement any other safeguards to prevent USCCB from doing so.

32.     USCCB's URM and UC grant applications for prior periods contained similar statements of intent with respect to religiously motivated administration of

the grants, and ORR similarly did not implement any safeguards to prevent USCCB from carrying out such intent. On information and belief, if unchecked, this pattern will persist.

33.    In numerous contexts, USCCB has publicly objected to providing services to married applicants unless they are in a legal union of one man and one woman. USCCB's website openly advocates against parenting of children by same-sex couples. For example, USCCB Fact Sheets concerning adoption and foster care services, which have appeared on USCCB's website since at least 2013, state that, "[w]hen placing children with couples, Catholic Charities ensures those children enjoy the advantage of having a mother and a father who are married." *Discrimination Against Catholic Adoption Services*, USCCB http://www.usccb.org/issues-and-action/religious-liberty/discrimination-against-catholic-adoption-services.cfm (last visited Feb. 16, 2018).

34.    Another section on USCCB's website entitled "Frequently Asked Questions About the Defense of Marriage" states, and stated at all times during the relevant period, that "[p]lacing a child in the care of two men or two women may be well-intentioned, but ultimately deprives the child of that which best serves his or her interests – a mother and a father." *Frequently Asked Questions About the Defense of Marriage*, USCCB, http://www.usccb.org/issues-and-action/marriage-and-family/marriage/promotion-and-defense-of-marriage/frequently-asked-questions-on-defense-of-marriage.cfm (last visited Feb. 16, 2018).

35.    Additionally, as confirmed by a press release first posted on its website in 2015, USCCB has lobbied for the passage of laws that would allow child welfare organizations that receive federal funds for adoption and foster care services to declare overtly, without fear of adverse governmental action, that, based on their religious beliefs, they permit adoption by, and foster care placement with, only married couples comprising one man and one woman.

36.    When ORR awarded the URM and UC grants to USCCB for the relevant period, it was on notice that USCCB's religious beliefs disfavored same-sex relationships.

37.    Federal Defendants unlawfully use federal taxpayer dollars to finance grants to USCCB to implement the URM Program and the UC Program based on impermissible religious criteria.

38.    Federal Defendants are required to administer grants and cooperative agreements in a manner so as to ensure that federal funding is expended, and associated federal programs are implemented, in accordance with the constitutional guarantees of equality and liberty and the strictures of the Establishment Clause, in addition to applicable statutory and regulatory requirements, including but not limited to those prohibiting discrimination.

39.    HHS requires that no person otherwise eligible be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit-based factors such as sexual orientation, sex, and religion. *See* 45 C.F.R. § 75.300(c) (2018). HHS

11

grantees and sub-grantees, including USCCB and its sub-grantees, must comply with this requirement in the administration of programs supported by HHS awards.

40.    HHS also requires that, in accordance with the Supreme Court decisions in *United States v. Windsor* and *Obergefell v. Hodges*, HHS grantees and sub-grantees, including USCCB and its sub-grantees, must treat as valid the marriages of same-sex couples in the administration of programs supported by HHS awards. *See* 45 C.F.R. § 75.300(d) (2018).

*Fatma and Bryn Seek to Foster an Unaccompanied Refugee Child*

41.    Fatma and Bryn married in 2015 and moved to Texas in 2016. Fatma is a 41-year-old law professor at Texas A&M University Law School and director of its Immigrant Rights Clinic. She was born in California to Egyptian and Turkish immigrant parents. Bryn, age 33, teaches Bioethics at Texas A&M University's School of Medicine. Bryn was born in St. George, Utah and grew up there and later in Las Vegas, Nevada.  The couple's wedding ceremony joyfully wove together customs from their diverse backgrounds and cultures—Fatma being raised Muslim and Bryn, Mormon.

42.    The couple was eager to bring a child into their family. After their wedding, Fatma attempted to get pregnant though reproductive technology. Their attempts were unsuccessful, and the couple began considering other options for bringing a child into their lives.

43.    Fatma became familiar with CCFW through her work at the immigration clinic. The chief executive officer of CCFW sent Fatma a personal

solicitation via e-mail, proposing a stronger relationship between CCFW and Fatma's clinic. To advance that goal, CCFW invited Fatma to tour CCFW's facility, writing that "[i]t would be an honor to host you!" Fatma went on the tour where she learned about CCFW's work with unaccompanied refugee children.

