

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T  +1 202 637 5600
F  +1 202 637 5910
www.hoganlovells.com

March 24, 2020                                          *By ECF*

The Honorable Amit P. Mehta
United States District Judge
United States District Court for the District of Columbia
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue, N.W.
Washington, DC 20001

**Re:**      *Marouf v. Azar*, **Case No. 1:18-cv-00378-APM (D.D.C.)**

Dear Judge Mehta:

Plaintiffs submit this letter in response to the Court's order for written argument with respect to the discovery dispute discussed during the teleconference on March 17, 2020.

**A.      Plaintiffs' disputed discovery focuses on the course of dealing between Federal Defendants and USCCB that resulted in actual or constructive permission for USCCB to administer government funds in accordance with its religious beliefs.**

Plaintiffs assert, among other things, that Federal Defendants violated the Establishment Clause by awarding URM and UAC grant funds to the United States Conference of Catholic Bishops to administer two federal programs under their delegated-authority without adequate safeguards against the use of those funds to advance USCCB's religious beliefs, despite being on notice that the USCCB and its subgrantees would administer those funds based on those beliefs. Dkt. 21 ("Am. Compl.") ¶¶ 30–34, 61, 62, 65.  As the Court has recognized, one way to assess this claim is by evaluating the adequacy of any such safeguard as well as Federal Defendants' knowledge of USCCB's intention to act in accordance with its religious beliefs in its administration of the grants.  Dkt. 48 at 18–19.

Thus, relevant facts include whether and to what extent Federal Defendants have imposed and enforced meaningful safeguards to protect against discrimination motivated by religious beliefs in the operation of government programs.  As such, Plaintiffs have sought discovery about how Federal Defendants have operated these programs, particularly the extent to which they have afforded grantees discretion to administer grants on the basis of their religious beliefs, including what, if anything, Federal Defendants have done to safeguard against such use of program funds.[1]  *See, e.g.,* Ex. 1 (RFP Nos. 8, 15, 16, 18–21, 23–25, 29, 30, 34, 36).

---

[1] As a reasonable compromise, Plaintiffs have voluntarily limited their requests to exclude document specific to grantees other than USCCB, leaving only documents that are USCCB-specific and documents that encompass grantees more generally, inclusive of USCCB (e.g., national policies of general applicability).

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rio de Janeiro Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington DC Associated offices: Budapest Jakarta Shanghai FTZ Ulaanbaatar Zagreb. Business Service Centers: Johannesburg Louisville. For more information see www.hoganlovells.com

The Honorable Amit P. Mehta                    - 2 -                    March 24, 2020

**B.     The relevant time period encompasses at least key periods over the course of the longstanding relationship between Federal Defendants and USCCB.**

Plaintiffs initially sought discovery from USCCB's initial participation in the UAC[2] program to the present.  *See* Ex. 1 at 5.  In response, Federal Defendants refused to produce documents dated before January 1, 2016.[3]  As a compromise, Plaintiffs limited their requests to the following time periods:

(1) The first grant period in which USCCB participated as a grantee in the UAC program, inclusive of the grant application and related documents for such grant period,[4] and

(2) The UAC grant periods that encompass June 26, 2013,[5] through the present, inclusive of the grant applications and related documents for all such grant periods (excluding any period in which USCCB was not a grantee).

Federal Defendants, however, have remained unmoved.

Regarding the first grant period, this time period is particularly relevant because, during that period, Federal Defendants and USCCB likely came to an initial mutual understanding of the "rules of the road" regarding the operation of the program, which may have included an understanding of the extent to which USCCB was permitted to administer the grant in a manner imposing USCCB's religious beliefs as criteria on who may participate in the programs.  That understanding likely carried forward such that it informed USCCB's understanding of the extent to which it was permitted to continue to so administer a grant in a subsequent grant period.  While Federal Defendants are willing to produce documents with respect to the grant period in which Plaintiffs sought to submit their foster parent application, the prior course of dealing between Federal Defendants and USCCB likely informed USCCB's understanding of Federal Defendants' expectation, including the likelihood, or lack thereof, that any stated non-discrimination policy would be enforced.

The grant periods encompassing June 2013 to present are also particularly relevant, because this is the time period during which Federal Defendants and its grantees likely actively considered how to apply their policies and practices[6] to exclude same-sex married couples in

---

[2] In light of Plaintiffs' concessions, described below, there appears to be no current dispute regarding time with respect to the URM program.