44.   Fatma's visit sparked her and Bryn's shared interest in fostering an unaccompanied refugee child. The couple sought more information from CCFW about their foster care programs and exchanged multiple e-mails with a CCFW employee about the next steps for bringing an unaccompanied refugee child into their home. In those e-mails, Bryn was identified as Fatma's spouse. The couple was thrilled when CCFW scheduled an initial telephone interview for them with the Chair of the Executive Committee of CCFW's Board of Directors, Donna Springer ("Springer").

45.   On or about February 22, 2017, Fatma and Bryn spoke with Springer. Springer described various requirements to become foster parents, as well as the population of children in need of foster homes.  During the call, it became clear to CCFW that Fatma and Bryn are same-sex spouses.

46.   Springer then told Fatma and Bryn that foster parents must "mirror the holy family."  To clarify whether their relationship would be an issue, Fatma explicitly stated that she and Bryn are a same-sex couple.  Springer responded that they did not "qualify" to foster a child.

47.   Shocked by Springer's response, Fatma then asked about lesbian, gay, bisexual, and transgender ("LGBT") children in CCFW's care, because LGBT youth

may qualify for asylum. Springer responded that none of the approximately 700 children that CCFW serves is a member of the LGBT community.

48. On or about that same day, February 22, 2017, the Director of Immigration Services for CCFW recognized Fatma's expertise related to CCFW's immigration work by sending Fatma and two of her colleagues an e-mail inviting them to deliver a "Know Your Rights Presentation" at CCFW on March 4, 2017. Fatma accepted the invitation and gave the presentation. Hundreds of people attended, and the director wrote to Fatma afterward to thank her for the presentation.

49. On or about February 22, 2017, Fatma e-mailed the general e-mail address for ORR to report that CCFW had discriminated against her and her same-sex spouse by informing them that they were not eligible to foster an unaccompanied refugee child because they did not "mirror the holy family." Fatma's e-mail asked whether such conduct was permissible and sought information about alternative organizations that would allow same-sex couples to become foster parents. Fatma did not receive a response to her e-mail until April 14, 2017, when the "ORR team" e-mailed Fatma asking for the names of the individuals at CCFW who "informed [her] that the agency does not license foster families who do not mirror the holy family".

50. Fatma provided the information that ORR requested on May 1, 2017. She received a response on May 2, 2017, which only thanked her for providing the

information. She has since received no further communication from either ORR or CCFW.

51.   By working to ensure that none of the children for which they are responsible are placed in homes of same-sex spouses based on USCCB's religious beliefs, USCCB and its sub-grantees not only discriminate against same-sex spouses, but also effectively erase the non-Catholic identities and beliefs of many of the unaccompanied refugee children for which they are responsible.  This conduct potentially increases those children's alienation and vulnerability, while denying them access to loving homes that could serve them best—all at federal taxpayers' expense.

52.   By working to ensure that none of the children for which they are responsible be placed in homes of same-sex spouses based on USCCB's religious beliefs, USCCB and its sub-grantees also disserve and demean the youth for which they are responsible who are LGBT, stigmatizing them as less deserving and worthy of respect than others, and sending them the message that, when they grow up to form families of their own, they and their families will not have a right to equal treatment in the provision of government services.

53.   Federal Defendants were on notice at the time that they awarded the URM and UC program grants for the relevant period to USCCB that USCCB and its sub-grantees, including CCFW, would administer the grants in a discriminatory manner based on its religious beliefs, including its religious beliefs disfavoring same-sex relationships. Yet Federal Defendants did not implement any safeguards

to prevent USCCB or its sub-grantees, including CCFW, from doing so. As a result, Federal Defendants violated the United States Constitution.

54.     Federal Defendants' failure to remedy the discrimination by USCCB and its sub-grantee in denying Fatma and Bryn the opportunity to foster a child under the URM Program or the UC Program based on impermissible religious considerations, of which they are on notice, compounds their constitutional violation.

## CLAIMS FOR RELIEF

### Count I
### (First Amendment – Establishment Clause)
### U.S. Const. amend I

55.     Plaintiffs reincorporate the foregoing allegations as if fully set forth herein.

56.     Federal Defendants have provided and continue to provide federal taxpayer funds to USCCB and its sub-grantees to provide federal child welfare services for unaccompanied refugee children in the Fort Worth region of Texas under both the URM Program and the UC Program.

57.     USCCB and its sub-grantees apply its own religious criteria in providing these federally funded services when accepting applications from prospective foster and adoptive parents, including religious requirements that discriminate against prospective foster and adoptive parents on account of their sexual orientation and sex and the same-sex character of their marriage.