[3] *See* Ex. 2 at 4–5 (stating that Federal Defendants will conduct discovery inquiries only "with respect to the period covering the grants in place in February 2017, to the present"); *see also, e.g., id.* (Federal Defendants' objections to RFP Nos. 3, 5–9, 11–15, 17–29, 31–38).  Counsel for Federal Defendants explained on the March 17 call with the Court that Federal Defendants have searched for documents dated January 1, 2016, to the present.

[4] Counsel for Federal Defendants estimated during the March 17 call that this first grant period occurred around 2005.  However, Plaintiffs request the Court use the language above, in case produced documents demonstrate a different time frame.

[5] This is the date of the Supreme Court's decision in *United States v. Windsor*, 570 U.S. 744 (Jun. 26, 2013).

[6] For Establishment Clause purposes, USCCB's policy is much broader than simply singling out married same-sex couples for exclusion: the actual policy is that USCCB and its grantees will not accept applicants into the government programs that do not "mirror the holy family." *Amended Complaint,* ECF No. 21 at ¶¶ 48, 51, 88. Plaintiffs understand this policy to have been designed and implemented to allow USCCB and its subgrantees to discriminate in a variety of ways in administering federal programs or complying with government-imposed

The Honorable Amit P. Mehta                - 3 -              March 24, 2020

light of the Supreme Court's decision in *United States v. Windsor*, 133 S. Ct. 2675 (Jun. 26, 2013). Plaintiffs assume that *Windsor* occasioned opportunities for Federal Defendants to consider or re-consider how USCCB would administer grants given its religious beliefs regarding such relationships, *see, e.g.*, Ex. 1 at 10 (RFP No. 16), yet Federal Defendants' would exclude documents following the highly-consequential *Windsor* decision.

**C.      The nationwide scope of USCCB's grant should govern discovery's geographic limits.**

Plaintiffs have sought discovery related to the administration of the programs in accordance with USCCB's religious beliefs, including how, if at all, Federal Defendants have responded to any instance of religious discrimination against foster parent applicants by USCCB anywhere in which USCCB administers a UAC program grant.[7] *See, e.g.,* Ex. 1 (RFP Nos. 15, 19, 20, 23).   Federal Defendants have repeatedly objected to such requests on the basis of geography and limited the scope of their production to the State of Texas only. *See, e.g.,* Ex. 2 (Federal Defendants' objections to RFP Nos. 2, 3, 5–15, 17–29, 31–34, 36–38).

It is undisputed that Federal Defendants have awarded USCCB grants to operate the UAC program in many states other than Texas.  And USCCB has informed Federal Defendants that it will operate the program in accordance with its religious beliefs, without regard to geography.  Am. Compl. ¶¶ 30–34; *see also* Dkt. 29 (USCCB Motion to Dismiss) at 4 ("As a Catholic organization, . . . USCCB cannot provide services that would violate its religious beliefs. USCCB has long made the government aware of this fact.").  Thus, any religious discrimination against foster parent applicants by USCCB, and the response, if any, that such discrimination has occasioned by Federal Defendants, likely has not been limited to the State of Texas.  Federal Defendants' response to any such discrimination, or lack thereof, is probative of the adequacy of any safeguard against such discrimination that Federal Defendants may have put in place.  Simply put, the course of dealing between Federal Defendants and USCCB in one location likely informs USCCB's understanding of how it may administer its program grant in any location.

For example, if other foster parent applicants were rejected because of USCCB's religious beliefs, Federal Defendants' response, if any, would be responsive to Plaintiffs' discovery requests and relevant to Plaintiffs' claims, regardless of where in the country such discrimination occurred. *See, e.g.,* Ex. 1 (RFP Nos. 15, 19, 20, 23).  However, Federal Defendants have refused to produce documents concerning such discrimination if the events occurred in a state other than Texas.   This arbitrary geographical limitation deprives Plaintiffs of relevant documents concerning the extent to which Federal Defendants have enabled such discrimination by USCCB.

Accordingly, the Court should overrule Federal Defendants' objections to producing documents related to events outside of Texas. *See* Ex. 2 (Federal Defendants' objections to RFP

restrictions on funding. Plaintiffs further understand the policy was being robustly enforced as early as 2015, and likely earlier.

[7] Because USCCB's participation in the URM program appears to be limited to the State of Texas, there appears to be no current dispute regarding geography with respect to the URM program.