58.     Federal Defendants were on notice at the time that they awarded the URM and UC grants for the relevant period to USCCB that USCCB and its sub-grantees, including CCFW, would administer the grants in a discriminatory manner based on its religious beliefs, including its religious beliefs disfavoring same-sex relationships.

59.     Federal Defendants failed to implement any safeguards to prevent USCCB or its sub-grantees, including CCFW, from administering the URM and UC grants in a discriminatory manner based on its religious beliefs.

60.     USCCB and its sub-grantee used federal funds provided by Federal Defendants to discriminate against Fatma and Bryn based on USCCB's religious beliefs.

61.     Federal Defendants failed to take any corrective action after Fatma and Bryn notified them that USCCB and its sub-grantee had engaged in sectarian discrimination against Fatma and Bryn under federal programs administered by Federal Defendants.

62.     Federal Defendants have violated and continue to violate the Establishment Clause by enabling, sanctioning, ratifying, and failing to implement adequate safeguards against USCCB's and its sub-grantees' use of federal taxpayer funds for its own sectarian purposes, including categorically excluding certain members of the public from funded child welfare services based on faith-based principles.

17

63.    By enabling grantees and sub-grantees to exclude members of the public from federal child welfare services based solely on their religious beliefs, Federal Defendants have disbursed and continue to disburse federal taxpayer funds in a manner that is not neutral with respect to religion.

64.    By enabling grantees and sub-grantees to provide federal child welfare services based on their religious beliefs, Federal Defendants have disbursed and continue to disburse federal taxpayer funds in a manner that prefers USCCB's Catholic identity and beliefs.

65.    By funding USCCB with knowledge that it will use such funds to engage in sectarian discrimination based on its religious beliefs, and by failing to establish adequate safeguards to prevent such discrimination, Federal Defendants have improperly acted with a religious purpose and with a primary effect of advancing USCCB's Catholic identity and beliefs.

66.    By funding USCCB with knowledge that it will use such funds to engage in sectarian discrimination based on its religious beliefs, and by failing to establish adequate safeguards to prevent such discrimination, Federal Defendants have improperly defined recipients of such funds by reference to religion and impermissibly effected governmental indoctrination.

67.    By funding USCCB with knowledge that it will use such funds to engage in sectarian discrimination based on its religious beliefs, and by failing to establish adequate safeguards to prevent such discrimination, Federal Defendants have improperly endorsed USCCB's Catholic identity and beliefs.

68.     By enabling USCCB's religious beliefs to be a precondition to receiving government services, Federal Defendants have impermissibly coerced individuals, including vulnerable and impressionable children in the care of USCCB and CCFW, with respect to those religious beliefs.

69.     As federal taxpayers, Plaintiffs are harmed by Federal Defendants' use of federal taxpayer funds to underwrite and endorse religious beliefs to which they do not subscribe.

70.     Federal Defendants' actions also harm LGBT individuals and couples who wish to become foster or adoptive parents, including Plaintiffs.

71.     Through the actions described above, Federal Defendants have deprived and continue to deprive Plaintiffs of their rights protected by the Establishment Clause of the First Amendment to the United States Constitution.

## Count II
### (Fifth Amendment – Equal Protection)
### U.S. Const. amend V

72.     Plaintiffs reincorporate the foregoing allegations as if fully set forth herein.

73.     The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from denying equal protection of the laws.

74.     Federal Defendants have discriminated and continue to discriminate impermissibly against individuals, including Plaintiffs, based on religion, their sexual orientation, their sex, and the same-sex character of their marriage, by

funding the administration of services that they are on notice are being administered in a manner that disfavors same-sex relationships.

75. Federal Defendants have deprived and continue to deprive individuals, including Plaintiffs, of equal dignity, liberty, and autonomy, and brand them as inferior by discriminating against them based on religion, sexual orientation, sex, and the exercise of the fundamental right to marry.

76. Discrimination based on religion, sexual orientation, sex, or the exercise of the fundamental right to marry (including to a person of the same sex) is presumptively unconstitutional and subject to heightened scrutiny.

77. There is no constitutionally adequate justification for Federal Defendants' actions.

78. Federal Defendants' actions fail to advance any legitimate governmental interest. To the contrary, enabling the religious test at issue is antithetical to Federal Defendants' responsibility to ensure that the best interests of the children in their care and custody drive their placement and adoption.

79. Federal Defendants' actions harm LGBT individuals and couples who wish to become foster or adoptive parents, including Plaintiffs.