The Honorable Amit P. Mehta                    - 4 -                    March 24, 2020

Nos. 2, 3, 5–15, 17–29, 31–34, 36–38).

**D.     The extent to which Federal Defendants have enabled religious discrimination against foster parent applicants by USCCB is relevant to Plaintiffs' claims.**

Plaintiffs allege that Federal Defendants failed to implement adequate safeguards to prevent USCCB or its subgrantees from administering the URM and UAC grants in a discriminatory manner "based on its religious beliefs."  Am. Compl. ¶ 62, 63, 66.  Federal Defendants object that the only relevant religious beliefs are "those regarding same-sex couples parenting foster children."  *See, e.g.*, Ex. 2 at 32 (Federal Defendants' objections to RFP Nos. 7, 8, 10, 15, 17–38).  As a reasonable compromise, Plaintiffs have voluntarily limited their requests to exclude documents outside of the foster parenting context.  Thus, Plaintiffs do not seek documents concerning only the health care provided to children in the programs by USCCB without reference to religious beliefs or religiously based policies that apply equally in the foster parenting context.

The Court should overrule Federal Defendants' objections because it is probative of whether Federal Defendants have generally enabled USCCB to engage in religious discrimination with respect to foster parent applicants.  Once again, if Federal Defendants and USCCB have an established course of dealing under which USCCB is effectively permitted to process foster parent applications in accordance with its religious beliefs, such facts are relevant to Plaintiffs' claims.  For example, if Federal Defendants have permitted USCCB to reject a foster parent based on a religious belief that only a married couple, as opposed to a cohabitating unmarried couple, should foster children, USCCB is likely to understand that it may reject a foster parent based on any other religious belief, too, including a religious belief regarding same-sex relationships.  Especially if such a course of dealing developed over years, across the country, and with respect to multiple religiously-motivated foster parent applicant criteria, it would naturally culminate in the rejection of Plaintiffs' foster parenting application, given USCCB's religious beliefs regarding same-sex relationships.  *See* Am. Compl. ¶¶ 35, 36.

At its core, Federal Defendants' objection appears to be that Plaintiffs' claim is limited to religious beliefs regarding same-sex relationships because Plaintiffs would not have *standing* to challenge harm occasioned by Federal Defendants' discrimination based on other religious beliefs.  But Plaintiffs' *injuries*, which are personal and specific, must not be conflated with Plaintiffs' *claims*, which allege that the federal government unconstitutionally advanced religion by enabling USCCB to administer grant funds in a manner consistent with its religious beliefs. *See* Am. Compl. ¶ 65.  Under *the government's authority*, using *federal funding*, and without any *safeguards* to prevent it, USCCB has been allowed to implement a policy based on its religious beliefs to exclude persons from participating in two federal programs. The result here may have manifested itself in sexual orientation and sex discrimination, but make no mistake, the challenged policy here more broadly turns away anyone who does not "mirror the holy family." Plaintiffs seek documents relevant to show that what happened to them was part of a longstanding and widespread pattern traceable to Federal Defendants, which is probative of Plaintiffs' claims, not their standing.

The Honorable Amit P. Mehta                     - 5 -                     March 24, 2020

Respectfully submitted,

*/s/ Russell A. Welch*

Russell A. Welch (pro hac vice)
HOGAN LOVELLS US LLP
609 Main Street, Suite 4200
Houston, TX 77002
Telephone: (713) 632-1437
russell.welch@hoganlovells.com

Kenneth Y. Choe (pro hac vice)
James A. Huang (pro hac vice)
Michael D. Gendall (DC #1029790)
Brendan C. Quinn (DC #1616841)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004–1109
Telephone: (202) 637-5600
ken.choe@hoganlovells.com
james.huang@hoganlovells.com
mike.gendall@hoganlovells.com
brendan.quinn@hoganlovells.com

Camilla B. Taylor (pro hac vice)
Jamie A. Gliksberg (pro hac vice)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
105 West Adams, 26th Floor
Chicago, IL 60603-6208
Telephone: (312) 663-4413
ctaylor@lambdalegal.org
jgliksberg@lambdalegal.org

Kenneth D. Upton (pro hac vice)
AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE
LEGAL DEPARTMENT
1310 L Street, NW
Suite 200
Washington, DC 20005
Telephone: (202) 898-2133
Email: upton@au.org

***Attorneys for Plaintiffs***

cc:     Counsel of record