80. Through the actions described above, Federal Defendants have deprived and continue to deprive Plaintiffs of their rights protected by the equal protection guarantee of the Fifth Amendment to the United States Constitution.

### Count III
### (Fifth Amendment – Substantive Due Process)
### U.S. Const. amend V

81.    Plaintiffs reincorporate the foregoing allegations as if fully set forth herein.

82.    The Fifth Amendment's Due Process Clause protects individuals' substantive rights to be free to make certain decisions central to autonomy, integrity, self-definition, intimacy, and personhood without unjustified governmental intrusion. These decisions include the fundamental right to marry, including the right to marry someone of the same sex.

83.    Married persons also have a fundamental liberty interest in their marriage, including a fundamental liberty interest in the federal government recognizing and respecting marriages validly entered into under state law.

84.    Additionally, all persons have a liberty interest in their family privacy, integrity, and association.

85.    Federal Defendants enabled, sanctioned, and ratified USCCB's and its sub-grantees' use of a religious test to deny Fatma and Bryn the ability to apply to be foster or adoptive parents under the URM Program or UC Program solely due to a judgment that their family "does not mirror the holy family." In doing so, Federal Defendants' conduct violated the substantive due process component of the Due Process Clause of the Fifth Amendment because Federal Defendants burdened Fatma and Bryn's liberty interests and penalized their exercise of their fundamental right to marry.

21

86.     There is no constitutionally adequate justification for Federal Defendants' infringement of Plaintiffs' fundamental rights.

87.     Federal Defendants' actions harm LGBT individuals and couples who wish to become foster or adoptive parents, including Plaintiffs.

88.     Through the actions described above, Federal Defendants have violated and continue to violate the substantive due process protections of the Fifth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief:

A.     Enter a declaratory judgment that Federal Defendants' failure to ensure that Plaintiffs may apply to be foster or adoptive parents to a child under the URM Program or the UC Program through Federal Defendants' grantee USCCB absent religious or other criteria that disfavor them based on their sexual orientation or sex or the same-sex character of their marriage violates the First and Fifth Amendments to the United States Constitution.

B.     Enter a declaratory judgment that Federal Defendants' actions in enabling, sanctioning, ratifying, or failing to implement adequate safeguards against the use of religious or other criteria disfavoring same-sex relationships to determine who may receive federal child welfare services under the URM Program and the UC Program violates the First and Fifth Amendments to the United States Constitution.

C.  Issue a permanent injunction requiring Federal Defendants to ensure that Plaintiffs may apply to be foster or adoptive parents to a child under the URM Program or the UC Program through Federal Defendants' grantee USCCB absent religious or other criteria that disfavor them based on their sexual orientation or sex or the same-sex character of their marriage.

D.  Issue a permanent injunction prohibiting Federal Defendants from enabling, sanctioning, ratifying, or failing to implement adequate safeguards against the use of religious or other criteria to exclude foster or adoptive parent applicants based on their sexual orientation or sex or the same-sex character of their marriage in the administration of the URM Program and the UC Program, including, as necessary, prohibiting Federal Defendants from awarding URM or UC grants to USCCB.

E.  Award Plaintiffs nominal monetary damages.

F.  Award Plaintiffs their reasonable costs and attorney's fees.

G.  Grant any other and further relief that this Court may deem fit and proper.

Dated: February 20, 2018

Respectfully submitted,

HOGAN LOVELLS US LLP

By: */s/ Jessica L. Ellsworth*
Jessica L. Ellsworth (DC Bar No. #484170)
*Kenneth Y. Choe
**Jennifer A. Fleury

23

*James A. Huang
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, N.W.
Washington, D.C. 20004–1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
jessica.ellsworth@hoganlovells.com
ken.choe@hoganlovells.com
jennifer.fleury@hoganlovells.com

*Alali Dagogo-Jack
**HOGAN LOVELLS US LLP**
4085 Campbell Avenue, Suite 100
Menlo Park, CA 94025
Telephone: (650) 463-4070
alali.dagogo-jack@hoganlovells.com

and

*Camilla B. Taylor
*Jamie A. Gliksberg
**LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.**
105 West Adams, 26th Floor
Chicago, IL 60603-6208
Telephone: (312) 663-4413
ctaylor@lambdalegal.org
jgliksberg@lambdalegal.org

*Kenneth D. Upton, Jr.
**LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.**
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219-6722
Telephone: (214) 219-8585
kupton@lambdalegal.org

*Attorneys for Plaintiffs*

*admission pro hac vice to be sought*

**admission to the bar of the Court pending*

24