IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FATMA MAROUF, ET AL.,            )
                                 )
          Plaintiffs,            )
                                 )    CV No. 18-378
       vs.                       )    Washington, D.C.
                                 )    November 30, 2018
ALEX M. AZAR, II, ET AL.,        )    10:00 a.m.
                                 )
          Defendants.            )
_____  )


TRANSCRIPT OF ORAL ARGUMENT PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:        Kenneth Y. Choe
                           HOGAN LOVELLS US LLP
                           555 13th Street, NW
                           Washington, D.C. 20004
                           202-637-5675
                           Email: ken.choe@hoganlovells.com

                           Jamie Avra Gliksberg
                           Camilla B. Taylor
                           LAMBDA LEGAL DEFENSE
                           AND EDUCATION FUND, INC.
                           105 West Adams Street
                           Suite 2600
                           Chicago, IL 60603
                           (312) 663-4413 ext. 325
                           Email: jgliksberg@lambdalegal.org
                           Email: ctaylor@lambdalegal.org

APPEARANCES CONTINUED:

For the Defendants:        James R. Powers
                           Michelle Bennett
                           U.S. DEPARTMENT OF JUSTICE
                           Federal Programs Branch,
                           Civil Division
                           1100 L Street, NW
                           Room 11218
                           Washington, D.C. 20005
                           (202) 353-0543
                           Email: James.R.Powers@usdoj.gov
                           Email: Michelle.Bennett@usdoj.gov

                           David Timothy Raimer
                           JONES DAY
                           51 Louisiana Avenue, NW
                           Washington, D.C. 20001
                           (202) 879-3939
                           Email: dtraimer@jonesday.com

                           Leon F. DeJulius
                           JONES DAY
                           250 Vesey Street
                           New York, NY 10281
                           (212) 326-3830
                           Email: lfdejulius@jonesday.com

Court Reporter:            William P. Zaremba
                           Registered Merit Reporter
                           Certified Realtime Reporter
                           Official Court Reporter
                           U.S. Courthouse
                           333 Constitution Avenue, NW
                           Room 6503
                           Washington, D.C. 20001
                           (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                     P R O C E E D I N G S
 2          DEPUTY CLERK:  All rise.  The Honorable Amit P.
 3  Mehta presiding.  Please be seated and come to order.
 4          THE COURT:  Good morning.  Please be seated,
 5  everyone.
 6          DEPUTY CLERK:  Good morning.  We are here for
 7  civil matter 18-378, Fatma Marouf, et al., versus Alex Azar,
 8  II, et al.
 9          Counsel, please approach the lectern and identify
10  yourselves for the record.
11          MS. GLIKSBERG:  Jamie Gliksberg on behalf of
12  plaintiffs from Lambda Legal.
13          I'm here with co-counsel Hogan Lovells, Ken Choe;
14  and with Lambda Legal, Camilla Taylor.
15          THE COURT:  Good morning.
16          Ms. Gliksberg, will you be arguing?
17          MS. GLIKSBERG:  Yes.
18          THE COURT:  Okay.  Thank you.
19          MR. RAIMER:  I'm David Raimer.  I'm here with
20  co-counsel, Leon DeJulius.  We represent U.S. Conference of
21  Catholic Bishops.
22          THE COURT:  Mr. Raimer, good morning.
23          MR. POWERS:  Jim Powers, Your Honor, from the
24  Department of Justice on behalf of the federal defendants.
25          With me at counsel table is Michelle Bennett, also
```

1  from the Department of Justice on behalf of the federal

2  defendants.

3           THE COURT:  All right.  Good morning to everyone.

4           All right.  So we're here to hear argument on the

5  motion to dismiss, motions to dismiss that are pending.

6           So why don't we begin with the government and

7  we'll go from there.

8           MR. POWERS:  Good morning, Your Honor.  May it

9  please the Court.  Jim Powers on behalf of the

10  United States.

11          This case should be dismissed at the outset

12  because the plaintiffs lack standing to bring it against the

13  government; therefore, the Court lacks jurisdiction to hear

14  it.

15          The plaintiffs have asserted two sets of claims

16  based on different theories of standing.

17          There's a broad Establishment Clause claim

18  asserted on a Taxpayer Standing theory.

19          Then there's a second narrower claim regarding an

20  alleged -- series of claims regarding an alleged denial of

21  opportunity by one of USCCB's subgrantees, Catholic

22  Charities of Fort Worth.

23          COURT REPORTER:  You need to slow down.

24          MR. POWERS:  Fair enough.

25          Neither ground for standing suffices.

1          Now, I want to begin with the Taxpayer Standing

2    issue, if I may.

3          THE COURT:  Can I actually take you in reverse

4    order --

5          MR. POWERS:  Sure.

6          THE COURT:  -- on the individual standing

7    question?

8          Let me ask the following, which is:  Is it the

9    Department of Health and Human Services' policy or position

10   that same-sex couples are ineligible to serve as foster

11   parents under these programs?

12         MR. POWERS:  There is no allegation in the

13   complaint of any sort of policy like that.

14         THE COURT:  Well, I'm asking whether there is.

15         MR. POWERS:  I'm not aware of any such policy.

16         THE COURT:  Okay.

17         MR. POWERS:  And so I think that --

18         THE COURT:  So, just to be clear, the agency's

19   position is that the plaintiffs are eligible -- well, let me

20   put it this way:  They're not disqualified by virtue of

21   being a same-sex couple.  Is that the agency's position?

22         MR. RAIMER:  There is no agency policy that I'm

23   aware of or that's been alleged in the complaint that would

24   disqualify the plaintiffs on that basis.

25         THE COURT:  Okay.

1          Well, I guess I'm not asking you to qualify your

2     answer with what's in the complaint or not in the complaint,

3     because --

4          MR. RAIMER:  Right.

5          THE COURT:  -- it is, in some sense, critical at

6     understanding whether there's standing here.

7          If the agency policy is that same-sex couples may

8     not participate in the program, it seems to me that that

9     provides a different set of -- just different circumstance

10    than if that's not the case.

11         MR. RAIMER:  Well, I don't believe that's the

12    agency's policy.

13         And, again, at this stage of the proceedings, the

14    plaintiffs have alleged nothing to indicate that it's the

15    agency's policy either.

16         THE COURT:  Okay.

17         And so if that's the case, then I guess the second

18    question I have is:  Is, in your view, the agency's view, is

19    Catholic Charities violating any rule, regulation, condition

20    of the grant by -- and I don't mean this term pejoratively,

21    but discriminating against the plaintiffs because they are a

22    same-sex couple?

23         MR. POWERS:  I don't think I can get ahead of the

24    facts in the case or speculate about -- or not speculate --

25         THE COURT:  Wouldn't that be important?

1            The reason I ask is you, very rightly, cited the

2    *Animal Legal Defense Fund* case, the en banc decision from

3    the Circuit.

4            And it seems to me that this has some parallels to

5    that in the following sense:  If what they are asserting is

6    that the agency does not have in place a rule to ensure

7    equal treatment of same-sex couples, it seems to me quite

8    analogous to the situation in that case where the allegation

9    was that the agency had adopted regulations that were

10   inconsistent with the law.

11           Alternatively, the same sort of theory was put

12   forward there, which is that the zoos were conforming with

13   the regulations as have been adopted.  And if that was the

14   case, then there was causation and redressability there.

15           And so that's why I asked those two first

16   questions right out of the box, because I'm trying to figure

17   out whether anything they're doing is violative or

18   authorized by the agency's policies and rules and the terms

19   of the grant.

20           MR. POWERS:  Well, I think it is different than --

21   entirely than the cases like the *Animal Legal Defense Fund*

22   case, where there was a rule in place that authorized the

23   conduct that was allegedly unlawful.

24           THE COURT:  So why does that matter?

25           In other words, here you have, perhaps, not a rule

1     but you have a constitutional principle.

2             And at this stage, because you're -- we're only

3     challenging standing, I have to assume that they will

4     prevail on the merits, right?

5             MR. POWERS:  Right.

6             THE COURT:  So I have to assume that they will

7     make it out either in an Establishment Clause violation or

8     an Equal Protection Clause violation.

9             So if that's the case, then it sort of begs the

10    question in my mind as to why there needs to be a specific

11    rule.

12            If the agency is facilitating or tacitly

13    authorizing that kind of conduct by a grantee that violates

14    the Constitution, why isn't that enough basis for standing?

15            MR. POWERS:  Well, I think -- you know,

16    I don't think there's anything contemplated in the case law,

17    this concept of tacit authorization, as Your Honor put it.

18            I think that the case law, in the context of these

19    government-authorization cases, there's actually a rule or a

20    guidance or something that actually authorizes the conduct

21    that would otherwise be unlawful, as the plaintiffs have

22    shown.

23            THE COURT:  So you mean to say -- let's take a

24    different hypothetical.

25            Say one of your grantees' position is that,

1   we believe children should only be placed with Latino

2   families, or at least Latino immigrant children should only

3   be placed with Latino families, and, therefore, any Asian

4   families who come forward and want to be foster parents,

5   we will not place children with them.  The agency knows

6   about it.

7          You mean to tell me that that could go on without

8   any redress because foster families or Asian parents who

9   were denied foster placement would lack standing?

10          MR. POWERS:  Well, I certainly think that the

11   agency would have full authority to police its grantees, as

12   it always does.

13          THE COURT:  Isn't that what they're asking you to

14   do?

15          MR. POWERS:  Well, I don't think, though, that

16   that creates a basis for redressability in the Federal

17   Courts.

18          There's a difference between what may or may not

19   be a violation of law that the government can take account

20   of in its own internal operations.

21          THE COURT:  Why couldn't I direct the agency to --

22   I sort of have two thoughts; one is sort of a maximalist

23   relief.

24          And it's not clear to me what their relief is, and

25   I need to ask them this.  But maximalist relief would be:

1    The agency must run the program in such a way that no

2    grantee discriminates against same-sex couples, right?  That

3    could be an order.  And the agency would then need to decide

4    how it was going to proceed.

5            But what it meant is -- what it would then mean is

6    that these plaintiffs, who wanted to participate in a

7    program, would be assured that no grantee would deny them

8    placement, right?  That could be the maximalist relief.

9            A more minimal relief could be, it seems to me, to

10   direct the agency to ensure that there are alternatives,

11   alternative organizations or alternative means by which

12   these folks can receive a placement that doesn't necessarily

13   impinge upon the honestly held beliefs of Catholic Charities

14   and its subgrantees.

15           So why aren't those two forms of relief the kind

16   of relief that would remedy the harm they've claimed?

17           MR. POWERS:  Well, I think, to begin, the

18   maximalist relief that Your Honor proposes, only the

19   Taxpayer Standing theory would, I think, provide a basis for

20   the Court to go down that road.

21           Again, this -- the individual plaintiffs have only

22   asserted claims in regard to a particular episode involving

23   Catholic Charities of Fort Worth, subgrantee of USCCB.

24           That would not provide a basis for those

25   plaintiffs to challenge the manner in which grant monies are

1    being expended across the country by subgrantees and by

2    USCCB.

3              THE COURT:  Right.

4              But we know -- okay.  Maybe.

5              Because I mean, we do know that Catholic Charities

6    is a substantial subgrantee of the agency.  I've looked at

7    the report and it's in the -- over $2 million, at least in

8    2014, and the number may be bigger now.

9              MR. POWERS:  It is certainly substantial.

10             But, you know, I do think that there's a number of

11   locations where USCCB provides services, where these

12   plaintiffs would have no relationship to those subgrantees

13   or to USCCB's activities in those locations.

14             THE COURT:  Well, here's the question -- well,

15   all right.

16             Address the second, narrower one.

17             There's a part of me that agrees that the

18   maximalist approach, why take that when there's something

19   more reasonable, which is to direct the agency to say,

20   you know what, you've got -- I've looked at your report, and

21   you have multiple -- I mean, at least maybe 18 or so

22   grantees.  They operate in different areas.  Some of them

23   operate in Texas.  You've got at least two in Houston or

24   three in Houston.  Two in Dallas.  One in Austin.  Why can't

25   their desire to be foster parents be facilitated through

1   those grantees?  And why couldn't I direct the agency to

2   facilitate, at least their consideration as foster parents,

3   through those means, or, even alternatively, through the

4   agency itself?

5              MR. POWERS:  I understand.

6              So I think that there would be no legal basis.

7   Equity follows the law, and there would be no legal basis to

8   order the government to engage with any particular grantee

9   or to provide services to the beneficiaries of these

10  programs, the unaccompanied youths, in a particular manner.

11             I will note for the Court that the government has

12  identified a potential additional grantee in the Dallas-Fort

13  Worth area to provide long-term foster care services.

14             THE COURT:  So if you did that, and this was going

15  to be my leading up to, which is that:  If the agency does

16  that, then the question is, why are we here?

17             And it may be that they have a desire to take on

18  the bigger challenge of the way the agency is running the

19  program in its entirety, and that's the Taxpayer Standing

20  issue.

21             But leave that to the side.  If the agency does

22  exactly what you've just proposed, which is to find an

23  alternative grantee through which foster placement can be

24  made, doesn't that resolve their claim, at least insofar as

25  the individual standing issue goes?

1          MR. POWERS:  I think, you know, certainly, we'd

2    need to look at the facts on the ground.

3          But the nature of this complaint, it seeks an

4    opportunity to be a foster parent to one of these

5    unaccompanied youths, and so it certainly could be the case

6    that that would resolve or moot those claims.

7          THE COURT:  So is that something the agency is

8    prepared to do?

9          In other words, could I say, Agency, let me know

10   in two weeks whether you've done that, in which case at

11   least that portion of the complaint would be mooted out,

12   arguably?

13         MR. POWERS:  I think there is mutual interest

14   between the government and the potential grantee.  You know,

15   we're still in a pre-decisional posture, and so that process

16   needs to play out.

17         It's my understanding that it could finalize in

18   early 2019, but I can't get ahead of the facts.

19         THE COURT:  I'm sorry, what could finalize in

20   early 2019?

21         MR. POWERS:  An arrangement between the government

22   and this additional --

23         THE COURT:  Oh, I see.

24         MR. POWERS:  -- grantee.

25         THE COURT:  This is a new grantee, you're saying,

1    not an existing grantee.

2              MR. POWERS:  Would be -- it's an existing grantee

3    that would be providing additional services in that metro

4    area.

5              THE COURT:  I see.

6              MR. POWERS:  But there still is a paperwork

7    process and a decision process that needs to occur before

8    that can finalize.

9              And so I can't get ahead of --

10             THE COURT:  Understood.

11             MR. POWERS:  -- the agency's process.

12             THE COURT:  I thought you were suggesting that

13   there's a pre-existing grantee that has those services

14   available.

15             Let me ask you another question, which is:  In

16   terms of how the program operates, does this couple, by

17   virtue of their being in Fort Worth or in the Fort Worth

18   area, are they only -- can they only be granted foster

19   placement through a Fort Worth based grantee, or could you

20   turn to a grantee in some other location to assist them with

21   foster placement?

22             MR. POWERS:  I think that depends on the scope of

23   that grantee's ability to work with families.

24             So I don't think the -- now, I think that --

25   again, the plaintiffs haven't alleged any alternatives that

1   they've sought out or anything like that.  But I think that

2   that is sort of bounded by the operations for that

3   particular grantee, and so I'm not aware of any current

4   other options in the metro area where the plaintiffs reside.

5           And I think, again, though, that -- you know,

6   I think this all points to the fact that this -- the

7   individual plaintiffs' claims are not sort of -- there's not

8   a traceability of redressability nexus there, because those

9   decisions are made by individual grantees; the government

10  doesn't control them.

11          THE COURT:  So I guess that I don't understand, to

12  be honest, in the sense that, yes, you're right, you don't

13  control their decision-making, you don't control their

14  religious beliefs; on the other hand, it should come as no

15  surprise that if you are going to award grants to an

16  organization that has the religious beliefs that it does,

17  that it will have certain consequences in terms of

18  eligibility of people who that charity does not believe,

19  based on their religious beliefs, ought not to be raising

20  children as a married couple.

21          So I mean, the government can't just stick its

22  head in the sand on this one, can it?  I mean, that's

23  especially, it seems like, what you're saying, which is

24  that, as long as we allow the discrimination to happen at

25  the subgrantee or grantee level, well, then, the government

1    is absolved of any responsibility for doing anything, and

2    that just can't be right.

3             MR. POWERS:  I don't know if I would characterize

4    it as sticking one's head in the sand.  But I think that the

5    result we've set forth in the papers is bound by the

6    D.C. Circuit's reasoning in *Freedom Republicans*.

7             THE COURT:  Well, that's a different case.

8             And isn't that case different precisely because

9    there, the relief could only be afforded by the Republican

10   Party; in other words, it's only the Republican Party that

11   can either afford the relief or not afford the relief and

12   cure the injury.

13            That's not what we have here, right?  The agency

14   can take steps to provide what they're asking for, either

15   through other grantees or through the agency itself.

16            Now -- and this is a question I have for them,

17   which is:  If you are insisting on relief through Catholic

18   Charities and its subgrantee, then I think you're right,

19   this is a lot closer to -- what's the name of the case --

20   the *Freedom Republicans* case -- because there, you have

21   one -- sort of only one outlet, and either that outlet does

22   what is being asked or not.

23            That's not, at least as I understand, the

24   situation here.

25            MR. POWERS:  Well, I think, to begin, we take the

1    complaint as it's pled.

2            The relief that's requested in the

3    prayer-for-relief section asks for the government to be --

4    or the plaintiffs to be able to seek relief through USCCB

5    and its subgrantees.  So I think that's one aspect of it.

6            But I think also, the issue is that what can the

7    Court order the government to do, what kind of relief can

8    the Court fashion?

9            And there's no -- these programs, the government

10   has ample discretion as to how to administrator services to

11   these unaccompanied youths, what providers to engage with --

12           THE COURT:  But you can't do that in violation of

13   a constitutional principle.

14           I mean, you're always bounded by law.

15           MR. POWERS:  That's true, Your Honor.

16           And if the Court were to order the government --

17   if the Court had deemed that some aspect of this was

18   unlawful and ordered the government to seize the conduct, it

19   would leave the plaintiffs, these individual plaintiffs no

20   closer to the relief they're seeking, which is the

21   opportunity that they're pursuing.

22           THE COURT:  So let me go back to where I was

23   originally, which is -- and I don't understand this.

24           I mean, just take this out of the context of the

25   same-sex couple; say, again, you had an organization that

1    said it was not going to place children with Asian parents.

2    Why wouldn't an appropriate form of relief be an -- a form

3    of relief be an injunction against the agency to not provide

4    any grant money for this program against an organization

5    that does not commit to providing equal opportunity,

6    irrespective of nationality?

7            MR. POWERS:  Well, I think that, again, the agency

8    would certainly have authority to take action in that

9    instance.

10           I'm sure Congress would also take action in that

11   sort of instance, and that's -- the fact that an Article III

12   court wouldn't necessarily have jurisdiction to consider the

13   issue does not --

14           THE COURT:  Why don't I -- I don't understand.

15   Why don't I, A, have the jurisdiction -- I have the

16   jurisdiction.

17           Well, let me put it this way:  Why don't I have

18   the authority to grant that type of injunction?

19           MR. POWERS:  I --

20           THE COURT:  Why can't I enjoin the agency from

21   implementing a program in a manner that is unconstitutional?

22           MR. POWERS:  So I think that, again, there needs

23   to be a relationship between the particular injury that's

24   asserted.

25           Now, of course, we're dealing in hypotheticals

1    here.  This is obviously a terrible scenario that Your Honor
2    is setting forth but...
3              THE COURT:  Not any more terrible than the one
4    they've been facing.
5              MR. POWERS:  Again, I think that the issue is
6    just:  What is the nature of the injury that's asserted,
7    what is the kind of relief that the Court could issue, and
8    how would it redress the injury that is asserted?
9              And if the Court were to order the government to
10   cease funding grants to USCCB or to cease funding grants
11   that flow to CCFW, it wouldn't lead any closer to redressing
12   the plaintiffs' injury.
13             THE COURT:  Why?
14             MR. POWERS:  Because, again, it's in the
15   government's discretion whether or not to engage with any
16   particular service provider in any particular location.
17             THE COURT:  So then what would the government do?
18             MR. POWERS:  Well, I mean --
19             THE COURT:  You have a mandate from Congress to
20   establish this program, right?
21             MR. POWERS:  Right.  We --
22             THE COURT:  And we're in agreement that you are
23   mandated by Congress to -- that the program is established
24   and the agency has to carry it out.  How it carries it out
25   is discretionary.

1          But you mean to tell me, then, that if I had

2    ordered you to only provide grants to organizations that

3    committed to not discriminating against same-sex couples,

4    the agency wouldn't, then, fill the void in some way?

5          MR. POWERS:  Well, I think, you know, it's

6    important --

7          THE COURT:  I mean, that's not the kind of

8    speculation I need to engage in, is it?

9          MR. POWERS:  I think I should begin first by,

10   again, noting that the agency is considering an additional

11   grantee, potentially in this metro area, for foster care

12   under the UAC program.

13         But regardless, this program doesn't operate in

14   every city in America, it doesn't -- in every kind of

15   service that's rendered to unaccompanied youth in every

16   city.

17         And so the decision about where a particular place

18   is -- those services might be rendered is something that the

19   government evaluates in considering how best to help these

20   populations.

21         THE COURT:  But, surely given realities, you're

22   going to have service providers in Texas.

23         MR. POWERS:  Certainly, there are likely to be

24   service providers in the state of Texas.

25         And, again, the agency is considering an

1  additional grantee in this metro area.

2          THE COURT:  Okay.

3          I asked you all -- I have a -- I can only applaud

4  my interns' efforts in finding the *Lyon* case yesterday as we

5  were preparing for this, the case out of the Eastern

6  District of Michigan in which Judge Borman held essentially

7  that the plaintiffs in that case at least have individual

8  standing based on facts that, with the exception there that

9  the defendants were state actors and not the Federal

10  Government -- or federal actors, seems to be on all fours.

11          So tell me how this case is distinguishable from

12  the decision that was reached in *Lyon*, at least as to the

13  individual standing.

14          MR. POWERS:  Sure, Your Honor.

15          So I believe that to begin, that case's

16  traceability and redressability analysis was based on a

17  Sixth Circuit case and Sixth Circuit precedent.

18          I do believe the D.C. Circuit precedent imposes a

19  higher burden in cases where the immediate injury was caused

20  by a third party not before the Court.

21          Those cases require a substantial showing that

22  there's a connection and that there's redressability.

23          THE COURT:  But that's *Lujan*.

24          I mean, *Lujan* establishes the substantial showing

25  standard.  That's not the Sixth Circuit.  That's *Lujan*.

1          MR. POWERS:  Well, I think that the D.C. Circuit

2    has applied that standard in *Freedom Republicans* and

3    *National Wrestling Coaches Association* and *Renal Physicians*

4    in a way that I think is a higher burden than the one that

5    the Court, in *Dumont*, appears to have applied.  So I think

6    that would be the first point.

7          The second point would be that the Court's

8    traceability analysis and, therefore, redressability

9    analysis really turned on the language of the agreements and

10   the Court's inference that there was some kind of

11   governmental encouragement or authorization of the alleged

12   conduct.  And here, the plaintiffs have alleged no kind of

13   authorization or encouragement by the government.

14         THE COURT:  No.  But they have alleged lack of

15   responsiveness, which is the clients, or plaintiffs, called

16   HHS or emailed HHS, there was at least one response by HHS

17   but then radio silence after that.

18         MR. POWERS:  And that's exactly what the

19   plaintiffs alleged in the *Freedom Republicans* case; that the

20   FEC was funding the party; that the party was engaging in a

21   delegate allocation method that was allegedly discriminatory

22   towards them; and that the party -- that the FEC was not

23   taking any action to respond to that scenario.

24         But nonetheless, because the -- that underlying

25   action by the party was -- had nothing to do with federal

1    funding, was -- long pre-dated federal funding, there was no

2    traceability shown.

3            And so the fact that the government, arguably, is

4    aware of some belief or something of that nature, I think

5    *Freedom Republicans* shows that that's not enough to show

6    some kind of authorization.

7            THE COURT:  Can I just ask one more hypothetical,

8    which is:  Could the -- under your view, couldn't HHS only

9    grant monies under this program to Catholic Charities and

10   its subgrantees?  And under your theory, they would be

11   immune from suit, essentially.  The government could do

12   that, and there would be no plaintiff who would have

13   standing to challenge that decision, at least as you've

14   played it out, right?

15           MR. POWERS:  I'm not sure that there would be no

16   plaintiff.  Obviously, I can't speak to --

17           THE COURT:  Well, who else other than them?

18   They've been denied -- at least according to their

19   allegations, they've been specifically told, we will not

20   place a foster child in your care because you are a same-sex

21   couple.

22           I can't imagine anybody is more, at least

23   factually aggrieved, than these plaintiffs.  There's nothing

24   speculative about the reason for which they were denied

25   foster placement.

1          MR. POWERS:  I think that the Supreme Court has

2   held repeatedly that the fact that the Court may not be able

3   to envision a particular plaintiff that would have standing

4   is not a reason to find standing in any given case.  And

5   so --

6          THE COURT:  So the government could essentially

7   create a program that, perhaps while not on its face but in

8   its implementation, discriminates against same-sex couples

9   without any redress for any same-sex couple?

10          MR. POWERS:  Again, I think that --

11          THE COURT:  And it could only go to Congress to

12   fix that?

13          MR. POWERS:  You know, I'm simply asking the Court

14   to apply the binding D.C. Circuit precedent here and the

15   Court -- the Supreme Court's teachings on standing in the

16   *Lujan* case and others, and I think that those cases indicate

17   that in this one before the Court, there is no standing.

18          The fact that we can spit out hypotheticals that

19   could conceivably produce counterintuitive results, the

20   Supreme Court has taught does not provide a basis to find

21   standing in the particular matter pending before this Court.

22          THE COURT:  Okay.

23          I stole your thunder about Taxpayer Standing, so

24   go back to that.

25          MR. POWERS:  Well, I think on that one, I think

1    the *Dumont* court got it exactly right, which is that the

2    individual plaintiffs, or I should say, all plaintiffs

3    cannot here assert Taxpayer Standing, because that form of

4    relief only applies in a very narrow set of cases that are

5    set forth by the *Flast versus Cohen* case and the *Bowen*

6    *versus Kendrick* case.

7              And there needs to be a close nexus between

8    congressional action under the taxing and spending power and

9    the particular claim that's alleged.

10              THE COURT:  So in this case -- I mean, I think

11   *Hein* sort of spoke of it in two terms; one is, there needs

12   to be sort of a congressional mandate and then a

13   congressionally specific appropriation.

14              You have -- I think we've talked about, you've

15   agreed with me that there's a congressional mandate at least

16   in terms of the establishment of the program, right?

17              MR. POWERS:  I think there is a mandate for the

18   agency to care for unaccompanied alien children.

19   I don't think that mandate exists in the Refugee Minors

20   program.  I think there's just an authorization there.

21              THE COURT:  Okay.

22              But your position is that, one, because there's no

23   specific reference to charitable organizations in the

24   congressional act establishing the program.  And then, B,

25   there's no specific mention of charitable -- excuse me,

1   religious organizations, I didn't mean charitable, religious

2   organizations in the appropriation -- the appropriations

3   themselves; that that essentially defeats any Taxpayer

4   Standing.

5          MR. POWERS:  I think that's the teachings of

6   *In re: Navy Chaplaincy*.

7          In *Hein*, I believe that that does defeat the claim

8   of Taxpayer Standing, because there needs to be that nexus

9   to an actual congressional enactment.  That's the logic of

10  *Flast* and as well as the results of *Flast* in *Bowen versus*

11  *Kendrick*.

12         And I think *In re: Navy Chaplaincy* binds the Court

13  here.  In that case, there was an allegation that the Navy

14  was operating its chaplaincy program in a discriminatory

15  fashion, in favor of Catholic chaplains.

16         But there was no statute that authorized the Navy

17  to engage in discrimination in favor of Catholic chaplains.

18  There wasn't even a reference to denomination in the

19  statute.  And so as a result, the conduct resulted from

20  executive discretion, and that's exactly what's at issue

21  here.

22         And so I believe that as *Dumont* held, the binding

23  precedent forecloses the Taxpayer Standing assertion.

24         And that would -- I think the Court, first of all,

25  would dismiss LGBT Bar Association on that basis; and,

1    second, it would substantially narrow the case as to the

2    individual plaintiffs' claims.

3            THE COURT:  Right.  They couldn't seek -- well,

4    it would be harder for them to then seek the maximalist

5    relief I was suggesting, which is that essentially, you

6    can't spend taxpayer dollars -- or provide taxpayer dollars

7    to any organization that -- unless an organization commits

8    to not discriminating against same-sex couples.

9            MR. POWERS:  Right.  There would be no theory of

10   injury that would permit that relief to extend that far.

11           THE COURT:  Right.

12           MR. POWERS:  And on the nominal damages piece, I'm

13   happy to just stand on the written submission.

14           THE COURT:  Okay.

15           MR. POWERS:  Otherwise, if I may briefly respond

16   to the plaintiffs at the end.

17           THE COURT:  Sure.  Of course.

18           MR. POWERS:  Thank you, Your Honor.

19           THE COURT:  All right.  Thank you, Counsel.

20           MR. RAIMER:  May it please the Court, David Raimer

21   for Defendant U.S. Conference of Catholic Bishops.

22           I just thought after that back and forth, it might

23   be helpful to take a quick step back and remember how we got

24   here.

25           Congress created a program to fund care for

1   unaccompanied minor children.  Plaintiffs have no objection

2   whatsoever to the creation of that program.

3          After Congress created the program, the government

4   defendants decided to set up a grant program, and they

5   decided to award some of those grants to my client, the U.S.

6   Conference of Catholic Bishops, because, as it turns out,

7   the Conference happens to be one of the premier providers of

8   refugee services in the country.  And, again, plaintiffs

9   have no objection to federal funds flowing to religious

10  organizations as a general matter.

11         At that point, the Conference decided to issue a

12  subgrant to Catholic Charities at Fort Worth, and it was

13  that entity that is alleged to have caused the injury of

14  which plaintiffs complain, denying their foster care

15  application.

16         So for plaintiffs to have standing here, it has to

17  be fair to say that the government was the cause not only of

18  its own conduct and not only the conduct of its grantee but

19  also the conduct of its grantee's grantee.

20         THE COURT:  So does Catholic Charities provide

21  grants to any organization that would provide foster

22  placement for same-sex couples?

23         MR. RAIMER:  Are you speaking of the Conference or

24  Catholic Charities?  Excuse me.  Sorry.

25         THE COURT:  You're going to have to forgive me.

1          I mean, whoever the grant recipient is, and I'll

2    get the word, but the grant recipient.

3          MR. RAIMER:  Sure.

4          The grant recipient, I'm not aware of that fact,

5    Your Honor.

6          I know that obviously --

7          THE COURT:  I mean, it would surprise me if you

8    would.

9          If what you said in the application is that,

10   we will only -- that our program will operate the program to

11   adhere with our religious beliefs, it would surprise me if

12   you were then providing grants to some subgrantees who

13   weren't sort of sharing in those same specifics.

14         MR. RAIMER:  Sure.

15         And so what I'll say is that, beliefs on some

16   questions like this and other questions that involve complex

17   moral and credential judgments.  There's a different --

18   there can be different applications of those beliefs,

19   depending on which diocese you are in the country.

20         So I can't speak directly to whether or not

21   there's any grantee, subgrantee of the Conference that would

22   do that.  But there is a difference -- there's sometimes a

23   difference of opinion on various aspects of Catholic

24   teaching, depending upon what diocese you're in across the

25   country.

1          THE COURT:  Do you know the answer to the question

2   I asked government counsel:  Are you aware of any

3   regulation, rule, condition of the grant that would prevent

4   discrimination on the basis of services being provided to a

5   same-sex couple versus a heterosexual couple?

6          MR. RAIMER:  I'm not -- I don't believe the

7   plaintiffs have alleged that in any way the government has

8   explicitly authorized that sort of conduct.

9          And I think that's important because --

10         THE COURT:  No.  I know.

11         But that's a different issue.

12         MR. RAIMER:  Sure.

13         THE COURT:  And yes, I think we all can agree, at

14   least as alleged, and perhaps even as a matter of fact,

15   there's no express authorization.

16         My question is different, which is that:

17   Do you have reason to believe that discriminating against

18   same-sex couples in any way violates a rule, regulation, or

19   condition that governs the grant?

20         MR. RAIMER:  The government's never sought, at

21   least that I'm aware of, to enforce any such prohibition

22   against my client.

23         THE COURT:  Well, let me ask:  Is there an

24   anti-discrimination provision that's a condition of the

25   grant?

1          MR. RAIMER:  I'm not aware that there's anything

2     in the explicit grant itself.

3          I believe -- I mean, in their complaint,

4     plaintiffs cite to a couple HHS regulations that they then

5     don't subsequently rely on either as a basis of their claim

6     or as a basis for standing.

7          And I think there's a good reason for that,

8     because if you're pointing to those regulations and saying,

9     the government is required to enforce those regulations

10    against my client, I think you've got a big problem under

11    *Heckler v. Chaney*, because you're essentially trying to get

12    the government to enforce its regulations.

13         And generally enforcement regulations are non- --

14    excuse me, enforcement decisions are non-reviewable.  And,

15    again, plaintiffs haven't based any claim -- any one of

16    their merits claims or any of their standing claims on

17    regulations of that sort at all.

18         And I'd submit, Your Honor, you're asking about

19    the *Glickman* case and interplay between any sort of

20    prohibition.  There's certainly a line of cases from the

21    D.C. Circuit that says, if the government is authorizing

22    conduct that would otherwise be illegal, there's standing in

23    those sorts of circumstances.  Again, plaintiffs haven't

24    made any sort of allegation of that nature here, that's the

25    first point.

1          The next point is, the whole premise of that line

2    of authority is based on the notion that the government

3    authorization somehow changes the conduct of the regulated

4    party.

5          And I'd submit that in this case, where you have

6    an entity operating on the basis of sincerely held religious

7    beliefs, that the legality or the illegality of a particular

8    mode of conduct just doesn't play into the calculus in the

9    same way.

10          So it can't be assumed that simply because

11    something is presumptively illegal, an organization would

12    decline to take that action if it was in accordance with the

13    sincerely held religious beliefs, particularly when this --

14          THE COURT:  So --

15          MR. RAIMER:  Sorry.

16          THE COURT:  No.  Go ahead.

17          MR. RAIMER:  Particularly when any such order or

18    regulation would have to be read against the backdrop of the

19    Religious Freedom Restoration Act, which generally would

20    give federal grantees the right to act in accordance with

21    their religious beliefs when providing services under

22    federal grants.

23          THE COURT:  I mean, you've taken the same position

24    the government has, which is that there's no causation and

25    there's no redressability.

1          MR. RAIMER:  Sure.

2          THE COURT:  But at least on the redressability

3     prong, why couldn't I afford relief to these plaintiffs in a

4     way that doesn't affect your client at all and direct HHS to

5     provide an alternative means, whether it's through the

6     agency itself or through some other grantee, of making the

7     foster care services available to this couple?

8          MS. GLIKSBERG:  Sure.

9          And, Your Honor, anything is possible, Your Honor,

10    but at this stage of the proceedings, the burden is on

11    plaintiff to show there was "little doubt" as to a

12    likelihood of redress.

13         And plaintiffs haven't set forth, really, any

14    avenue of relief that does what you're proposing here.  They

15    haven't given any specifics.  They haven't given any

16    indication that something is either practically --

17         THE COURT:  Well, I mean, I do know that there are

18    at least a dozen different grantees, some of which,

19    according to the last report, actually, sort of tout their

20    work with LBGT refugees.

21         So, I mean, I hear you, but shouldn't I at least

22    give them some discovery before I determine that there's no

23    possibility that the kind of relief I've just discussed

24    would not be available?

25         MR. RAIMER:  I mean, again, there was no

1   allegation of that nature in their complaint.  And

2   Supreme Court, the D.C. Circuit have been pretty clear that

3   those sorts of allegations have to be included in their

4   complaint, even on standing grounds, for this sort of

5   relief, because, otherwise, the fact -- and even looking at

6   those other refugee organizations, Your Honor, it's

7   speculative that they would be willing to step forward and

8   provide the services requested.

9          THE COURT:  So why couldn't the agency do it?

10         Why couldn't I order the agency, say HHS, we

11  understand you have done most of this work through the

12  grantees, but you have to do it yourself.

13         MR. RAIMER:  And on that front, Your Honor, again,

14  it's not clear to me that HHS or ORR is set up to do that

15  sort of work in any way, shape, or form.

16         They've -- the congressional statute at issue here

17  authorizes the government to spend funds to enter into

18  private-public partnerships to provide this stuff.  So it's

19  not clear to me, just on the face of that, whether

20  they're --

21         THE COURT:  They don't have to.

22         MR. RAIMER:  Pardon?

23         THE COURT:  They don't have to.

24         MR. RAIMER:  They don't have to.

25         THE COURT:  I mean, HHS could have decided to run

1  this entire program itself, right?

2          I mean, it doesn't require that the agency enter

3  into these private-public partnerships, does it?

4          MR. RAIMER:  That, I'm not positive of.

5          I believe that's probably how they have carried it

6  out.

7          THE COURT:  Understood.  But they're not required

8  to do that.

9          MR. RAIMER:  And that's fair.

10          And in that case, it would depend on the specific

11  nature of the relief or the specific nature of Your Honor's

12  relief as to whether that would afford redressability to the

13  particular plaintiffs in this case.

14          And, again, they haven't given us any sort of

15  specifics as to what redress would look like in those

16  circumstances, and it's, again, their burden to show that

17  there's little doubt of the opportunity for redress.

18          But in the abstract there -- again --

19          THE COURT:  So is it your view that the government

20  could not have reasonably foreseen your clients' position

21  with respect to same-sex couples, given what the grant

22  application has alleged to have said?

23          MR. RAIMER:  The grant application -- I mean, the

24  grant application didn't specify anything --

25          THE COURT:  No.  I mean --

1          MR. RAIMER:  -- on this issue in particular.

2          THE COURT:  No.

3          On the other hand, it said, we will conduct the

4     program.  These are my words, not theirs.

5          MR. RAIMER:  Sure.

6          THE COURT:  We will conduct the program in such a

7     way that is consistent with our religious beliefs.

8          MR. RAIMER:  Sure.

9          THE COURT:  Catholic Church's religious belief is

10    that marriage is meant to be between a man and a woman.

11    They cite to proportions of the website that say, we --

12    children should be placed in a home with a male and a

13    female.

14          I mean, can't -- government can't stick its head

15    in the sand.

16          MR. RAIMER:  No, it can't stick its head in the

17    sand, but the D.C. Circuit and the Supreme Court and -- the

18    D.C. Circuit in *Freedom Republicans* and the Supreme Court in

19    *Simon* said the traceability test looks to whether something

20    can be fairly traceable to any encouragement on the part of

21    the government.  And there's nothing in the allegations that

22    indicate that the government in any way, shape, or form

23    encouraged.

24          THE COURT:  I guess I just find it mystifying that

25    there's relief afforded only if something can be qualified

1  as encouragement as opposed to turning the other way, when

2  it's known that government funds are being used in a

3  discriminatory manner.

4       I mean, I don't think anyone here would be

5  standing up and saying, making these arguments if the

6  discrimination was based upon race or if the discrimination

7  was based upon age.

8       MR. RAIMER:  Sure.

9       THE COURT:  I just cannot believe that anybody

10  would come in here and say that the government can turn its

11  head and stick its head in the sand if an organization is

12  saying, you know what, it's our sincere religious belief

13  that we're not going to -- that children shouldn't be placed

14  with African-Americans.  I just -- it's astounding to me

15  that anybody would take that position, and I'd be surprised

16  if anybody would.

17       MR. RAIMER:  And fair enough, Your Honor.

18       But I think there's a distinction there.

19       Like, for example, if the government were to go

20  out and hire the KKK or something like that to provide

21  adoption services, that's a pretty strong indication that

22  the government is actively encouraging discrimination.  You

23  don't hire the KKK unless you want them to discriminate.

24       Whereas in this case, the government hired the

25  U.S. Conference of Catholic Bishops, which is, again, one of

1    the premier providers of refugee services in the country.

2         There's simply no similar inference that the

3    government is attempting to encourage discrimination in this

4    case, where you don't have that sort of party that they

5    ended up hiring.  So I'd respectfully say there's a

6    distinction there, so -- on the traceability grounds there.

7         And, again, on the redressability grounds, you

8    were talking about the maximalist or minimalist approach.

9    And, Your Honor, obviously, I think it's important to ask

10   plaintiffs what they're requesting.

11        But on the maximalist side, I'd submit that in

12   their briefing, they appear to have essentially abandoned a

13   request for that maximalist form of relief.

14        THE COURT:  Or at least said that they're not

15   necessarily seeking it.

16        MR. RAIMER:  Not necessarily seeking and then

17   I think they added, not our objective.

18        Because, again, on those certain bases, they

19   appear to concede that if they were to do that, the

20   likely -- they would not only not redress their particular

21   injury but it would also have a negative impact on

22   potentially thousands of refugee children.

23        THE COURT:  Right.

24        MR. RAIMER:  And there's, again, no guarantee that

25   there is any agency -- it's purely speculative to suggest

1    that there's any agency that would be willing to step

2    forward and fill in the gap for any religious organization

3    that felt compelled to leave the program, because

4    it would be violating their sincerely held religious

5    beliefs.

6              And, again, the only request for relief that they

7    actually propose, they offered no specifics as to what that

8    form of relief looks like.

9              And at least, as far as the Conference is

10   concerned, the specifics, the devil is in the details on all

11   those sort of things, because on anything involving whether

12   or not the Conference could be asked to act in violation of

13   its sincerely held religious beliefs, all of that turns very

14   much on the specifics of any proposal.

15             They haven't provided those specifics; and in that

16   case, they just haven't met their burden to show there's

17   little doubt as to the possibility of -- as to the

18   possibility of redress.

19             THE COURT:  Would you agree with me that if there

20   was a way to fashion relief that didn't require your client

21   to make a decision, that this would be a different case than

22   the *Freedom Republicans* case?

23             MR. RAIMER:  I think it would be a different case

24   than the *Freedom Republicans* -- I think that's fair.

25             Again, it would very much depend on the specifics

1   of the relief requested.

2            THE COURT:  Right.

3            MR. RAIMER:  And at this point, we just don't have

4   any indication of what those specifics were.

5            THE COURT:  I also don't think they need to, at

6   this juncture, spell out the relief with such specificity

7   that -- I mean, there is some -- we have to sort of take a

8   step back and be practical about this.

9            I mean, they don't have every sense of what is

10  available and what isn't; they're limited in that sense.

11           And so it can't be that their complaint says,

12  well, as a form of relief, we want you to have us go to

13  X particular grantee and have that grantee consider us for

14  placement.

15           I mean, that can't be what they have to do.

16  That's not their burden; it's not that heavy.

17           MR. RAIMER:  Yeah.

18           But there is some limit to Your Honor's predictive

19  power.

20           I mean, even in *Freedom Republicans*, in *Simon*,

21  there were potentially millions of dollars at stake in both

22  of those cases that the defendants in those cases would be

23  losing.

24           And the courts, in those circumstances, were

25  unwilling to predict that on potential penalty of losing

```
 1    millions of dollars, those entities still wouldn't act.

 2            So there's very much -- there is some burden

 3    placed on them to show.  Again, it's a relatively high

 4    burden when they don't have the --

 5            THE COURT:  If I -- that may be speculation as to

 6    your client, but I don't need to speculate as to what the

 7    government would do.

 8            In other words, I should -- shouldn't I presume

 9    that the government will carry out its mandate from Congress

10    and spend the funds to provide the assistance that they're

11    supposed to provide to unaccompanied minors?

12            MR. RAIMER:  It has to provide the services to

13    uncompanied minors.  But it's an open question as to whether

14    those services would be provided in the Dallas-Fort Worth

15    area.

16            As the government pointed out, they're under no

17    obligation to provide services in any particular region of

18    the country.  I believe there's something like 20 cities

19    across the country right now that have participants in the

20    URM program at least, which I believe is the program.

21            THE COURT:  Right.

22            But there's a lot of them in Texas.

23            MR. RAIMER:  I think that's the UAC program.

24            THE COURT:  I guess I'm just looking at the list

25    of preferred community program grantees that ORR listed in
```

1    its 2014 annual report.

2              MR. RAIMER:  That's fair.

3              But -- so, again, it's a different question.  And

4    the question gets -- the question, for my client at least,

5    turns very much on how much they are or are not involved in

6    any relief Your Honor might order.

7              But that's -- and, again, in this case, there's

8    just no -- plaintiffs haven't met their burden to show that

9    there's little doubt as to a possibility of redress.

10             On the *Lyon* case, to the extent Your Honor's

11   interested in that, another couple distinguishing points.

12             In that case on redressability, plaintiffs there

13   appear to have pled the possibility -- they appeared, again,

14   to plead that there were more -- there would be more

15   alternatives for them.  They suggested that there were other

16   providers available.  Again, there are no similar providers

17   available that they've alleged in this case.

18             The redressability argument was, again, also based

19   on the premise that the relief requested was cutting off

20   funding, and then whether or not that would have the desired

21   effect.  And in this case, again, it's not clear that

22   plaintiffs are requesting that sort of relief.

23             On the traceability question, there, I think

24   another distinction is the fact that you're dealing directly

25   with the grantees in that case, a contract between the state

1    and the adoption providers, where, in this case, you've got

2    another link in the chain of causation, where you've got not

3    just the grantee but the grantee of a grantee.

4            And, again, *Freedom Republicans* says what you need

5    to do is, you need to look to see whether there's some sort

6    of sufficient causal nexus when you're looking about the

7    government's alleged failure to prevent harms caused by

8    other people, and I'd submit that two steps removed simply

9    is too far for a proper traceability analysis.  And I think

10   the Court's traceability analysis, in *Freedom Republicans*,

11   is also relevant there.

12           They looked to see, again, whether the conduct was

13   fairly traceable to any government conduct.

14           Again, you had the delegate selection method at

15   issue there.  And the Court kind of did a historical

16   analysis.  They were like, look, the delegate selection

17   model, that started back in 1912, around 1912, I believe.

18           Federal funding for conventions didn't come into

19   play until the 1970s.  So they decided to take a leap of

20   logic to suggest that in any way, shape, or form the Federal

21   Government caused the Republican Party to adopt this

22   particular position.

23           And I think we take a similar leap of logic here

24   to suggest that the Federal Government in any way, shape, or

25   form caused Catholic Charities to adopt its position on

1   marriage.

2           Obviously, the Catholic Church's position on

3   marriage far pre-dates the advent of federal funding for

4   these sorts of programs.

5           THE COURT:  Right.  Of course.

6           On the other hand, the potential harm only arises

7   because you have the money from the Federal Government.

8           In other words, we're not asking you to change --

9   this only becomes an issue because of Catholic Charities'

10  receipt of a government grant.

11          It's different in the *Freedom Republicans* case

12  because -- it wasn't because they were receiving money that

13  they adopted this particular system.

14          Here, we have a situation which you are carrying

15  out a function precisely because you've received a

16  government grant.

17          MR. RAIMER:  And I'd submit that that -- on the

18  basis of their claims here, I would submit that that

19  connection is simply too tenuous, because, again, they don't

20  challenge the fact that Catholic Charities is receiving

21  federal funds.  They challenge the specific injury of the

22  denial of their foster care application.

23          And *Freedom Republicans* says you have to look at

24  the nexus between the injury and the government conduct.

25  And, again, there's no allegations in the complaint that the

```
 1    government encouraged the specific conduct at issue here.

 2              THE COURT:  So can the government -- I go back to

 3    this.

 4              What is particularly unusual about this case is

 5    that they called, they made inquiry, and they said, this has

 6    happened to us, do something, help us.

 7              MR. RAIMER:  And I --

 8              THE COURT:  That's not good enough?

 9              MR. RAIMER:  And I'd submit that was the same --

10              THE COURT:  It's not 'rah, 'rah, go ahead and do

11    it, but it certainly would seem to me to be a tacit, not,

12    perhaps, an encouragement but tacit authorization if the

13    government turns a blind eye to it.

14              MR. RAIMER:  And I'd submit that was the same

15    situation that was the case in Freedom Republicans.  The

16    same allegations were there.  The government didn't take

17    steps to prevent discrimination, and they didn't cut off

18    funding when they found out discrimination was happening.

19    And the D.C. Circuit said that's not a sufficient nexus, and

20    I think that's the same case here.

21              Your Honor, I'm happy to talk about the Taxpayer

22    Standing issue as well or any other issues.

23              THE COURT:  I don't have any questions about the

24    Taxpayer Standing.

25              MR. RAIMER:  All right.  Thank you.
```

46

```
 1              THE COURT:  Thank you, Counsel.

 2         Ms. Glickman, right?

 3         MS. GLIKSBERG:  Glicksberg.

 4         THE COURT:  Glicksberg, I'm sorry.

 5         MS. GLIKSBERG:  Thank you, Your Honor.

 6         Would you like me to just get started addressing

 7  some of the issues that they raised?

 8         THE COURT:  Please.

 9         MS. GLIKSBERG:  Okay.

10         So I'd like to start --

11         THE COURT:  Maybe you should start here:  Tell me

12  what you are asking for in terms of relief.

13         MS. GLIKSBERG:  What we're asking for is simply

14  that grantee -- that any individual be able to walk into a

15  facility and not be able to be discriminated against; that

16  the program be run in a manner that's seamless, that's

17  non-stigmatizing and doesn't demean --

18         THE COURT:  Any individual or your clients?

19         MS. GLIKSBERG:  It's any --

20         THE COURT:  Because if it's any individual, then

21  you need to have Taxpayer Standing, or get me to provide the

22  sort of maximalist relief that I was describing earlier.

23         MS. GLIKSBERG:  So we both have individual

24  standing here and Taxpayer Standing.

25         THE COURT:  Right.
```

1          MS. GLIKSBERG:  So we're asking both that our

2    clients be able to enter into any facility and not be

3    discriminated against, not stigmatized, and not have any

4    obstacles in front of them that any other individual

5    wouldn't have.

6          THE COURT:  So let me be clear.

7          Are you, for example -- would you be -- because

8    there's a portion of your brief that I thought suggested a

9    softening of what you've just said.

10         I mean, you've just said that your clients, or

11   anybody, should be able to walk into any grantee's office

12   and not be discriminated against based upon being a same-sex

13   couple.  That's the relief you want me to grant.

14         MS. GLIKSBERG:  So, Your Honor, that's currently

15   the way that the system is set up.

16         The way that it's set up right now in Texas is

17   that USCCB is the only grantee that is accepting these

18   applications, that is processing these applications.

19   They're doing the whole screening process and everything.

20         So the way the program is set up right now, the

21   only place for our clients to go was for them to be able to

22   foster a refugee child or unaccompanied child.

23         THE COURT:  There are no -- do you know whether

24   there are other grantees in the area or in the state that

25   serve a similar role?

1           MS. GLIKSBERG:  Not for this specific program.

2           So the URM program is only administered by two

3    organizations, both religious organizations, one being

4    USCCB.  And our clients wanted to be considered for both of

5    those programs.

6           So the current way that the system is working,

7    that the government has set it up, is such that our clients

8    had to walk into the door of URM.

9           THE COURT:  What's the other religious

10   organization?

11          MS. GLIKSBERG:  The Lutheran --

12          THE COURT:  Lutheran Immigration and Refugee

13   Service?

14          MS. GLIKSBERG:  Correct.

15          Correct, Your Honor.

16          THE COURT:  And do you know whether they place

17   unaccompanied minors in the homes of same-sex couples?

18          MS. GLIKSBERG:  I do not know; but to my

19   knowledge, they don't have any facilities in Texas.  It's

20   only USCCB who's administering the program right now in

21   Texas.

22          THE COURT:  Okay.

23          MS. GLIKSBERG:  So the way that this system is

24   currently set up, they would have to walk into their doors.

25          There's no other mechanism that the government has

1    set up for this process -- for this foster process to be

2    able to set up in a way that doesn't discriminate, doesn't

3    stigmatize, and treats all applicants as equals.

4              So as long as there were no obstacles put in front

5    of individuals that weren't put in front of other couples,

6    we wouldn't have any objections.  But that's not what's

7    happening here.

8              THE COURT:  Would you be satisfied if I ordered

9    HHS to do what USCCB is doing, at least with respect to

10   same-sex couples?

11             MS. GLIKSBERG:  Accepting applications and

12   seamlessly processing without discrimination?

13             THE COURT:  Yes.

14             MS. GLIKSBERG:  Yes.

15             THE COURT:  Okay.

16             If it was done through the agency, that wouldn't

17   be a problem?

18             MS. GLIKSBERG:  Absolutely.

19             THE COURT:  Okay.

20             MS. GLIKSBERG:  And that's why this issue is

21   redressable, because it's the government's actions that

22   we're asking to be changed.  They're the ones who are

23   responsible for the program.  They're the ones who

24   administer -- that are in charge of administering the

25   program.  And so they're the ones who need to redress the

1    issues.  They have full control.

2         And if they change the policies that they have,

3    the current processes in place that are allowing their

4    grantees, including USCCB, to use a religious-based test to

5    discriminate and determine who can and cannot participate in

6    a program --

7         THE COURT:  Do you know -- I'll ask you the same

8    question I asked your colleagues, which is:  Are you aware

9    of any regulation, rule, or grant condition?

10        And essentially what I'm thinking of is some sort

11   of anti-discrimination rule or regulation or condition that

12   applies in this case.

13        MS. GLIKSBERG:  There are anti-discrimination

14   rules and policies, but they're not being applied.

15        The way that the process is currently set up --

16        THE COURT:  When you say "they're not being

17   applied," do you mean they're not being enforced by HHS?

18        MS. GLIKSBERG:  Correct.

19        HHS is providing these grants.

20        So it's really not that the policies don't exist

21   but that the processes that are in place right now are

22   violating those policies and are violating the Constitution.

23        Because if -- the way it -- what is happening is

24   that the government is knowingly enabling, authorizing, and

25   ratifying this grant agreement that is explicitly telling

1   them that they would be administering the programs in

2   accordance with Catholic doctrine, Catholic identity, the

3   moral convictions and beliefs of the Church.

4          And that, we all know, like Your Honor stated,

5   based on many different facts that we noted in our

6   complaint, means that they would not be providing services

7   to same-sex couples and would be discriminating on that

8   basis.

9          And, in fact, USCCB concedes in its own brief, in

10  its own moving papers, which it states it doesn't, that it

11  would not be subgranting to any entity that would be

12  violating USCCB's religious beliefs and that would be

13  fostering to same-sex couples.

14         So it actually does have control over what CCFW

15  does.  In fact, the one with control is the government

16  itself.

17         THE COURT:  Let's say, for instance, USCCB,

18  hypothetically, is the only grantee or the only means

19  through which a foster care adoption -- excuse me, foster

20  care placement could happen.  Why isn't that, then, squarely

21  sewed within the *Freedom Republicans* case?  Because then I

22  do have to speculate that this grantee is going to change

23  its policies in the way that the Circuit said I can't

24  speculate in *Freedom Republicans*.

25         MS. GLIKSBERG:  So *Freedom Republicans* is

1     completely different, which Your Honor recognized before,

2     because, first of all, it's the government's own conduct

3     here that we're challenging.

4            We're not challenging CCFW's conduct.  We're

5     challenging the government's own conduct.  They're fully

6     responsible for this program.

7            The fact that they chose to give those

8     responsibilities to a grantee doesn't mean that they give

9     away that responsibility of administering the program in

10    adherence with the Constitution.

11           And so they're ultimately responsible, and that

12    means that they're ultimately in control of the remedy.

13    It's their program, so they can redress the harm.

14           In *Freedom Republicans*, they were not in control

15    over the remedy, because discrimination could have continued

16    long after the government changed its policy.  That's not

17    the case here, which Your Honor recognized before.

18           If the government decides that its grant -- that

19    there cannot be discrimination on the basis of religious

20    beliefs that would prevent equal access to the programs to

21    all individuals and all members of the public, then that is

22    the remedy, it's resolved, there can be no discrimination

23    against our clients.  They'd be able to seamlessly apply,

24    not be discriminated against or be demeaned for being turned

25    away and being treated as inferior.

1          THE COURT:  So the relief you're seeking

2    contemplates either one of two things, it seems to me;

3    either, A, that the opportunity for placement would be

4    available through either the agency or a grantee that isn't

5    USCCB; or that the government would have to discontinue

6    providing grants to USCCB altogether and figure out some

7    other way to implement the program, right?

8          I mean, it's either one or the other, correct?

9          MS. GLIKSBERG:  Correct.

10         We're not asking that the government remove all of

11   its funding to USCCB.

12         THE COURT:  That would be the consequence.

13         I mean, if what you've told me is accurate, which

14   is that only USCCB can provide foster care placement in the

15   Dallas-Fort Worth area, absent some change in circumstance

16   or some modification or adjustment by the government, it's

17   all or nothing.

18         MS. GLIKSBERG:  So Your Honor was correct when you

19   stated that that is purely speculative at this stage of the

20   litigation, because what we know the remedy is is merely

21   putting a stop to the discriminatory policy.

22         As long as the government stops enabling,

23   authorizing, and ratifying the use of a religious-based test

24   that is discriminating and preventing equal access to

25   government programs, that is the remedy.

1          And the Third Circuit in *Hassan* actually said

2     that.  They said, redressability is "easily established."

3          Whereas here, the alleged injury arises from an

4     identifiable discriminatory policy.

5          And then it further explains that, while we may

6     not be able to predict "the exact nature of the possible

7     relief without a full development of the facts" -- so

8     without discovery here -- "an order enjoining the policy

9     would redress the injury."

10          So we don't have to, at this point in the

11     litigation, determine exactly what mechanism would be in

12     place in order to redress the harms.  All we have to

13     determine is the fact that we know that ending this

14     discriminatory process would redress the harms.

15          And it would redress all of the -- it would

16     provide relief for all of the injuries that occurred here.

17     There are -- there's not one injury that wouldn't be

18     provided relief if the government simply stopped allowing

19     the use of a discriminatory religious-based test.

20          And just to address a few other issues that were

21     brought up regarding redressability.

22          First of all, the claim was made that somehow, the

23     government cannot -- that although they have the obligation,

24     they recognize, to police the conduct of its grantees and

25     can take corrective action as necessary, that somehow there

1    wouldn't be a remedy here.

2            But that's actually incorrect, because the remedy

3    is the change in the federal policy.

4            So if the corrective action here is all the

5    government has to do is change that policy --

6            THE COURT:  Yeah.  No.  Look --

7            MS. GLIKSBERG:  -- and no longer does that issue

8    occur.

9            THE COURT:  No.  I know.

10           I hear what you're saying, which is that -- again,

11   it's the maximalist relief I was talking about, which is the

12   government either has to -- essentially would be put to the

13   decision; either we continue to operate the program in which

14   we -- in the manner in which we do, which puts Catholic

15   Charities to the test; and if they walk away, then the

16   government has to figure out another way to carry out the

17   program.

18           I mean, that's the end result of what you're

19   talking about.

20           MS. GLIKSBERG:  Your Honor, so, again, while we

21   don't have to contemplate the actual mechanism, there are

22   other mechanisms in which USCCB can continue providing

23   services and our clients would be able to walk in and have

24   their application be processed seamlessly without being

25   discriminated against.

1          THE COURT:  How could that happen?

2          I mean, wouldn't that be really the essence of

3    speculation?  I mean, somehow, we're going to craft relief

4    or craft a mechanism through which they would be able to get

5    comfortable with this notion?  That seems to me to be highly

6    unlikely.

7          MS. GLIKSBERG:  There are -- there's different --

8    there's a multitude of different possibilities, and the

9    truth is that --

10         THE COURT:  Give me one.

11         MS. GLIKSBERG:  -- without discovery, we're not in

12   the best position to be able to --

13         THE COURT:  Give me one.  Give me one scenario in

14   which you can contemplate -- I keep saying Catholic

15   Charities but -- USCCB would continue to operate as it does

16   if it were required to place children with same-sex couples,

17   in violation of their religious beliefs or in a manner

18   inconsistent with their religious beliefs.

19         I mean, I can't think of one.

20         MS. GLIKSBERG:  Thinking off the top of my head,

21   I'm happy to provide an example, but it might not be the

22   best situation, because I don't know that federal defendants

23   are in the best position to interpret how the inner workings

24   of their program would best create a solution to this

25   problem.

1          But the government could take over the application

2    process and process -- create a screening process, and then

3    provide applicants with where to -- with options of where to

4    go to be able to foster a child.

5               THE COURT:  Right.

6               But that's different than what I just asked you,

7    which is:  Can you contemplate a scenario in which USCCB

8    would be required to be that service provider?

9               MS. GLIKSBERG:  To be -- no; that they would be

10   required to have to provide.

11              THE COURT:  Right.

12              MS. GLIKSBERG:  No.

13              But there's other mechanisms to be able to ensure

14   that their religion --

15              THE COURT:  Right.

16              But my question is:  Can you think of a mechanism

17   through which this particular provider could be compelled to

18   do what you're asking?

19              MS. GLIKSBERG:  No, we're not asking to compel.

20              And that's actually another thing that they were

21   saying, is they reference the remedy.

22              The only reason USCCB is mentioned in the remedy

23   is simply because that is the way the program is run right

24   now.

25              So if it were any other program administrator,

1    we'd be happy to say that we could go through them or

2    whoever was going to be administrating the process.

3            The bottom line, though, is that the clients

4    should be able to walk in to whatever the process is and be

5    treated the same as anyone else; not be stigmatized; not be

6    demeaned; and not have any obstacles in front of them that

7    aren't in front of other people.

8            THE COURT:  Would your clients say they were

9    stigmatized if they -- let's say hypothetically this

10   resolution here is that the agency itself takes over this

11   process for same-sex couples.

12           Would that be, in your view, stigmatizing, that

13   your clients, instead of being able to go to USCCB, instead,

14   they have to go to HHS?

15           MS. GLIKSBERG:  The process would have to be the

16   same for everyone.  So everyone would have to go through the

17   same process.

18           And what that would mean is, in your scenario, if

19   HHS is administering that process or that screening process,

20   everyone should have to go through that process and it

21   should be equal for everyone.

22           And then the government can determine from there

23   who then would process the foster -- providing the actual

24   foster child or who that individual, which grantee they

25   would go to.

1          But the bottom line is that, no matter who the

2     individual is, they have a right to walk in and initiate

3     that application process without feeling demeaned or

4     de-stigmatized [sic] and having that injury because they had

5     to go through different hoops or they had different

6     obstacles because of their sexual orientation, the same-sex

7     character of their marriage, or any other issue.

8          THE COURT:  I guess what I'm just getting at is

9     let's say -- I don't know what the process is.  But whatever

10    process is in place now, I assume that you had to put in an

11    application through the grantee; is that right?  Is that how

12    it worked?

13         MS. GLIKSBERG:  Correct.

14         THE COURT:  So say there was a parallel process

15    through HHS, okay?  Exact same process, but one HHS is

16    running, one the grantee is running.

17         Do I hear you correctly that that would not, in

18    your view, create a stigma because your client would have to

19    go to HHS as opposed to go to Catholic Charities?

20         MS. GLIKSBERG:  If there's any difference provided

21    to one couple versus a different couple simply because

22    that --

23         THE COURT:  No difference other than just which

24    door you've got to walk through.  That's all.

25         I mean, exactly the same process, same end result.

1          MS. GLIKSBERG:  So you're saying that same-sex

2    couples would have to go through one door and anyone else

3    through another door?

4          THE COURT:  Right.

5          MS. GLIKSBERG:  To me, that's discrimination and

6    stigmatization and doesn't resolve the problem.  That's no

7    different than separate but equal.

8          THE COURT:  So then if that's your position, then

9    I really do have no choice, in terms of a remedy, other than

10   to direct the agency to provide grants to no grantee that

11   discriminates against same-sex couples.

12         MS. GLIKSBERG:  As long as they would do, for

13   example, as the scenario -- if they were doing the screening

14   process and then they were determining who that couple would

15   go to, that wouldn't discriminate; that's not on the face

16   discriminating against the person --

17         THE COURT:  I'm sorry, who did that process?

18         MS. GLIKSBERG:  If HHS provided the screening

19   process, for example --

20         THE COURT:  Right.

21         MS. GLIKSBERG:  -- and any couple could walk in

22   that door, no matter who they are, and have their

23   application processed.  HHS can then determine where that

24   couple is sent.

25         But there's no stigmatization or treatment of that

1    individual as inferior merely because of the same-sex

2    character of their marriage; whereas if you're telling

3    people to go through two separate doors, you're telling them

4    that one is inferior to the other, that one doesn't have --

5    isn't treated as equal.

6              THE COURT:  I guess I don't understand why it

7    would be inferior if the process and results were the same.

8              In other words, maybe I'm being overly simplistic

9    here, but you are a same-sex couple, you are interested in

10   being a foster parent, you turn to the grantee in your area,

11   if that grantee happens to be a Catholic-affiliated charity,

12   you know, well, I can't go there, I'm going to go directly

13   to HHS.  Is that a problem?

14             MS. GLIKSBERG:  Your Honor, people should be able

15   to walk in the doors of any facility and not feel

16   stigmatized or demeaned.

17             So whoever is administering the application

18   process needs to be accepting all applicants equally, no

19   matter who they are, what sex, what sexual orientation.

20             THE COURT:  So you're still not answering my

21   question, which is:  Would that be a problem?

22             In other words, there's just two different

23   recipients of applications; HHS is one recipient; the

24   Catholic grantee is the other.  Why is that a problem?

25             MS. GLIKSBERG:  That in and of itself creates a

```
1    stigma.  It's saying that your application process is going
2    through --
3              THE COURT:  So that gets back to what I was
4    saying, which is that, the only resolution then would be to
5    not allow any federal funds to go to any Catholic-affiliated
6    organization; because every Catholic-affiliated
7    organization, we can agree, will not carry this out and
8    provide placement with same-sex couples.
9              MS. GLIKSBERG:  So to clarify for the Court --
10   and, again, this is for a later stage in the litigation,
11   determining the exact and precise remedy.
12             But there's a difference between actually
13   administering the care for the children and providing
14   placement and actually screening the application process.
15             So the government can take over that process or
16   someone else can take over that process.
17             THE COURT:  But it can't be the Catholic.
18             MS. GLIKSBERG:  But it can't be the Catholic
19   Charities if they're not willing to provide equal treatment
20   to any couple who's walking through their door.
21             THE COURT:  Okay.
22             MS. GLIKSBERG:  May I address other issues for the
23   Court?
24             THE COURT:  Sure.
25             MS. GLIKSBERG:  Okay.
```

1           So going back to individual standing, separate and

2     aside from their status as taxpayers -- and all of our

3     plaintiffs do have Taxpayer Standing.

4           Bryn and Fatma experienced injuries that are a

5     result of the government's own conduct and that are

6     redressable via a change in that conduct and to the

7     processes.

8           There are two specific government actions that

9     make it traceable, that make the injuries traceable to the

10    federal defendants.

11          First, they ratified the discrimination when they

12    awarded USCCB with millions of dollars in grant monies,

13    knowing that USCCB stated explicitly that it would be

14    discriminating on the basis of its Catholic identity, the

15    authentic teachings of the Catholic Church, its religious

16    beliefs and convictions.  And it didn't even try to hide

17    what that meant.

18          USCCB even concedes that it put federal defendants

19    on notice that it would be administering the programs as

20    such and that it would not subgrant with any entity that

21    would license same-sex couples.

22          THE COURT:  I understand the theory, which is that

23    there's two types of -- there's two federal conducts you're

24    challenging; one is the actual giving of the grant, and the

25    other is the failure to respond when your clients

1    complained.

2              MS. GLIKSBERG:  The failure to respond, there's

3    one thing I do want to add about that, which is that, that's

4    a denial anew.

5              So when federal defendants failed to do anything,

6    they were told, this is your program.

7              THE COURT:  Right.

8              MS. GLIKSBERG:  You're responsible for this

9    program.  You're not doing anything to help us.  Help

10   remedy.  You are supposed to be responsible for this

11   program.  And they failed to do anything.

12             THE COURT:  It's a de facto denial.

13             MS. GLIKSBERG:  Exactly.

14             It's not just a ratification of USCCB's denial,

15   but it's another de facto denial, Your Honor is correct.  So

16   that's an important thing to mention about that.

17             As for the injuries, defendants want to focus on

18   the fact that it's just a lost opportunity to be able to

19   foster a child.  That is not the only injury, though, that's

20   being alleged here.

21             What's also being alleged is the impermissible

22   government message that's being sent to Bryn and Fatma and

23   to same-sex couples; that they're somehow unworthy of

24   participation in the federal program; that they're somehow

25   less deserving of respect.  And that stigmatizes them as

1    inferior.

2           It subjects them to demeaning --

3           THE COURT:  Is that injury only with respect to

4    your Taxpayer Standing position or your individual?

5           MS. GLIKSBERG:  No.  These are all individual

6    injuries that I'm talking about.

7           THE COURT:  Okay.

8           MS. GLIKSBERG:  So they experience stigma as being

9    inferior, which subjected them to demeaning, unequal

10   treatment.

11          THE COURT:  Of course, nobody -- but, of course,

12   nobody has challenged that your clients have been injured.

13          MS. GLIKSBERG:  They specifically stated, though,

14   that part of their analysis of why it's not redressable is

15   simply that Bryn and Fatma wouldn't be able to walk into

16   their door and that they would have to go out of business.

17   But that's actually not the only injury here.

18          And so changing the federal policy, although it

19   might change the whole processes of how everything is

20   functioning, it would immediately redress their equal

21   protection and due-process claims from the stigma and

22   demeaning treatment that they had and their Establishment

23   Clause claims; because this was explicit government

24   coercion, an endorsement of religion, when it ratified the

25   use of a religious-based test to determine who could and

1    could not participate in a federal government program.

2            So when it did that, it not only coerced

3    individuals into participating in a religion, but it also

4    impermissibly incentivized them to submit to religious

5    indoctrination.  And, yes, that's all at taxpayers' expense,

6    but that is an individual harm that they also experienced.

7            And that coercive endorsement of religion is a

8    cognizable injury under the Establishment Clause, and that's

9    been repeated in many, many cases identifying that as a

10   cognizable injury.

11           And similarly regarding --

12           THE COURT:  So let me ask you a question.

13           If there were to be a remedy that enabled your

14   clients to become foster parents, other than the complaint

15   of how the agency is spending its money, is there any other

16   injury that would need to be remedied, or would that

17   essentially moot out that claimed injury?

18           MS. GLIKSBERG:  Without a change in the process,

19   their injuries are not remedied, because it's not just about

20   the lost opportunity to be able to foster a child and the

21   lost opportunity to be able to participate in a federal

22   program, but it's also that stigma and that demeaning

23   treatment as unequal.

24           In *Heckler v. Matthews*, the Supreme Court stated

25   that stigma itself is a cognizable injury under the equal

1    protection and due process guarantees, just as I just

2    mentioned that the coercive endorsement of religion is a

3    cognizable injury under the Establishment Clause.

4              So these are two separate injuries that they have

5    experienced, aside from their lost opportunity to be able to

6    foster a child.

7              And those can only be redressed by a change in the

8    government's policy that puts a stop to the use of a

9    religious-based test to determine who can and cannot

10   participate in a federal program and that does not ensure

11   equal access to all member of the public to the federal

12   program.

13             So separate and aside from their status as

14   taxpayers, those are injuries that they have, that they've

15   experienced personally that need to be redressed.

16             THE COURT:  Can I just ask -- and maybe I've asked

17   this in many ways, but just ask it very explicitly:

18             Is the relief you are contemplating, would require

19   the government to no longer provide grants for this program,

20   to any organization that would discriminate against same-sex

21   couples?

22             MS. GLIKSBERG:  Your Honor --

23             THE COURT:  Because you've said in your brief that

24   you -- I mean, you've said in your brief that you're not

25   looking to do that.

1          MS. GLIKSBERG:  Correct, we are not looking to

2   take away funding from USCCB.

3          We are happy to create religious accommodations to

4   ensure that they can continue providing their services.

5          We're simply stating that the process needs to be

6   seamless for all couples.  There needs to be no obstacles in

7   place that aren't for one couple that aren't for the second

8   couple.

9          So as long as there's a process in place ensuring

10  that people can submit their application equally without any

11  additional tangible or dignitary harms --

12          THE COURT:  So if as government counsel said, say

13  there is, tomorrow, another provider in the Fort Worth area

14  that would not discriminate on the basis of your clients

15  being a same-sex couple, would that satisfy you?

16          MS. GLIKSBERG:  So long as they could be -- there

17  would be seamless treatment of their applications and they

18  could be treated equally, that would not be a problem.

19          THE COURT:  Okay.  I just want to make sure I'm

20  clear on that.

21          MS. GLIKSBERG:  Would Your Honor like me to

22  address Taxpayer Standing as well?

23          THE COURT:  Sure.

24          I'm having a hard time seeing the Taxpayer

25  Standing argument that you're making.

1           I mean, you read these cases and it essentially

2     seems to say that both the program and the specific

3     allocation of funding needs to specifically contemplate, and

4     do so expressly, the granting of monies to a religious

5     organization.

6           And neither the statute that establishes this

7     program nor the appropriations for the program do that.  So

8     how are you getting around *Hein*?

9           MS. GLIKSBERG:  So *Hein* -- it's interesting you

10    say that.

11          So Alito, in *Hein*, actually specifically talked

12    about *Flast*.  And it said, and I quote, "Congress surely

13    understood that much of the aid mandated by the statute

14    would find its way to religious schools."

15          Because in that case in *Flast*, and by that

16    standing, said that it imputed intent upon Congress to be

17    funding religious organizations because of that general

18    knowledge that Congress should have had about the way the

19    school system was run in *Flast*.

20          Because, in *Flast*, there was no explicit statement

21    that it would be going to religious organizations.  It was

22    exactly like, here, where there is a grant program and

23    Congress knew that that grant -- that amongst the grantees

24    would be religious organizations.

25          The same thing is here.

1          Here, Congress knew that child welfare programs in

2     this country are run largely by religious organizations.

3     And so, like in *Flast*, that intent is imputed on them to

4     have funded religious organizations.

5          So what they also were on --

6          THE COURT:  But isn't it also true that Congress

7     structured it in such a way that it's really the Executive

8     Branch that decides where the money is going to?

9          The Executive Branch says, first, they don't have

10    to do this through grants, but they have elected to do that.

11    And then secondly they've elected to -- they have discretion

12    as to who gets the money.

13         It can't be that just because Congress has

14    awareness that there is some money going to a religious

15    organization, that that satisfies *Flast*, because otherwise

16    that would blow the doors pretty wide open.

17         MS. GLIKSBERG:  Well, what it is is that there's a

18    specific statutory scheme and conscientiously allowing for

19    the usage of grant programs, and they knew that those grant

20    programs would be used for religious organizations.

21         And here, there was actually -- not only were they

22    on constructive notice from general understanding of the

23    system, but they actually had actual notice that the

24    grantees at issue were awarding -- that were religious

25    organizations; that these grants were being awarded to

1   religious organizations, including USCCB.  And they know

2   that from the annual -- congressionally mandated annual

3   expenditure reports.

4         THE COURT:  I don't think there's any doubt that

5   Congress knows where the money is going.  I just don't think

6   that's the test.

7         MS. GLIKSBERG:  So the *Flast* test is a two-part

8   test.  It's first that Congress must have exercised its

9   taxing and spending power to specifically authorize the

10  challenged expenditure.

11        THE COURT:  Are you aware of any case in which

12  there's been Taxpayer Standing found in which the

13  congressional action does not explicitly reference the

14  giving of money to a religious organization?

15        Now, *Flast* is, I think, a -- it's sort of an

16  outlier, in that the term "private school" there was

17  essentially synonymous with religious organization.

18        So is there any such case?

19        MS. GLIKSBERG:  Well, school -- so it is a

20  directly -- I would say is directly exactly what happened in

21  *Flast*, in the sense that there is general knowledge --

22        THE COURT:  But leave *Flast* aside.

23        MS. GLIKSBERG:  But leaving *Flast* aside --

24        THE COURT:  Any other case.

25        MS. GLIKSBERG:  -- in *Bowen v. Kendrick*, there was

1    no requirement that it go to religious organizations.  They

2    just knew that religious organizations would be amongst the

3    grantees.

4            THE COURT:  No, but religious organizations were

5    expressly mentioned in the statute in *Bowen*.

6            MS. GLIKSBERG:  So what I would say is that it's

7    not about the Executive Branch's discretion here.  It's

8    about what Congress knew from its expenditure reports and

9    what it should have known.  And we know that because of

10   *Bowen*.

11           In *Bowen*, it determined that the fact that we're

12   challenging federal defendants' administration of the funds

13   is not any less a challenge to Congress's taxing and

14   spending power merely because --

15           THE COURT:  Why wouldn't that have been given

16   Taxpayer Standing in *Hein*?

17           I mean, surely Congress knew the Executive Branch

18   was using money to establish the White House offices that

19   were being challenged there.

20           MS. GLIKSBERG:  Because there -- so there's -- the

21   first part of the test is the problem.  And that is what the

22   issue is both in *Dumont*, in *Navy Chaplaincy*, and in *Hein*.

23           The first part of the test is they have to

24   specifically challenge the -- the taxing expenditure has to

25   have been exercised to specifically authorize the challenged

1    expenditure.

2           Here we have a specific statute, specific

3    congressional mandate for the URM and UC programs and a

4    specific appropriation of funds and even a statutory scheme

5    that contemplated the usage of grants, which we know was

6    also contemplated to go to religious organizations, all for

7    the accompanied -- unaccompanied youth.  So this was a

8    statutory scheme that was very specific and that didn't

9    exist in those cases.

10          In those cases, for example, in *Navy Chaplaincy*,

11   there was a lump-sum payment given straight -- so there was

12   an appropriation that wasn't in any way connected to a

13   specific statute.  It was a lump-sum payment, given from

14   Congress to the Executive Branch, to be able to administer

15   money for Navy Reservists.

16          But as Kavanaugh stated and acknowledged actually

17   in *Navy Chaplaincy*, was that there was no mention of

18   retirement benefits, let alone any mention of Navy Chaplains

19   or retirement program for Navy Chaplains.

20          So it's the fact that they've lacked the

21   specificity there.  There was nothing specifically

22   authorizing the challenged expenditure.

23          Here we have a very specific statutory scheme that

24   was set up to administer this grant program, and that is

25   what has to be met:  That Congress exercised its taxing and

1    spending power to specifically authorize the grants at issue

2    here in this case.

3           And Congress actually continues funding this

4    program year after year, knowing that the expenditure

5    reports state that it's going to religious organizations.

6    And then federal defendants distributed the funds in

7    accordance with that statutory scheme.  So it's all tied to

8    a statutory scheme, which is not the case in *Navy*

9    *Chaplaincy*.

10          Actually, in *Hein*, the Court said that plaintiff

11   couldn't even point to any statute that they -- that they

12   were appropriating funds to.  So there was -- there is no

13   statutory scheme there; there's no connection between the

14   statute and the appropriation.

15          Here, the funds were earmarked, the appropriations

16   were earmarked to be able to implement the programs of that

17   congressional mandate.  So it's a very specific intent of

18   Congress that didn't exist in those other cases, that do

19   exist, though, in *Bowen v. Kendrick* and in *Flast*.

20          And like I was saying, the Court, in *Bowen v.*

21   *Kendrick*, said it was not any less a challenge to track

22   congressional taxing and spending power merely because the

23   funds flowed through and were administered by the Executive

24   Branch, and that was what happened here.

25          So all Congress had to have done was create a

1    specific statutory scheme for these programs, which it did.

2    And it had to do that knowing that these grants would be

3    going to religious organizations, which it knew.

4            The fact that the Executive Branch then chose to

5    use it to ratify, authorize, and endorse the usage of a

6    religious-based test to discriminate is not part of the

7    *Flast* test.  That is a completely separate inquiry.

8            All we have to establish here is that they knew

9    that there was -- that they established a program for the

10   grants and that they knew that those grants were going to go

11   to religious organizations.

12           And that's what we have here, exactly like in

13   *Flast* and *Bowen v. Kendrick*.

14           THE COURT:  Okay.  I'll ask you to wrap up,

15   Counsel.

16           MS. GLIKSBERG:  I just want to note also that *Hein*

17   did not change the law.  *Hein* actually affirmed *Bowen v.*

18   *Kendrick* and *Flast* and decided the case on a completely

19   separate issue, that being lump-sum payments.

20           Congressional budgets handed over to the Executive

21   Branch for its own general, discretionary use, and that's

22   not what the case is here.

23           And all of the cases to the contrary, that's what

24   they're based on:  That discretionary use that is not tied

25   to a statutory scheme.

1          In fact, those cases don't even contemplate the

2   uses of a grant program, which is what -- the case in *Flast*,

3   *Bowen v. Kendrick*, and here.

4          And to bring that full circle, because -- *Navy*

5   *Chaplaincy* and *Hein* failed that first step of the test.  We

6   pass both steps of that test.

7          Federal defendants apparent --

8          THE COURT:  Counsel, I'm just going to -- if

9   there's anything more on Tax -- I've got your argument on

10  Taxpayer Standing.  So if there's anything you want to add

11  about --

12         MS. GLIKSBERG:  I'm happy to provide concluding

13  remarks if the Court would prefer.

14         THE COURT:  That would be --

15         MS. GLIKSBERG:  Okay.

16         But it's federal defendants' apparent position,

17  not plaintiffs', that radically threatens the welfare of the

18  children in federal defendants' care and the fundamental

19  limitations on government power set forth in the

20  Constitution.

21         There's an entire universe of possible loving

22  homes being denied to the children in the government's care

23  because they're being denied as possible -- the opportunity

24  to even apply to be foster parents because of a

25  religious-based test that is discriminating against them and

1    that is disabling access to public programs.

2            If plaintiffs cannot vindicate their

3    constitutional rights here, children in federal defendants'

4    care will continue being denied possible placement options

5    that might serve their best interest, all because of federal

6    defendants' own actions that are enabling USCCB to use

7    taxpayer dollars to advance religious doctrine and

8    discriminate on the basis of religion and deny people equal

9    opportunities and equal rights.

10           THE COURT:  All right.  Thank you, Counsel.

11           MS. GLIKSBERG:  Thank you, Your Honor.

12           THE COURT:  All right.  Any rebuttal?

13           MR. POWERS:  Just briefly, Your Honor.

14           THE COURT:  Sure.

15           MR. POWERS:  Thank you.

16           Just a few quick points.

17           One point is that, you know, the government has no

18   objection if the Court wanted to hold the motion in part as

19   to the individual plaintiffs as this potential supplemental

20   grantee option plays out, you know, we certainly wouldn't

21   have an objection to that.

22           We do think the Taxpayer Standing issue can be

23   decided immediately and that would need to be decided

24   regardless, because greater relief is sought pursuant to

25   that avenue.

```
1              THE COURT:  Right.

2              MR. POWERS:  And I just wanted to clarify exactly

3    what's happening.

4              You know, there's two programs here; there's the

5    URM program and the UAC program.

6              The potential supplemental grantee would be for

7    long-term foster care in the UAC program.

8              The agency is not, at present, taking action with

9    regard to the URM program, although it always is evaluating

10   the best manner in which to administer services under these

11   programs.

12             THE COURT:  But which of the two programs are you

13   all seeking for?

14             MS. GLIKSBERG:  They're looking to be considered

15   for both programs.

16             THE COURT:  For both.  Okay.

17             MR. POWERS:  And at present, in the URM program,

18   it is true that USCCB is the sole designee, the sole grantee

19   in the state of Texas, which I think puts this case more in

20   the Freedom Republicans context because it's sort of the

21   all-or-nothing relief that the Court has discussed, and that

22   all-or-nothing relief would not get these individual

23   plaintiffs any closer to the relief they're seeking.  But,

24   again, if the Court wants to hold the motion while that

25   process plays out, we wouldn't object to that.
```

1              And I just wanted to -- more broadly, the ideas
2    about kind of relief the Court could fashion that would sort
3    of superintend the agency's operations or construct new
4    mechanisms for the programs to operate, there's no legal
5    basis for the Court to order the government to engage in any
6    particular manner of delivering services under these
7    programs.  Again, the programs are highly discretionary and
8    in the executive's contemplation as to how to deliver these
9    services.
10             THE COURT:  Right.
11             But I could have ordered you not to deliver them
12   in a discriminatory manner.
13             MR. POWERS:  And if the Court issued that relief,
14   it would not bring the plaintiffs closer to the opportunity
15   they seek.
16             Again, though, this may become moot or may change
17   significantly if the supplemental grantee situation --
18             THE COURT:  I guess I don't understand that
19   because if -- you say that because -- I don't understand,
20   because if what ultimately I were to find is that you were
21   spending money in violation of the Establishment Clause, and
22   I've got to assume that at this juncture, I don't understand
23   why that doesn't remedy their injury.
24             MR. POWERS:  I mean, I think that the facts are
25   somewhat changing on the ground.

1          THE COURT:  But under the current facts, I mean,

2    that would resolve things.

3          I mean, you are not allowed to spend money in

4    violation of the Establishment Clause, which means you need

5    to operate the program through grantees that aren't going to

6    discriminate.  That seems pretty straightforward.

7          MR. POWERS:  And if the Court issued that relief

8    and the agency then evaluated how best to deliver services

9    to the unaccompanied youth, it wouldn't necessarily mean

10   that the grantees would -- or that the services would be

11   rendered in this location where the individual plaintiffs

12   are.

13         Again, that's a matter of policy discretion at the

14   agency and the Court wouldn't have any legal basis to go the

15   next step and to order the government to engage in that

16   particular metro area.

17         And I think that's where the disconnect --

18         THE COURT:  So you would -- I should speculate

19   that you would abandon Dallas-Fort Worth.

20         MR. POWERS:  I don't think you should speculate

21   either way.  I think that's the problem.

22         THE COURT:  Or that you might.

23         I should take that into the equation, that the

24   government might abandon the Dallas-Fort Worth area instead

25   of finding a different grantee.

1              MR. POWERS:  I don't think that there's any

2       speculation either way that's required or appropriate.

3              I think the point is that it's a contingency in

4       the future that there would be a next step in the chain

5       beyond the Court's relief, and the Court wouldn't have any

6       basis to determine one way or the other how the next step

7       would play out.

8              THE COURT:  And I guess doesn't that sort of run

9       up against *Animal Legal Defense Fund*?

10             The Court there says -- well, in any event,

11      there's a suggestion there that I don't need to -- and it's

12      sort of citing to -- in any event, there's a suggestion here

13      that I don't need to speculate as to whether the government

14      will comply with what it's supposed to do.

15             This is just sort of reviewing *FEC versus Akins*.

16             MR. POWERS:  I think in that context, again, that

17      that's sort of a case involving a causation by authorization

18      theory, and I think that's what brings the nexus closer and

19      allows the Court to infer that -- those elements of

20      standing.

21             THE COURT:  Okay.

22             MR. POWERS:  And I just have one small point on

23      the Taxpayer Standing point, which I don't believe was noted

24      in our briefs.

25             In *Hein*, actually, page 608, footnote 7, the Court

1    actually noted that there was a conference report where

2    Congress -- or the Conference noted that there was a portion

3    that was sort of informally earmarked for one of these

4    faith-based centers.  So clearly Congress, in some sense,

5    knew.  But that's not enough; there needs to be statutory

6    text.

7                 Unless the Court has further questions --

8                 THE COURT:  No.  Thank you, Counsel.

9                 MR. POWERS:  Thank you, Your Honor.

10                THE COURT:  Mr. Raimer.

11                MR. RAIMER:  Your Honor, I'm still not exactly

12   sure the sort of relief that plaintiffs are requesting here,

13   but I do think we now know one thing that is certainly off

14   the table.

15                They've indicated that the sort of maximalist

16   relief you are proposing is off the table, their words.

17   They're not looking to take away the funding from USCCB.

18   So I think that removes any element of relief that would

19   involve either yanking funding from USCCB or requiring them

20   to act in violation of their religious beliefs.

21                On the sort of stigmatic injury question, whether

22   that can be redressed one way or another, very briefly on

23   that:  The Supreme Court in *Allen v. Wright* said that any

24   sort of stigmatic injury, I believe this is footnote 22, has

25   to be tied to a concrete particular injury.

1          So remedying stigmatic injury in the abstract

2    is -- it's not a viable claim; you have to tie that to some

3    sort of relief that affords them a remedy for the particular

4    injury that they suffered; in this case, a denial of

5    consideration of their foster application.  So, again, we're

6    not looking at sweeping programmatic relief here.  Any

7    relief would have to be tailored to address that specific

8    relief here.

9          And then more broadly on the traceability

10   question, repeatedly, there was reference to the government

11   policy, government policy, government policy.

12         There's no government policy here, Your Honor.

13   It's a grant fund, and the actions we're talking about are

14   not the actions of the government but the actions of a

15   subgrantee two levels removed from any government conduct.

16         Again, the question is whether it's fairly

17   traceable -- that conduct is fairly traceable to any

18   encouragement on the part of the government.

19         USCCB has been receiving these funds for numerous

20   years, from administrations on both sides of the aisle.

21         I submit it's simply implausible to think that at

22   the same time the Obama administration, for example, was

23   briefing *Obergefell*, they were surreptitiously encouraging

24   USCCB to discriminate against same-sex couples.

25         And then finally on the Taxpayer Standing

1    question, I don't disagree, there may be some tensions

2    between what *Hein* said and what *Flast* says.  But

3    I don't think you have to worry about any of that, because

4    the D.C. Circuit's done the work for you in *Navy Chaplaincy*.

5    They said, look, a case does not fit within the narrow *Flast*

6    exception because there's no legislative enactment that

7    expressly authorizes and appropriates funds for the

8    particular harm at issue.

9         And there, they were super specific.  They said,

10   look, Congress didn't say favor Catholic Chaplains in the

11   retirement system.  You need something that explicit in a

12   statute here to find Taxpayer Standing.

13        If there's nothing else --

14        THE COURT:  No.  Thank you, Counsel.

15        MR. RAIMER:  Thank you, Your Honor.

16        THE COURT:  Okay.

17        First, thank you, all, for your arguments, it's

18   been very helpful, and I'm just -- I'm sorry it took so long

19   to get to this point.

20        But, look, I think what I would encourage you all

21   to do is as follows -- I mean, mainly government counsel and

22   plaintiffs' counsel.

23        I agree that the Taxpayer Standing issue is going

24   to have to be resolved one way or another regardless.

25        That said, if there is a solution here that

satisfies the plaintiffs and gives them the opportunity to
be on equal footing, as they've said, whether that be
through a grantee, another grantee, or HHS itself, I think
that would resolve a lot of this case.

And it seems to me, given some of the competing
issues here, it's really in no one's interest to have me get
to a point where I have to decide whether the government
needs to stop funding these grants through Catholic
Charities -- or through USCCB, excuse me.  I just don't
think we want to go there.

So what I'll ask you all to do is to get back to
me in a couple weeks and let me know where things stand and
whether you've been able to resolve at least the individual
standing portion of this.

I understand the Taxpayer Standing is something
we'll have to deal with regardless.  But if there is some
mechanism that will satisfy the plaintiffs, along the lines
of what plaintiffs' counsel has suggested, whether, again,
it be through a different grantee or through HHS itself, it
seems to be in everyone's interest to try and reach that
agreement, okay?

So I don't know what two weeks is from today, but
whatever that date is, I'll look for a Status Report from
both sides or from all three sides.

Thank you, everyone.

1          DEPUTY CLERK:  All rise.

2          This Honorable Court is adjourned.

3          (Proceedings concluded at 11:40 a.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__August 3, 2020_____   /S/__William P. Zaremba_____

William P. Zaremba, RMR, CRR

**COURT REPORTER:**
**[1]** 4/23
**DEPUTY CLERK: [3]**
3/2 3/6 86/1
**MR. POWERS: [63]**
3/23 4/8 4/24 5/5 5/12
5/15 5/17 6/23 7/20 8/5
8/15 9/10 9/15 10/17
11/9 12/5 13/1 13/13
13/21 13/24 14/2 14/6
14/11 14/22 16/3 16/25
17/15 18/7 18/19 18/22
19/5 19/14 19/18 19/21
20/5 20/9 20/23 21/14
22/1 22/18 23/15 24/1
24/10 24/13 24/25
25/17 26/5 27/9 27/12
27/15 27/18 77/13
77/15 78/2 78/17 79/13
81/16 81/22 82/9
**MR. RAIMER: [43]**
3/19 5/22 6/4 6/11
27/20 28/23 29/3 29/14
30/6 30/12 30/20 31/1
32/15 32/17 33/1 33/25
34/13 34/22 34/24 35/4
35/9 35/23 36/1 36/5
36/8 36/16 37/8 37/17
38/16 38/24 39/23 40/3
40/17 41/12 41/23 42/2
44/17 45/7 45/9 45/14
45/25 82/11 84/15
**MS. GLIKSBERG: [71]**
3/11 3/17 33/8 46/3
46/5 46/9 46/13 46/19
46/23 47/1 47/14 48/1
48/11 48/14 48/18
48/23 49/11 49/14
49/18 49/20 50/13
50/18 51/25 53/9 53/18
55/7 55/20 56/7 56/11
56/20 57/9 57/12 57/19
58/15 59/13 59/20 60/1
60/5 60/12 60/18 60/21
61/14 61/25 62/9 62/18
62/22 62/25 64/2 64/8
64/13 65/5 65/8 65/13
66/18 67/22 68/1 68/16
68/21 69/9 70/17 71/7
71/19 71/23 71/25 72/6
72/20 75/16 76/12
76/15 77/11 78/14
**THE COURT: [177]**

**$**

**$2 [1]** 11/7

**'**

**'rah [2]** 45/10 45/10

**/**

**/S [1]** 87/7

**0**

**0543 [1]** 2/6

**10281 [1]** 2/13
**105 [1]** 1/17
**10:00 [1]** 1/6
**1100 [1]** 2/4
**11218 [1]** 2/5
**11:40 [1]** 86/3
**13th [1]** 1/13
**18 [1]** 11/21
**18-378 [2]** 1/4 3/7
**1912 [2]** 43/17 43/17
**1970s [1]** 43/19

**2**

**20 [1]** 41/18
**20001 [2]** 2/9 2/18
**20004 [1]** 1/13
**20005 [1]** 2/5
**2014 [2]** 11/8 42/1
**2018 [1]** 1/5
**2019 [2]** 13/18 13/20
**202 [3]** 2/6 2/10 2/19
**202-637-5675 [1]** 1/14
**2020 [1]** 87/7
**212 [1]** 2/13
**22 [1]** 82/24
**250 [1]** 2/12
**2600 [1]** 1/18

**3**

**30 [1]** 1/5
**312 [1]** 1/19
**3249 [1]** 2/19
**325 [1]** 1/19
**326-3830 [1]** 2/13
**333 [1]** 2/17
**353-0543 [1]** 2/6
**354-3249 [1]** 2/19
**378 [2]** 1/4 3/7
**3830 [1]** 2/10
**3939 [1]** 2/10

**4**

**4413 [1]** 1/19

**5**

**51 [1]** 2/9
**555 [1]** 1/13
**5675 [1]** 1/14

**6**

**60603 [1]** 1/18
**608 [1]** 81/25
**6503 [1]** 2/18
**663-4413 [1]** 1/19

**8**

**879-3939 [1]** 2/10

**A**

**a.m [2]** 1/6 86/3
**abandon [2]** 80/19
80/24
**abandoned [1]** 38/12
**ability [1]** 14/23
**able [26]** 17/4 24/2
46/14 46/15 47/2 47/11
47/21 49/2 52/23 54/6

57/13 58/4 58/13 61/14
64/18 65/15 66/20
66/21 67/5 73/14 74/16
85/13
**about [27]** 6/24 9/6
20/17 23/24 24/23
25/14 31/18 38/8 40/8
43/6 45/4 45/21 45/23
55/11 55/19 64/3 64/16
65/6 66/19 69/12 69/18
72/7 72/8 76/11 79/2
83/13 84/3
**above [1]** 87/4
**above-titled [1]** 87/4
**absent [1]** 53/15
**Absolutely [1]** 49/18
**absolved [1]** 16/1
**abstract [2]** 35/18 83/1
**accepting [3]** 47/17
49/11 61/18
**access [4]** 52/20 53/24
67/11 77/1
**accommodations [1]**
68/3
**accompanied [1]** 73/7
**accordance [4]** 32/12
32/20 51/2 74/7
**according [2]** 23/18
33/19
**account [1]** 9/19
**accurate [1]** 53/13
**acknowledged [1]**
73/16
**across [3]** 11/1 29/24
41/19
**act [6]** 25/24 32/19
32/20 39/12 41/1 82/20
**action [10]** 18/8 18/10
22/23 22/25 25/8 32/12
54/25 55/4 71/13 78/8
**actions [6]** 49/21 63/8
77/6 83/13 83/14 83/14
**actively [1]** 37/22
**activities [1]** 11/13
**actors [2]** 21/9 21/10
**actual [5]** 26/9 55/21
58/23 63/24 70/23
**actually [21]** 5/3 8/19
8/20 33/19 39/7 51/14
54/1 55/2 57/20 62/12
62/14 65/17 69/11
70/21 70/23 73/16 74/3
74/10 75/17 81/25 82/1
**Adams [1]** 1/17
**add [2]** 64/3 76/10
**added [1]** 38/17
**additional [6]** 12/12
13/22 14/3 20/10 21/1
68/11
**address [5]** 11/16
54/20 62/22 68/22 83/7
**addressing [1]** 46/6
**adhere [1]** 29/11
**adherence [1]** 52/10
**adjourned [1]** 86/2
**adjustment [1]** 53/16
**administer [4]** 49/24

**administered [2]** 48/2
74/23
**administering [8]**
48/20 49/24 51/1 52/9
58/19 61/17 62/13
63/19
**administrating [1]**
58/2
**administration [2]**
72/12 83/22
**administrations [1]**
83/20
**administrator [2]**
17/10 57/25
**adopt [2]** 43/21 43/25
**adopted [3]** 7/9 7/13
44/13
**adoption [3]** 37/21
43/1 51/19
**advance [1]** 77/7
**advent [1]** 44/3
**affect [1]** 33/4
**affiliated [3]** 61/11 62/5
62/6
**affirmed [1]** 75/17
**afford [4]** 16/11 16/11
33/3 35/12
**afforded [2]** 16/9 36/25
**affords [1]** 83/3
**African [1]** 37/14
**African-Americans [1]**
37/14
**after [5]** 22/17 27/22
28/3 52/16 74/4
**again [49]** 6/13 10/21
14/25 15/5 17/25 18/7
18/22 19/5 19/14 20/10
20/25 24/10 28/8 31/15
31/23 33/25 34/13
35/14 35/16 35/18
37/25 38/7 38/18 38/24
39/6 39/25 41/3 42/3
42/7 42/13 42/16 42/18
42/21 43/4 43/12 43/14
44/19 44/25 55/10
55/20 62/10 78/24 79/7
79/16 80/13 81/16 83/5
83/16 85/18
**against [24]** 4/12 6/21
10/2 18/3 18/4 20/3
24/8 27/8 30/17 30/22
31/10 32/18 46/15 47/3
47/12 52/23 52/24
55/25 60/11 60/16
67/20 76/25 81/9 83/24
**age [1]** 37/7
**agency [44]** 5/22 6/7
7/6 7/9 8/12 9/5 9/11
9/21 10/1 10/3 10/10
11/6 11/19 12/1 12/4
12/15 12/18 12/21 13/7
13/9 16/13 16/15 18/3
18/7 18/20 19/24 20/4
20/10 20/25 25/18 33/6
34/9 34/10 35/2 38/25
39/1 49/16 53/4 58/10
60/10 66/15 78/8 80/8

**agency's [8]** 5/18 5/21
6/12 6/15 6/18 7/18
14/11 79/3
**aggrieved [1]** 23/23
**agree [4]** 30/13 39/19
62/7 84/23
**agreed [1]** 25/15
**agreement [1]** 19/22
50/25 85/21
**agreements [1]** 22/9
**agrees [1]** 11/17
**ahead [5]** 6/23 13/18
14/9 32/16 45/10
**aid [1]** 69/13
**aided [1]** 2/20
**aisle [1]** 83/20
**Akins [1]** 81/15
**al [4]** 1/3 1/6 3/7 3/8
**ALEX [2]** 1/6 3/7
**alien [1]** 25/18
**Alito [1]** 69/11
**all [51]** 3/2 4/3 4/4
11/15 15/6 21/3 21/10
25/2 26/24 27/19 30/13
31/17 33/4 39/10 39/13
45/25 49/3 51/4 52/2
52/21 52/21 53/10
53/17 54/12 54/15
54/16 54/22 55/4 59/24
61/18 63/2 65/5 66/5
67/11 68/6 73/6 74/7
74/25 75/8 75/23 77/5
77/10 77/12 78/13
78/21 78/22 84/17
84/20 85/11 85/24 86/1
**all right [2]** 11/15
77/12
**allegation [5]** 5/12 7/8
26/13 31/24 34/1
**allegations [5]** 23/19
34/3 36/21 44/25 45/16
**alleged [19]** 4/20 4/20
5/23 6/14 14/25 22/11
22/12 22/14 22/19 25/9
28/13 30/7 30/14 35/22
42/17 43/7 54/3 64/20
64/21
**allegedly [2]** 7/23
22/21
**Allen [1]** 82/23
**allocation [1]** 22/21
69/3
**allow [2]** 15/24 62/5
**allowed [1]** 80/3
**allowing [3]** 50/3 54/18
70/18
**allows [1]** 81/19
**alone [1]** 73/18
**along [1]** 85/17
**also [16]** 3/25 17/6
18/10 28/19 38/21 40/5
42/18 43/11 64/21 66/3
66/6 66/22 70/5 70/6
73/6 75/16
**alternative [4]** 10/11
10/11 12/23 33/5
**alternatively [2]** 7/11

**A**

alternatively... [1] 12/3
alternatives [3] 10/10
14/25 42/15
although [3] 54/23
65/18 78/9
altogether [1] 53/6
always [3] 9/12 17/14
78/9
America [1] 20/14
Americans [1] 37/14
AMIT [2] 1/9 3/2
amongst [2] 69/23
72/2
ample [1] 17/10
analogous [1] 7/8
analysis [7] 21/16 22/8
22/9 43/9 43/10 43/16
65/14
anew [1] 64/4
Animal [3] 7/2 7/21
81/9
annual [3] 42/1 71/2
71/2
another [12] 14/15
42/11 42/24 43/2 55/16
57/20 60/3 64/15 68/13
82/22 84/24 85/3
answer [2] 6/2 30/1
answering [1] 61/20
anti [3] 30/24 50/11
50/13
anti-discrimination [3]
30/24 50/11 50/13
any [99]
anybody [5] 23/22 37/9
37/15 37/16 47/11
anyone [4] 37/4 58/5
60/2
anything [13] 7/17
8/16 15/1 16/1 31/1
33/9 35/24 39/11 64/5
64/9 64/11 76/9 76/10
apparent [2] 76/7
76/16
appear [3] 38/12 38/19
42/13
APPEARANCES [2]
1/11 1/21
appeared [1] 42/13
appears [1] 22/5
applaud [1] 21/3
applicants [3] 49/3
57/3 61/18
application [16] 28/15
29/9 35/22 35/23 35/24
44/22 55/24 57/1 59/3
59/11 60/23 61/17 62/1
62/14 68/10 83/5
applications [6] 29/18
47/18 47/18 49/11
61/23 68/17
applied [4] 22/2 22/5
50/14 50/17
applies [2] 25/4 50/12
apply [3] 24/14 52/23
76/24
approach [3] 3/9 11/18

appropriate [2] 18/2
81/2
appropriates [1] 84/7
appropriating [1]
74/12
appropriation [5]
25/13 26/2 73/4 73/12
74/14
appropriations [3]
26/2 69/7 74/15
are [74] 3/6 4/5 5/10
5/19 6/21 7/5 10/10
10/25 12/16 14/18 15/7
15/9 15/15 16/17 19/22
20/23 23/20 25/4 28/23
29/19 30/2 31/13 31/14
33/17 36/4 37/2 42/5
42/5 42/16 42/22 44/14
46/12 47/7 47/23 47/24
49/22 49/24 50/3 50/8
50/13 50/21 50/21
50/22 54/17 55/21 56/7
56/23 60/22 61/9 61/9
61/19 63/4 63/5 63/8
64/10 65/5 66/19 67/4
67/14 67/18 68/1 68/3
69/8 70/2 71/11 77/6
78/12 79/7 79/24 80/3
80/12 82/12 82/16
83/13
area [13] 12/13 14/4
14/18 15/4 20/11 21/1
41/15 47/24 53/15
61/10 68/13 80/16
80/24
areas [1] 11/22
aren't [5] 10/15 58/7
68/7 68/7 80/5
arguably [2] 13/12
23/3
arguing [1] 3/16
argument [5] 1/9 4/4
42/18 68/25 76/9
arguments [2] 37/5
84/17
arises [2] 44/6 54/3
around [1] 43/17 69/8
arrangement [1] 13/21
Article [1] 18/11
as [85] 5/10 7/13 8/10
8/17 8/21 9/11 12/2
12/24 15/14 15/20
15/24 15/24 16/4 16/23
17/1 17/10 21/4 21/12
23/13 26/10 26/10
26/19 26/22 27/1 28/6
28/10 30/14 30/14 31/5
31/6 33/11 35/12 35/15
37/1 37/1 39/7 39/9
39/9 39/17 39/17 40/12
41/5 41/6 41/13 41/16
42/9 45/22 49/3 49/4
49/4 52/25 53/22 53/22
54/25 56/15 58/5 59/19
60/12 60/12 60/13 61/1
61/5 63/2 63/19 64/17
64/25 65/8 66/9 66/23

68/12 68/16 68/22
70/12 73/16 76/23
77/18 77/19 79/8 81/13
84/21 85/2
Asian [3] 9/3 9/8 18/1
aside [5] 63/2 67/5
67/13 71/22 71/23
ask [13] 5/8 7/1 9/25
14/15 23/7 30/23 38/9
50/7 66/12 67/16 67/17
75/14 85/11
asked [8] 7/15 16/22
21/3 30/2 39/12 50/8
57/6 67/16
asking [14] 5/14 6/1
9/13 16/14 24/13 31/18
44/8 46/12 46/13 47/1
49/22 53/10 57/18
57/19
asks [1] 17/3
aspect [2] 17/5 17/17
aspects [1] 29/23
assert [1] 25/3
asserted [6] 4/15 4/18
10/22 18/24 19/6 19/8
asserting [1] 7/5
assertion [1] 26/23
assist [1] 14/20
assistance [1] 41/10
Association [2] 22/3
26/25
assume [4] 8/3 8/6
59/10 79/22
assumed [1] 32/10
assured [1] 10/7
astounding [1] 37/14
attempting [1] 38/3
August [1] 87/7
Austin [1] 11/24
authentic [1] 63/17
authority [4] 9/11 18/8
18/18 32/2
authorization [10] 8/17
8/19 22/11 22/13 23/6
25/20 30/15 32/3 45/12
81/17
authorize [4] 71/9
72/25 74/1 75/5
authorized [4] 7/18
7/22 26/16 30/8
authorizes [1] 8/20
34/17 84/7
authorizing [5] 8/13
31/21 50/24 53/23
73/22
available [7] 14/14
33/7 33/24 40/10 42/16
42/17 53/4
avenue [4] 2/9 2/17
33/14 77/25
Avra [1] 1/15
award [2] 15/15 28/5
awarded [2] 63/12
70/25
awarding [1] 70/24
aware [10] 5/15 5/23
15/3 23/4 29/4 30/2

awareness [1] 70/4
away [5] 52/9 52/25
55/15 68/2 82/17
AZAR [2] 1/6 3/7

**B**

back [10] 17/22 24/24
27/22 27/23 40/8 43/17
45/2 62/3 63/1 85/11
backdrop [1] 32/18
banc [1] 7/2
Bar [1] 26/25
based [21] 4/16 14/19
15/19 21/8 21/16 31/15
32/2 37/6 37/7 42/18
47/12 50/4 51/5 53/23
54/19 65/25 67/9 75/6
75/24 76/25 82/4
bases [1] 38/18
basis [22] 5/24 8/14
9/16 10/19 10/24 12/6
12/7 24/20 26/25 30/4
31/5 31/6 32/6 44/18
51/8 52/19 63/14 68/14
77/8 79/5 80/14 81/6
be [195]
because [71] 4/12 6/3
6/21 7/16 8/22 9/8 11/5
15/8 16/8 16/20 19/14
22/24 23/20 25/3 25/22
26/8 28/6 30/9 31/8
31/11 32/10 34/5 38/18
39/3 39/11 44/7 44/9
44/12 44/12 44/15
44/19 46/20 47/7 49/21
50/23 51/21 52/2 52/15
53/20 55/2 56/22 57/23
59/4 59/6 59/18 59/21
61/1 62/6 65/23 66/19
67/23 69/15 69/17
69/20 70/13 70/15 72/9
72/14 72/20 74/22 76/4
76/23 76/24 77/5 77/24
78/20 79/19 79/19
79/20 84/3 84/6
become [2] 66/14
79/16
becomes [1] 44/9
been [14] 5/23 7/13
19/4 23/18 23/19 34/2
65/12 66/9 71/12 72/15
72/25 83/19 84/18
85/13
before [8] 1/9 14/7
21/20 24/17 24/21
33/22 52/1 52/17
begin [6] 4/6 5/1 10/17
16/25 20/9 21/15
begs [1] 8/9
behalf [4] 3/11 3/24 4/1
4/9
being [28] 5/21 11/1
14/17 16/22 30/4 37/2
47/12 48/3 50/14 50/16
50/17 52/24 52/25
55/24 58/13 61/8 61/10
60/24 61/21 64/22 65/8

03/15 70/25 72/19
75/19 76/22 76/23 77/4
belief [3] 23/4 36/9
37/12
beliefs [20] 10/13
15/14 15/16 15/19
29/11 29/15 29/18 32/7
32/13 32/21 36/7 39/5
39/13 51/3 51/12 52/20
56/17 56/18 63/16
82/20
believe [17] 6/11 9/1
15/18 21/15 21/18 26/7
26/22 30/6 30/17 31/3
35/5 37/9 41/18 41/20
43/17 81/23 82/24
beneficiaries [1] 12/9
benefits [1] 73/18
Bennett [2] 2/2 3/25
best [8] 20/19 56/12
56/22 56/23 56/24 77/5
78/10 80/8
between [12] 9/18
13/14 13/21 18/23 25/7
31/19 36/10 42/25
44/24 62/12 74/13 84/2
beyond [1] 81/5
big [1] 31/10
bigger [2] 11/8 12/18
binding [2] 24/14
26/22
binds [1] 26/12
Bishops [4] 3/21 27/21
28/6 37/25
blind [1] 45/13
blow [1] 70/16
Borman [1] 21/6
both [12] 40/21 46/23
47/1 48/3 48/4 69/2
72/22 76/6 78/15 78/16
83/20 85/24
bottom [2] 58/3 59/1
bound [1] 16/5
bounded [2] 15/2
17/14
Bowen [11] 25/5 26/10
71/25 72/5 72/10 72/11
74/19 74/20 75/13
75/17 76/3
box [1] 7/16
Branch [8] 2/3 70/8
70/9 72/17 73/14 74/24
75/4 75/21
Branch's [1] 72/7
brief [4] 47/8 51/9
67/23 67/24
briefing [2] 38/12
83/23
briefly [3] 27/15 77/13
82/22
briefs [1] 81/24
bring [3] 4/12 76/4
79/14
brings [1] 81/18
broad [1] 4/17
broadly [2] 79/1 83/9
brought [1] 54/21
Bryn [3] 63/4 64/22

**B**

Bryn... [1] 65/15
budgets [1] 75/20
burden [9] 21/19 22/4
33/10 35/16 39/16
40/16 41/2 41/4 42/8
business [1] 65/16

**C**

calculus [1] 32/8
called [2] 22/15 45/5
Camilla [2] 1/16 3/14
can [42] 5/3 6/23 9/19
10/12 12/23 14/8 14/18
15/22 16/11 16/14 17/6
17/7 21/3 23/7 24/18
29/18 30/13 36/20
36/25 37/10 45/2 50/5
52/13 52/22 53/14
54/25 55/22 56/14 57/7
57/16 58/22 60/23 62/7
62/15 62/16 67/7 67/9
67/16 68/4 68/10 77/22
82/22
can't [23] 11/24 13/18
14/9 15/21 16/2 17/12
18/20 23/16 23/22 27/6
29/20 32/10 36/14
36/14 36/16 40/11
40/15 51/23 56/19
61/12 62/17 62/18
70/13
cannot [7] 25/3 37/9
50/5 52/19 54/23 67/9
77/2
care [16] 12/13 20/11
23/20 25/18 27/25
28/14 33/7 44/22 51/19
51/20 53/14 62/13
76/18 76/22 77/4 78/7
carried [1] 35/5
carries [1] 19/24
carry [4] 19/24 41/9
55/16 62/7
carrying [1] 44/14
case [68] 4/11 6/10
6/17 6/24 7/2 7/8 7/14
7/22 8/9 8/16 8/18 13/5
13/10 16/7 16/8 16/19
16/20 21/4 21/5 21/7
21/11 21/17 22/19 24/4
24/16 25/5 25/6 25/10
26/13 27/1 31/19 32/5
35/10 35/13 37/24 38/4
39/16 39/21 39/22
39/23 42/7 42/10 42/12
42/17 42/21 42/25 43/1
44/11 45/4 45/15 45/20
50/12 51/21 52/17
69/15 71/11 71/18
71/24 74/2 74/8 75/18
75/22 76/2 78/19 81/17
83/4 84/5 85/4
case's [1] 21/15
cases [16] 7/21 8/19
21/19 21/21 24/16 25/4
31/20 40/22 40/22 66/9
69/1 73/9 73/10 74/18

Catholic [37] 3/21 4/21
6/19 10/13 10/23 11/5
16/17 23/9 26/15 26/17
27/21 28/6 28/12 28/20
28/24 29/23 36/9 37/25
43/25 44/2 44/9 44/20
51/2 51/2 55/14 56/14
59/19 61/11 61/24 62/5
62/6 62/17 62/18 63/14
63/15 84/10 85/8
Catholic-affiliated [3]
61/11 62/5 62/6
causal [1] 43/6
causation [4] 7/14
32/24 43/2 81/17
cause [1] 28/17
caused [5] 21/19 28/13
43/7 43/21 43/25
CCFW [2] 19/11 51/14
CCFW's [1] 52/4
cease [2] 19/10 19/10
centers [1] 82/4
certain [2] 15/17 38/18
certainly [10] 9/10 11/9
13/1 13/5 18/8 20/23
31/20 45/11 77/20
82/13
Certified [1] 2/16
certify [1] 87/2
chain [2] 43/2 81/4
challenge [8] 10/25
12/18 23/13 44/20
44/21 72/13 72/24
74/21
challenged [5] 65/12
71/10 72/19 72/25
73/22
challenging [6] 8/3
52/3 52/4 52/5 63/24
72/12
Chaney [1] 31/11
change [12] 44/8 50/2
51/22 53/15 55/3 55/5
63/6 65/19 66/18 67/7
75/17 79/16
changed [2] 49/22
52/16
changes [1] 32/3
changing [2] 65/18
79/25
chaplaincy [9] 26/6
26/12 26/14 72/22
73/10 73/17 74/9 76/5
84/4
chaplains [5] 26/15
26/17 73/18 73/19
84/10
character [2] 59/7 61/2
characterize [1] 16/3
charge [1] 49/24
charitable [3] 25/23
25/25 26/1
Charities [17] 4/22
6/19 10/13 10/23 11/5
16/18 23/9 28/12 28/20
28/24 43/25 44/20
55/15 56/15 59/19

Charities' [1] 44/9
charity [2] 15/18 61/11
Chicago [1] 1/18
child [9] 23/20 47/22
47/22 57/4 58/24 64/19
66/20 67/6 70/1
children [5] 9/1 9/2
9/5 15/20 18/1 25/18
28/1 36/12 37/13 38/22
56/16 62/13 76/18
76/22 77/3
Choe [2] 1/12 3/13
choice [1] 60/9
chose [2] 52/7 75/4
Church [2] 51/3 63/15
Church's [2] 36/9 44/2
circle [1] 76/4
Circuit [14] 7/3 21/17
21/17 21/18 21/25 22/1
24/14 31/21 34/2 36/17
36/18 45/19 51/23 54/1
Circuit's [2] 16/6 84/4
circumstance [2] 6/9
53/15
circumstances [3]
31/23 35/16 40/24
cite [2] 31/4 36/11
cited [1] 7/1
cities [1] 41/18
citing [1] 81/12
city [2] 20/14 20/16
civil [2] 2/4 3/7
claim [9] 4/17 4/19
12/24 25/9 26/7 31/5
31/15 54/22 83/2
claimed [2] 10/16
66/17
claims [11] 4/15 4/20
10/22 13/6 15/7 27/2
31/16 31/16 44/18
65/21 65/23
clarify [2] 62/9 78/2
Clause [8] 4/17 8/7 8/8
65/23 66/8 67/3 79/21
80/4
clear [8] 5/18 9/24 34/2
34/14 34/19 42/21 47/6
68/20
clearly [1] 82/4
client [8] 28/5 30/22
31/10 33/4 39/20 41/6
42/4 59/18
clients [16] 22/15
46/18 47/2 47/10 47/21
48/4 48/7 52/23 55/23
58/3 58/8 58/13 63/25
65/12 66/14 68/14
clients' [1] 35/20
close [1] 25/7
closer [6] 16/19 17/20
19/11 78/23 79/14
81/18
co [2] 3/13 3/20
co-counsel [2] 3/13
3/20
Coaches [1] 22/3
coerced [1] 66/2

coercive [2] 66/7 67/2
cognizable [4] 66/8
66/10 66/25 67/3
Cohen [1] 25/5
colleagues [1] 50/8
COLUMBIA [1] 1/1
come [3] 3/3 9/4 15/14
37/10 43/18
comfortable [1] 56/5
commit [1] 18/5
commits [1] 27/7
committed [1] 20/3
community [1] 41/25
compel [1] 57/19
compelled [2] 39/3
57/17
competing [1] 85/5
complain [1] 28/14
complained [1] 64/1
complaint [14] 5/13
5/23 6/2 6/2 13/3 13/11
17/1 31/3 34/1 34/4
40/11 44/25 51/6 66/14
completely [3] 52/1
75/7 75/18
complex [1] 29/16
comply [1] 81/14
computer [1] 2/20
computer-aided [1]
2/20
concede [1] 38/19
concedes [2] 51/9
63/18
conceivably [1] 24/19
concept [1] 8/17
concerned [1] 39/10
concluded [1] 86/3
concluding [1] 76/12
concrete [1] 82/25
condition [6] 6/19 30/3
30/19 30/24 50/9 50/11
conduct [27] 7/23 8/13
8/20 17/18 22/12 26/19
28/18 28/18 28/19 30/8
31/22 32/3 32/8 36/3
36/6 43/12 43/13 44/24
45/1 52/2 52/4 52/5
54/24 63/5 63/6 83/15
83/17
conducts [1] 63/23
conference [12] 3/20
27/21 28/6 28/7 28/11
28/23 29/21 37/25 39/9
39/12 82/1 82/2
conforming [1] 7/12
Congress [26] 18/10
19/19 19/23 24/11
27/25 28/3 41/9 69/12
69/16 69/18 69/23 70/1
70/6 70/13 71/5 71/8
72/8 72/17 73/14 73/25
74/3 74/18 74/25 82/2
82/4 84/10
Congress's [1] 72/13
congressional [11]
25/8 25/12 25/15 25/24
35/24 34/16 71/13 73/3

coercion [22] 59/2 59/24 01/17 74/22 75/20
congressionally [2]
25/13 71/2
connected [1] 73/12
connection [3] 21/22
44/19 74/13
conscientiously [1]
70/18
consequence [1]
53/12
consequences [1]
15/17
consider [2] 18/12
40/13
consideration [2] 12/2
83/5
considered [2] 48/4
78/14
considering [3] 20/10
20/19 20/25
consistent [1] 36/7
Constitution [5] 2/17
8/14 50/22 52/10 76/20
constitutional [3] 8/1
17/13 77/3
construct [1] 79/3
constructive [1] 70/22
contemplate [5] 55/21
56/14 57/7 69/3 76/1
contemplated [2] 8/16
73/5 73/6
contemplates [1] 53/2
contemplating [1]
67/18
contemplation [1] 79/8
context [4] 8/18 17/24
78/20 81/16
contingency [1] 81/3
continue [5] 55/13
55/22 56/15 68/4 77/4
continued [2] 2/1
52/15
continues [1] 74/3
contract [1] 42/25
contrary [1] 75/23
control [8] 15/10 15/13
15/13 50/1 51/14 51/15
52/12 52/14
conventions [1] 43/18
convictions [2] 51/3
63/16
correct [10] 48/14
48/15 50/18 53/8 53/9
53/18 59/13 64/15 68/1
87/3
corrective [2] 54/25
55/4
correctly [1] 59/17
could [32] 9/7 10/3
10/8 10/9 13/5 13/9
13/17 13/19 14/19 16/9
19/7 23/8 23/11 24/6
24/11 24/19 34/25
35/20 39/12 51/20
52/15 56/1 57/1 57/17
58/1 60/21 65/25 66/1
68/16 68/18 79/2 79/11
couldn't [8] 9/21 12/1

**C**

couldn't... [6] 23/8
27/3 33/3 34/9 34/10
74/11

counsel [16] 3/9 3/13
3/20 3/25 27/19 30/2
46/1 68/12 75/15 76/8
77/10 82/8 84/14 84/21
84/22 85/18

counterintuitive [1]
24/19

country [8] 11/1 28/8
29/19 29/25 38/1 41/18
41/19 70/2

couple [24] 5/21 6/22
14/16 15/20 17/25
23/21 24/9 30/5 30/5
31/4 33/7 42/11 47/13
59/21 59/21 60/14
60/21 60/24 61/9 62/20
68/7 68/8 68/15 85/12

couples [25] 5/10 6/7
7/7 10/2 20/3 24/8 27/8
28/22 30/18 35/21
48/17 49/5 49/10 51/7
51/13 56/16 58/11 60/2
60/11 62/8 63/21 64/23
67/21 68/6 83/24

course [5] 18/25 27/17
44/5 65/11 65/11

Court [52] 1/1 2/15
2/16 4/9 4/13 10/20
12/11 17/7 17/8 17/16
17/17 18/12 19/7 19/9
21/20 22/5 24/1 24/2
24/13 24/15 24/17
24/20 24/21 25/1 26/12
26/24 27/20 34/2 36/17
36/18 43/15 62/9 62/23
66/24 74/10 74/20
76/13 77/18 78/21
78/24 79/2 79/5 79/13
80/7 80/14 81/5 81/10
81/19 81/25 82/7 82/23
86/2

Court's [5] 22/7 22/10
24/15 43/10 81/5

Courthouse [1] 2/17

courts [2] 9/17 40/24

craft [2] 56/3 56/4

create [6] 24/7 56/24
57/2 59/18 68/3 74/25

created [2] 27/25 28/3

creates [2] 9/16 61/25

creation [1] 28/2

credential [1] 29/17

critical [1] 6/5

CRR [2] 87/2 87/8

ctaylor [1] 1/20

cure [1] 16/12

current [4] 15/3 48/6
50/3 80/11

currently [3] 47/14
48/24 50/15

cut [1] 45/17

cutting [1] 42/19

CV [1] 1/4

**D**

D.C [8] 1/5 1/13 2/5 2/9
2/18 21/18 24/14 36/18

D.C. [7] 16/6 22/1
31/21 34/2 36/17 45/19
84/4

D.C. Circuit [5] 22/1
31/21 34/2 36/17 45/19

D.C. Circuit's [2] 16/6
84/4

Dallas [6] 11/24 12/12
41/14 53/15 80/19
80/24

Dallas-Fort [5] 12/12
41/14 53/15 80/19
80/24

damages [1] 27/12

date [2] 85/23 87/7

dated [1] 23/1

dates [1] 44/3

David [3] 2/8 3/19
27/20

DAY [2] 2/8 2/12

de [3] 59/4 64/12 64/15

de-stigmatized [1]
59/4

deal [1] 85/16

dealing [2] 18/25 42/24

decide [2] 10/3 85/7

decided [8] 28/4 28/5
28/11 34/25 43/19
75/18 77/23 77/23

decides [2] 52/18 70/8

decision [8] 7/2 14/7
15/13 20/17 21/12
23/13 39/21 55/13

decision-making [1]
15/13

decisional [1] 13/15

decisions [2] 15/9
31/14

decline [1] 32/12

deemed [1] 17/17

defeat [1] 26/7

defeats [1] 26/3

Defendant [1] 27/21

defendants [14] 1/7
2/2 3/24 4/2 21/9 28/4
40/22 56/22 63/10
63/18 64/5 64/14 74/6
76/7

defendants' [5] 72/12
76/16 76/18 77/3 77/6

DEFENSE [4] 1/16 7/2
7/21 81/9

DeJulius [2] 2/11 3/20

delegate [3] 22/21
43/14 43/16

deliver [3] 79/8 79/11
80/8

delivering [1] 79/6

demean [1] 46/17

demeaned [4] 52/24
58/6 59/3 61/16

demeaning [4] 65/2
65/9 65/22 66/22

denial [7] 4/20 44/22
64/4 64/12 64/14 64/15

denied [6] 9/9 23/18
23/24 76/22 76/23 77/4

denomination [1]
26/18

deny [2] 10/7 77/8

denying [1] 28/14

DEPARTMENT [4] 2/3
3/24 4/1 5/9

depend [2] 35/10 39/25

depending [2] 29/19
29/24

depends [1] 14/22

describing [1] 46/22

deserving [1] 64/25

designee [1] 78/18

desire [2] 11/25 12/17

desired [1] 42/20

details [1] 39/10

determine [9] 33/22
50/5 54/11 54/13 58/22
60/23 65/25 67/9 81/6

determined [1] 72/11

determining [2] 60/14
62/11

development [1] 54/7

devil [1] 39/10

did [6] 12/14 43/15
60/17 66/2 75/1 75/17

didn't [10] 26/1 35/24
39/20 43/18 45/16
45/17 63/16 73/8 74/18
84/10

difference [6] 9/18
29/22 29/23 59/20
59/23 62/12

different [29] 4/16 6/9
6/9 7/20 8/24 11/22
16/7 16/8 29/17 29/18
30/11 30/16 33/18
39/21 39/23 42/3 44/11
51/5 52/1 56/7 56/8
57/6 59/5 59/5 59/21
60/7 61/22 80/25 85/19

dignitary [1] 68/11

diocese [2] 29/19
29/24

direct [6] 9/21 10/10
11/19 12/1 33/4 60/10

directly [5] 29/20 42/24
61/12 71/20 71/20

disabling [1] 77/1

disagree [1] 84/1

disconnect [1] 80/17

discontinue [1] 53/5

discovery [3] 33/22
54/8 56/11

discretion [6] 17/10
19/15 26/20 70/11 72/7
80/13

discretionary [4] 19/25
75/21 75/24 79/7

discriminate [10]
37/23 49/2 50/5 60/15
67/20 68/14 75/6 77/8
80/6 83/24

discriminated [5]
46/15 47/3 47/12 52/24

discriminates [3] 10/2
24/8 60/11

discriminating [9] 6/21
20/3 27/8 30/17 51/7
53/24 60/16 63/14
76/25

discrimination [18]
15/24 26/17 30/4 30/24
37/6 37/6 37/22 38/3
45/17 45/18 49/12
50/11 50/13 52/15
52/19 52/22 60/5 63/11

discriminatory [8]
22/21 26/14 37/3 53/21
54/4 54/14 54/19 79/12

discussed [2] 33/23
78/21

dismiss [3] 4/5 4/5
26/25

dismissed [1] 4/11

disqualified [1] 5/20

disqualify [1] 5/24

distinction [3] 37/18
38/6 42/24

distinguishable [1]
21/11

distinguishing [1]
42/11

distributed [1] 74/6

DISTRICT [4] 1/1 1/1
1/10 21/6

Division [1] 2/4

do [53] 9/14 11/5 11/10
13/8 17/7 17/12 19/17
21/18 22/25 23/11
29/22 30/1 30/17 33/17
34/9 34/12 34/14 35/8
38/19 40/15 41/7 43/5
45/6 45/10 47/23 48/16
48/18 49/9 50/7 50/17
51/22 55/5 55/14 57/18
59/17 60/9 60/12 63/3
64/3 64/5 64/11 67/25
69/4 69/7 70/10 70/10
74/18 75/2 77/22 81/14
82/13 84/21 85/11

Do you have [1] 30/17

do you know [4] 30/1
47/23 48/16 50/7

doctrine [2] 51/2 77/7

does [23] 7/6 7/24 9/12
12/15 12/21 14/16
15/16 15/18 16/21 18/5
18/13 24/20 26/7 28/20
33/14 35/3 51/14 51/15
55/7 56/15 67/10 71/13
84/5

doesn't [17] 10/12
12/24 15/10 20/13
20/14 32/8 33/4 35/2
46/17 49/2 49/2 51/10
52/8 60/6 61/4 79/23
81/8

doing [6] 7/17 16/1
47/19 49/9 60/13 64/9

dollars [6] 27/6 27/6
40/21 41/1 63/12 77/7

don't [55] 4/6 6/11 6/20
6/23 8/16 9/15 14/24
15/11 15/12 15/13 16/3
17/23 18/14 18/14
18/15 18/17 25/19 30/6
31/5 34/21 34/23 34/24
37/4 37/23 38/4 40/3
40/5 40/9 41/4 41/6
44/19 45/23 48/19
50/20 54/10 55/21
56/22 59/9 61/6 70/9
71/4 71/5 76/1 79/18
79/19 79/22 80/20 81/1
81/11 81/13 81/23 84/1
84/3 85/9 85/22

done [5] 13/10 34/11
49/16 74/25 84/4

door [7] 48/8 59/24
60/2 60/3 60/22 62/20
65/16

doors [4] 48/24 61/3
61/15 70/16

doubt [5] 33/11 35/17
39/17 42/9 71/4

down [2] 4/23 10/20

dozen [1] 33/18

dtraimer [1] 2/10

due [2] 65/21 67/1

due-process [1] 65/21

Dumont [4] 22/5 25/1
26/22 72/22

**E**

earlier [1] 46/22

early [2] 13/18 13/20

earmarked [3] 74/15
74/16 82/3

easily [1] 54/2

Eastern [1] 21/5

EDUCATION [1] 1/17

effect [1] 42/21

efforts [1] 21/4

either [16] 6/15 8/7
16/11 16/14 16/21 31/5
33/16 53/2 53/3 53/4
53/8 55/12 55/13 80/21
81/2 82/19

elected [2] 70/10 70/11

element [1] 82/18

elements [1] 81/19

eligibility [1] 15/18

eligible [1] 5/19

else [5] 23/17 58/5
60/2 62/16 84/15

Email [7] 1/14 1/19
1/20 2/6 2/7 2/10 2/14

emailed [2] 22/16

en [1] 7/2

enabled [1] 66/13

enabling [3] 50/24
53/22 77/6

enactment [2] 26/9
84/6

encourage [2] 38/3
84/20

encouraged [2] 36/23
45/1

encouragement [6]

**E**

encouragement... [6] 22/11 22/13 36/20 37/1 45/12 83/18
encouraging [2] 37/22 83/23
end [3] 27/16 55/18 59/25
ended [1] 38/5
ending [1] 54/13
endorse [1] 75/5
endorsement [3] 65/24 66/7 67/2
enforce [3] 30/21 31/9 31/12
enforced [1] 50/17
enforcement [2] 31/13 31/14
engage [7] 12/8 17/11 19/15 20/8 26/17 79/5 80/15
engaging [1] 22/20
enjoin [1] 18/20
enjoining [1] 54/8
enough [6] 4/24 8/14 23/5 37/17 45/8 82/5
ensure [5] 7/6 10/10 57/13 67/10 68/4
ensuring [1] 68/9
enter [3] 34/17 35/2 47/2
entire [2] 35/1 76/21
entirely [1] 7/21
entirety [1] 12/19
entities [1] 41/1
entity [4] 28/13 32/6 51/11 63/20
envision [1] 24/3
episode [1] 10/22
equal [15] 7/7 8/8 18/5 52/20 53/24 58/21 60/7 61/5 62/19 65/20 66/25 67/1 77/8 77/9 85/2
equally [3] 61/18 68/10 68/18
equals [1] 49/3
equation [1] 80/23
Equity [1] 12/7
especially [1] 15/23
essence [1] 56/2
essentially [12] 21/6 23/11 24/6 26/3 27/5 31/11 38/12 50/10 55/12 66/17 69/1 71/17
establish [3] 19/20 72/18 75/8
established [3] 19/23 54/2 75/9
establishes [2] 21/24 69/6
establishing [1] 25/24
establishment [8] 4/17 8/7 25/16 65/22 66/8 67/3 79/21 80/4
et [4] 1/3 1/6 3/7 3/8
evaluated [1] 80/8
evaluates [1] 20/19
evaluating [1] 78/9

**E** ... [71] 4/12 4/26 20/16 30/14 34/4 34/5 40/20 63/16 63/18 73/4 74/11 76/1 76/24
event [2] 81/10 81/12
every [5] 20/14 20/14 20/15 40/9 62/6
everyone [7] 3/5 4/3 58/16 58/16 58/20 58/21 85/25
everyone's [1] 85/20
everything [2] 47/19 65/19
exact [3] 54/6 59/15 62/11
exactly [12] 12/22 22/18 25/1 26/20 54/11 59/25 64/13 69/22 71/20 75/12 78/2 82/11
example [7] 37/19 47/7 56/21 60/13 60/19 73/10 83/22
exception [2] 21/8 84/6
excuse [5] 25/25 28/24 31/14 51/19 85/9
executive [9] 26/20 70/7 70/9 72/7 72/17 73/14 74/23 75/4 75/20
executive's [1] 79/8
exercised [3] 71/8 72/25 73/25
exist [4] 50/20 73/9 74/18 74/19
existing [3] 14/1 14/2 14/13
exists [1] 25/19
expended [1] 11/1
expenditure [7] 71/3 71/10 72/8 72/24 73/1 73/22 74/4
expense [1] 66/5
experience [1] 65/8
experienced [4] 63/4 66/6 67/5 67/15
explains [1] 54/5
explicit [4] 31/2 65/23 69/20 84/11
explicitly [5] 30/8 50/25 63/13 67/17 71/13
express [1] 30/15
expressly [3] 69/4 72/5 84/7
ext [1] 1/19
extend [1] 27/10
extent [1] 42/10
eye [1] 45/13

**F**

face [3] 24/7 34/19 60/15
facilitate [1] 12/2
facilitated [1] 11/25
facilitating [1] 8/12
facilities [1] 48/19
facility [3] 46/15 47/2 69/15
facing [1] 19/4

**F** ... 23/3 24/2 24/18 29/4 30/14 34/5 42/14 26/18 51/9 51/15 52/7 54/13 64/18 72/11 73/20 75/4 76/1
facto [2] 64/12 64/15
facts [8] 6/24 13/2 13/18 21/8 51/5 54/7 79/24 80/1
factually [1] 23/23
failed [3] 64/5 64/11 76/5
failure [1] 43/7 63/25 64/2
fair [6] 4/24 28/17 35/9 37/17 39/24 42/2
fairly [4] 36/20 43/13 83/16 83/17
faith [1] 82/4
faith-based [1] 82/4
families [5] 9/2 9/3 9/4 9/8 14/23
far [4] 27/10 39/9 43/9 44/3
fashion [4] 17/8 26/15 39/20 79/2
FATMA [5] 1/3 3/7 63/4 64/22 65/15
favor [1] 26/15 26/17
FEC [3] 22/20 22/22 81/15
federal [37] 2/3 3/24 4/1 9/16 21/9 21/10 22/25 23/1 28/9 32/20 32/22 43/18 43/20 43/24 44/3 44/7 44/21 55/3 56/22 62/5 63/10 63/18 63/23 64/5 64/24 65/18 66/1 66/21 67/10 67/11 72/12 74/6 76/7 76/16 76/18 77/3 77/5
feel [1] 61/15
feeling [1] 59/3
felt [1] 39/3
female [1] 36/13
few [1] 54/20 77/16
figure [1] 7/16 53/6 55/16
fill [2] 20/4 39/2
finalize [3] 13/17 13/19 14/8
finally [1] 83/25
find [7] 12/22 24/4 24/20 36/24 69/14 79/20 84/12
finding [2] 21/4 80/25
first [14] 7/15 20/9 22/6 26/24 31/25 52/2 54/22 63/11 70/9 71/8 72/21 72/23 76/5 84/17
fit [1] 84/5
fix [1] 24/12
Flast [21] 25/5 26/10 26/10 69/12 69/15 69/19 69/20 70/3 70/15 71/7 71/15 71/21 71/22

**F** ... 75/18 76/2 84/2 84/5
flow [1] 19/11
flowed [1] 74/23
flowing [1] 28/9
focus [1] 64/17
folks [1] 10/12
following [2] 5/8 7/5
follows [2] 12/7 84/21
footing [1] 85/2
footnote [2] 81/25 82/24
forecloses [1] 26/23
foregoing [1] 87/3
foreseen [1] 35/20
forgive [1] 28/25
form [10] 18/2 18/2 25/3 34/15 36/22 38/13 39/8 40/12 43/20 43/25 forms [1] 10/15
Fort [12] 4/22 10/23 12/12 14/17 14/17 14/19 28/12 41/14 53/15 68/13 80/19 80/24
forth [6] 16/5 19/2 25/5 27/22 33/13 76/19
forward [4] 7/12 9/4 34/7 39/2
foster [34] 5/10 9/4 9/8 9/9 11/25 12/2 12/13 12/23 13/4 14/18 14/21 20/11 23/20 23/25 28/14 28/21 33/7 44/22 47/22 49/1 51/19 51/19 53/14 57/4 58/23 58/24 61/10 64/19 66/14 66/20 67/6 76/24 78/7 83/5
fostering [1] 51/13
found [2] 45/18 71/12
fours [1] 21/10
Freedom [20] 16/6 16/20 22/2 22/19 23/5 32/19 36/18 39/22 39/24 40/20 43/4 43/10 44/11 44/23 45/15 51/21 51/24 51/25 52/14 78/20
front [6] 34/13 47/4 49/4 49/5 58/6 58/7
full [4] 9/11 50/1 54/7 76/4
fully [1] 52/5
function [1] 44/15
functioning [1] 65/20
fund [6] 1/17 7/2 7/21 27/25 81/9 83/13
fundamental [1] 76/18
funded [1] 70/4
funding [17] 19/10 19/10 22/20 23/1 23/1 42/20 43/18 44/3 45/18 53/11 68/2 69/3 69/17 74/3 82/17 82/19 85/8
funds [14] 28/9 34/17 37/2 41/10 44/21 62/5 72/12 73/4 74/6 74/12

**F** ... 74/15 74/23 83/19 84/7
further [2] 54/5 82/7
future [1] 81/4

**G**

gap [1] 39/2
general [5] 28/10 69/17 70/22 71/21 75/21
generally [2] 31/13 32/19
get [12] 6/23 13/18 14/9 29/2 31/11 46/6 46/21 56/4 78/22 84/19 85/6 85/11
gets [3] 42/4 62/3 70/12
getting [2] 59/8 69/8
give [7] 32/20 33/22 52/7 52/8 56/10 56/13 56/13
given [10] 20/21 24/4 33/15 33/15 35/14 35/21 72/15 73/11 73/13 85/5
gives [1] 85/1
giving [2] 63/24 71/14
Glickman [2] 31/19 46/2
Glicksberg [2] 46/3 46/4
Gliksberg [3] 1/15 3/11 3/16
go [34] 4/7 9/7 10/20 17/22 24/11 24/24 32/16 37/19 40/12 45/2 45/10 47/21 57/4 58/1 58/13 58/14 58/16 58/20 58/25 59/5 59/19 59/19 60/2 60/15 61/3 61/12 61/12 62/5 65/16 72/1 73/6 75/10 80/14 85/10
go ahead [2] 32/16 45/10
goes [1] 12/25
going [23] 10/4 12/14 15/15 18/1 20/22 28/25 37/13 51/22 56/3 58/2 61/12 62/1 63/1 69/21 70/8 70/14 71/5 74/5 75/3 75/10 76/8 80/5 84/23
good [8] 3/4 3/6 3/15 3/22 4/3 4/8 31/7 45/8
good morning [5] 3/4 3/15 3/22 4/3 4/8
got [10] 11/20 11/23 25/1 27/23 31/10 43/1 43/2 59/24 76/9 79/22
government [98]
government's [9] 19/15 30/20 43/7 49/21 52/2 52/5 63/5 67/8 76/22
government-authorization [1] 8/19
governmental [1] 22/11

**G**

governs [1] 30/19
grant [32] 6/20 7/19
10/25 18/4 18/18 23/9
28/4 29/1 29/2 29/4
30/3 30/19 30/25 31/2
35/21 35/23 35/24
44/10 44/16 47/13 50/9
50/25 52/18 63/12
63/24 69/22 69/23
70/19 70/19 73/24 76/2
83/13
granted [1] 14/18
grantee [48] 8/13 10/2
10/7 12/8 12/12 12/23
13/14 13/24 13/25 14/1
14/2 14/13 14/19 14/20
15/3 15/25 20/11 21/1
28/18 28/19 29/21 33/6
40/13 40/13 43/3 43/3
43/3 46/14 47/17 51/18
51/22 52/8 53/4 58/24
59/11 59/16 60/10
61/10 61/11 61/24
77/20 78/6 78/18 79/17
80/25 85/3 85/3 85/19
grantee's [3] 14/23
28/19 47/11
grantees [18] 9/11
11/22 12/1 15/9 16/15
32/20 33/18 34/12
41/25 42/25 47/24 50/4
54/24 69/23 70/24 72/3
80/5 80/10
grantees' [1] 8/25
granting [1] 69/4
grants [20] 15/15
19/10 19/10 20/2 28/5
28/21 29/12 32/22
50/19 53/6 60/10 67/19
70/10 70/25 73/5 74/1
75/2 75/10 75/10 85/8
greater [1] 77/24
ground [3] 4/25 13/2
79/25
grounds [3] 34/4 38/6
38/7
guarantee [1] 38/24
guarantees [1] 67/1
guess [9] 6/1 6/17
15/11 36/24 41/24 59/8
61/6 79/18 81/8
guidance [1] 8/20

**H**

had [15] 7/9 17/17
17/25 20/1 22/25 43/14
48/8 59/4 59/5 59/10
65/22 69/18 70/23
74/25 75/2
hand [3] 15/14 36/3
44/6
handed [1] 75/20
happen [3] 15/24 51/20
56/11
happened [3] 45/6
71/20 74/24
happening [4] 45/18

happens [2] 28/7 61/11
happy [6] 27/13 45/21
56/21 58/1 68/3 76/12
hard [1] 68/24
harder [1] 27/4
harm [5] 10/16 44/6
52/13 66/6 84/8
harms [4] 43/7 54/12
54/14 68/11
has [30] 7/4 12/11
14/13 15/16 17/10
19/24 22/2 24/1 24/20
28/16 30/7 32/24 35/22
41/12 45/5 48/7 48/25
55/5 55/12 55/16 65/12
70/13 72/24 73/25
77/17 78/21 82/7 82/24
83/19 85/18
Hassan [1] 54/1
have [134]
haven't [10] 14/25
31/15 31/23 33/13
33/15 33/15 35/14
39/15 39/16 42/8
having [2] 59/4 68/24
head [7] 15/22 16/4
36/14 36/16 37/11
37/11 56/20
Health [1] 5/9
hear [5] 4/4 4/13 33/21
55/10 59/17
heavy [1] 40/16
Heckler [2] 31/11
66/24
Hein [13] 25/11 26/7
69/8 69/9 69/11 72/16
72/22 74/10 75/16
75/17 76/5 81/25 84/2
held [8] 10/13 21/6
24/2 26/22 32/6 32/13
39/4 39/13
help [4] 20/19 45/6
64/9 64/9
helpful [2] 27/23 84/18
here [65] 3/6 3/13 3/19
4/4 6/6 7/25 12/16
16/13 16/24 19/1 22/12
24/14 25/3 26/13 26/21
27/24 28/16 31/24
33/14 34/16 37/4 37/10
43/23 44/14 44/18 45/1
45/20 46/11 46/24 49/7
52/3 52/17 54/3 54/8
54/16 55/1 55/4 58/10
61/9 64/20 65/17 69/22
69/25 70/1 70/21 72/7
73/2 73/23 74/2 74/15
74/24 75/8 75/12 75/22
76/3 77/3 78/4 81/12
82/12 83/6 83/8 83/12
84/12 84/25 85/6
here's [1] 11/14
heterosexual [1] 30/5
HHS [23] 22/16 22/16
22/16 23/8 31/4 33/4
34/10 34/14 34/25 49/9
50/17 50/19 58/14

59/19 60/18 60/23
61/13 61/23 85/3 85/19
hide [1] 63/16
high [1] 41/3
higher [2] 21/19 22/4
highly [2] 56/5 79/7
hire [2] 37/20 37/23
hired [1] 37/24
hiring [1] 38/5
historical [1] 43/15
HOGAN [2] 1/12 3/13
hoganlovells.com [1]
1/14
hold [2] 77/18 78/24
home [1] 36/12
homes [2] 48/17 76/22
honest [1] 15/12
honestly [1] 10/13
Honor [36] 3/23 4/8
8/17 10/18 17/15 19/1
21/14 27/18 29/5 31/18
33/9 33/9 34/6 34/13
37/17 38/9 42/6 45/21
46/5 47/14 48/15 51/4
52/1 52/17 53/18 55/20
61/14 64/15 67/22
68/21 77/11 77/13 82/9
82/11 83/12 84/15
Honor's [3] 35/11
40/18 42/10
HONORABLE [3] 1/9
3/2 86/2
hoops [1] 59/5
House [1] 72/18
Houston [2] 11/23
11/24
how [19] 10/4 14/16
17/10 19/8 19/24 20/19
21/11 27/23 35/5 42/5
56/1 56/23 59/11 65/19
66/15 69/8 79/8 80/8
81/6
Human [1] 5/9
hypothetical [2] 8/24
23/7
hypothetically [2]
51/18 58/9
hypotheticals [2]
18/25 24/13

**I**

I address [1] 62/22
I also [1] 40/5
I assume [1] 59/10
I believe [8] 21/15 26/7
26/22 31/3 35/5 41/18
41/20 43/17
I can [2] 6/23 21/3
I can't [8] 13/18 14/9
23/16 23/22 29/20
51/23 56/19 61/12
I don't [6] 6/11 30/6
41/6 81/11 81/13 81/23
I don't have [1] 45/23
I don't know [3] 16/3
59/9 85/22
I don't think [9] 6/23

37/4 80/20 81/1 84/3
I guess [8] 6/1 6/17
36/24 41/24 59/8 61/6
79/18 81/8
I have [5] 6/18 8/3 8/6
18/17 21/3
I just [10] 36/24 37/14
57/6 67/1 68/19 71/5
78/2 79/1 81/22 85/9
I know [2] 29/6 30/10
I mean [30] 11/21
15/21 15/22 17/14
17/24 19/18 31/3 32/23
33/21 33/25 35/2 35/23
35/25 36/14 37/4 40/7
40/15 47/10 53/8 53/13
55/18 56/2 56/3 56/19
59/25 69/1 72/17 79/24
80/3 84/21
I should [5] 20/9 25/2
41/8 80/18 80/23
I think [51] 7/20 8/15
8/18 10/17 10/19 13/1
13/13 14/22 14/24 15/1
15/5 15/6 16/4 16/25
18/7 19/5 20/5 20/9
22/4 23/4 24/1 24/10
24/16 24/25 25/10
25/14 25/17 25/20 26/5
26/12 26/24 30/9 31/7
31/10 38/17 39/23
39/24 41/23 42/23 43/9
43/23 45/20 71/15
78/19 79/24 80/17 81/3
81/16 81/18 84/20 85/3
I thought [2] 14/12
47/8
I understand [2] 12/5
85/15
I want [1] 5/1
I was [5] 27/5 46/22
55/11 62/3 74/20
I'd [10] 31/18 32/5
37/15 38/5 38/11 43/8
44/17 45/9 45/14 46/10
I'll [6] 29/1 29/15 50/7
75/14 85/11 85/23
I'll look [1] 85/23
I'm [36] 3/13 3/19 3/19
5/14 5/15 5/22 6/1 7/16
13/19 15/3 18/10 23/15
24/13 27/12 29/4 30/6
30/21 31/1 35/4 41/24
45/21 46/4 50/10 56/21
59/8 60/17 61/8 61/12
65/6 68/19 68/24 76/8
76/12 82/11 84/18
84/18
I'm going [1] 61/12
I'm just [4] 41/24 59/8
76/8 84/18
I'm not [3] 5/15 30/6
35/4
I'm not sure [1] 23/15
I'm sorry [4] 13/19
46/4 60/17 84/18
I'm sure [1] 18/10

02e [1] 11/6 11/20
33/23 67/16 76/9 79/22
ideas [1] 79/1
identifiable [1] 54/4
identified [1] 12/12
identify [1] 3/9
identifying [1] 66/9
identity [2] 51/2 63/14
II [1] 1/6 3/8
III [1] 18/11
IL [1] 1/18
illegal [2] 31/22 32/11
illegality [1] 32/7
imagine [1] 23/22
immediate [1] 21/19
immediately [2] 65/20
77/23
immigrant [1] 9/2
Immigration [1] 48/12
immune [1] 23/11
impact [1] 38/21
impermissible [1]
64/21
impermissibly [1] 66/4
impinge [1] 10/13
implausible [1] 83/21
implement [2] 53/7
74/16
implementation [1]
24/8
implementing [1]
18/21
important [5] 6/25 20/6
30/9 38/9 64/16
imposes [1] 21/18
imputed [2] 69/16 70/3
INC [1] 1/17
incentivized [1] 66/4
included [1] 34/3
including [2] 50/4 71/1
inconsistent [2] 7/10
56/18
incorrect [1] 55/2
indicate [3] 6/14 24/16
36/22
indicated [1] 82/15
indication [1] 33/16
37/21 40/4
individual [26] 5/6
10/21 12/25 15/7 15/9
17/19 21/7 21/13 25/2
27/2 46/14 46/18 46/20
46/23 47/4 58/24 59/2
61/1 63/1 65/4 65/5
66/6 77/19 78/22 80/11
85/13
individuals [3] 49/5
52/21 66/3
indoctrination [1] 66/5
ineligible [1] 5/10
infer [1] 81/19
inference [2] 22/10
38/2
inferior [6] 52/25 61/1
61/4 61/7 65/1 65/9
informally [1] 82/3
initiate [1] 59/2
injunction [2] 18/3

**I**

injunction... [1] 18/18
injured [1] 65/12
injuries [8] 54/16 63/4
63/9 64/17 65/6 66/19
67/4 67/14
injury [30] 16/12 18/23
19/6 19/8 19/12 21/19
27/10 28/13 38/21
44/21 44/24 54/3 54/9
54/17 59/4 64/19 65/3
65/17 66/8 66/10 66/16
66/17 66/25 67/3 79/23
82/21 82/24 82/25 83/1
83/4
inner [1] 56/23
inquiry [2] 45/5 75/7
insisting [1] 16/17
insofar [1] 12/24
instance [3] 18/9 18/11
51/17
instead [3] 58/13 58/13
80/24
intent [3] 69/16 70/3
74/17
interest [4] 13/13 77/5
85/6 85/20
interested [2] 42/11
61/9
interesting [1] 69/9
internal [1] 9/20
interns' [1] 21/4
interplay [1] 31/19
interpret [1] 56/23
involve [2] 29/16 82/19
involved [1] 42/5
involving [3] 10/22
39/11 81/17
irrespective [1] 18/6
is [265]
is there [3] 30/23 66/15
71/18
isn't [8] 8/14 9/13 16/8
40/10 51/20 53/4 61/5
70/6
issue [26] 5/2 12/20
12/25 17/6 18/13 19/5
19/7 26/20 28/11 30/11
34/16 36/1 43/15 44/9
45/1 45/22 49/20 55/7
59/7 70/24 72/22 74/1
75/19 77/22 84/8 84/23
issued [2] 79/13 80/7
issues [6] 45/22 46/7
50/1 54/20 62/22 85/6
it [138]
it would be [6] 27/4
39/4 39/23 63/13 63/19
69/21
it's [67] 6/14 9/24 11/7
13/17 14/2 16/10 17/1
19/14 20/5 33/5 34/6
34/14 34/18 35/16 37/2
37/12 37/14 38/9 38/25
40/16 41/3 41/13 42/3
42/21 44/11 45/10
46/19 46/20 47/16
48/19 49/21 50/20 52/2
55/11 62/1 64/12 64/14
64/15 64/18 65/14
66/19 66/22 69/9 70/7
71/8 71/15 72/6 72/7
73/20 74/5 74/7 74/17
76/16 78/20 81/3 81/11
81/14 83/2 83/13 83/16
83/21 84/17 85/6
its [38] 9/11 9/20 10/14
12/19 15/21 16/18 17/5
23/10 24/7 24/8 26/14
28/18 28/18 28/19
31/12 36/14 36/16
37/10 37/11 39/13 41/9
42/1 43/25 51/9 51/10
51/23 52/16 52/18
53/11 54/24 63/14
63/15 66/15 69/14 71/8
72/8 73/25 75/21
itself [11] 12/4 16/15
31/2 33/6 35/1 51/16
58/10 61/25 66/25 85/3
85/19

**J**

James [1] 2/2
James.R.Powers [1]
2/6
Jamie [2] 1/15 3/11
jgliksberg [1] 1/19
Jim [2] 3/23 4/9
JONES [2] 2/8 2/12
jonesday.com [2] 2/10
2/14
JUDGE [2] 1/10 21/6
Judge Borman [1]
21/6
judgments [1] 29/17
juncture [2] 40/6 79/22
jurisdiction [4] 4/13
18/12 18/15 18/16
just [51] 5/18 6/9 12/22
15/21 16/2 17/24 19/6
23/7 25/20 27/13 27/22
32/8 33/23 34/19 36/24
37/9 37/14 39/16 40/3
41/24 42/8 43/3 46/6
47/9 47/10 54/20 57/6
59/8 59/23 61/22 64/14
64/18 66/19 67/1 67/1
67/16 67/17 68/19
70/13 71/5 72/2 75/16
76/8 77/13 77/16 78/2
79/1 81/15 81/22 84/18
85/9
JUSTICE [3] 2/3 3/24
4/1

**K**

Kavanaugh [1] 73/16
keep [1] 56/14
Ken [1] 3/13
ken.choe [1] 1/14
Kendrick [8] 25/6
26/11 71/25 74/19
74/21 75/13 75/18 76/3
Kenneth [1] 1/12
17/7 19/7 20/7 20/14
22/10 22/12 23/6 33/23
43/15 79/2
KKK [2] 37/20 37/23
knew [10] 69/23 70/1
70/19 72/2 72/8 72/17
75/3 75/8 75/10 82/5
know [37] 8/15 11/4
11/5 11/10 11/20 13/1
13/9 13/14 15/5 16/3
20/5 24/13 29/6 30/1
30/10 33/17 37/12
47/23 48/16 48/18 50/7
51/4 53/20 54/13 55/9
56/22 59/9 61/12 71/1
72/9 73/5 77/17 77/20
78/4 82/13 85/12 85/22
knowing [3] 63/13 74/4
75/2
knowingly [1] 50/24
knowledge [3] 48/19
69/18 71/21
known [2] 37/2 72/9
knows [2] 9/5 71/5

**L**

lack [3] 4/12 9/9 22/14
lacked [1] 73/20
lacks [1] 4/13
LAMBDA [3] 1/16 3/12
3/14
lambdalegal.org [2]
1/19 1/20
language [1] 22/9
largely [1] 70/2
last [1] 33/19
later [1] 62/10
Latino [3] 9/1 9/2 9/3
law [7] 7/10 8/16 8/18
9/19 12/7 17/14 75/17
LBGT [1] 33/20
lead [1] 19/11
leading [1] 12/15
leap [2] 43/19 43/23
least [26] 9/2 11/7
11/21 11/23 12/2 12/24
13/11 16/23 21/7 21/12
22/16 23/13 23/18
23/22 25/15 30/14
30/21 33/2 33/18 33/21
38/14 39/9 41/20 42/4
49/9 85/13
leave [4] 12/21 17/19
39/3 71/22
leaving [1] 71/23
lectern [1] 3/9
legal [10] 1/16 3/12
3/14 7/2 7/21 12/6 12/7
79/4 80/14 81/9
legality [1] 32/7
legislative [1] 84/6
Leon [2] 2/11 3/20
less [4] 64/25 72/13
74/21
let [11] 5/8 5/19 13/9
14/15 17/22 18/17
30/23 47/6 66/12 73/18
let's [4] 8/23 51/17
58/9 59/9
level [1] 15/25
levels [1] 83/15
lfdejulius [1] 2/14
LGBT [1] 26/25
license [1] 63/21
like [19] 5/13 7/21 15/1
15/23 29/16 35/15
37/19 37/20 39/8 41/18
43/16 46/6 46/10 51/4
68/21 69/22 70/3 74/20
75/12
likelihood [1] 33/12
likely [2] 20/23 38/20
limit [1] 40/18
limitations [1] 76/19
limited [1] 40/10
line [4] 31/20 32/1 58/3
59/1
lines [1] 85/17
link [1] 43/2
list [1] 41/24
listed [1] 41/25
litigation [3] 53/20
54/11 62/10
little [4] 33/11 35/17
39/17 42/9
LLP [1] 1/12
location [3] 14/20
19/16 80/11
locations [2] 11/11
11/13
logic [3] 26/9 43/20
43/23
long [11] 12/13 15/24
23/1 49/4 52/16 53/22
60/12 68/9 68/16 78/7
84/18
long-term [2] 12/13
78/7
longer [2] 55/7 67/19
look [10] 13/2 35/15
43/5 43/16 44/23 55/6
84/5 84/10 84/20 85/23
looked [3] 11/6 11/20
43/12
looking [8] 34/5 41/24
43/6 67/25 68/1 78/14
82/17 83/6
looks [2] 36/19 39/8
losing [2] 40/23 40/25
lost [4] 64/18 66/20
66/21 67/5
lot [3] 16/19 41/22 85/4
Louisiana [1] 2/9
LOVELLS [2] 1/12 3/13
loving [1] 76/21
Lujan [4] 21/23 21/24
21/25 24/16
lump [3] 73/11 73/13
75/19
lump-sum [3] 73/11
73/13 75/19
Lutheran [2] 48/11
48/12
Lyon [3] 21/4 21/12

**M**

made [5] 12/24 15/9
31/24 45/5 54/22
mainly [1] 2/14
make [5] 8/7 39/21
63/9 63/9 68/19
making [4] 15/13 33/6
37/5 68/25
male [1] 36/12
man [1] 36/10
mandate [8] 19/19
25/12 25/15 25/17
25/19 41/9 73/3 74/17
mandated [3] 19/23
69/13 71/2
manner [1] 10/25
12/10 18/21 37/3 46/16
55/14 56/17 78/10 79/6
79/12
many [4] 51/5 66/9
66/9 67/17
MAROUF [2] 1/3 3/7
marriage [5] 36/10
44/1 44/3 59/7 61/2
married [1] 15/20
matter [10] 3/7 7/24
24/21 28/10 30/14 59/1
60/22 61/19 80/13 87/4
Matthews [1] 66/24
maximalist [12] 9/22
9/25 10/8 10/18 11/18
27/4 38/8 38/11 38/13
46/22 55/11 82/15
may [16] 4/8 5/2 6/7
9/18 9/18 11/6 12/17
24/2 27/15 27/20 41/5
54/5 62/22 79/16 79/16
84/1
maybe [5] 11/4 11/21
46/11 61/8 67/16
me [49] 3/25 5/8 5/19
6/8 7/4 7/7 9/7 9/24
10/9 11/17 13/9 14/15
17/22 18/17 20/1 21/11
25/15 25/25 28/24
31/14 34/14 34/19
37/14 39/19 45/11 46/6
46/11 46/21 47/6 47/13
51/19 53/2 53/13 56/5
56/10 56/13 56/13 60/5
66/12 68/21 85/5 85/6
85/9 85/12 85/12
mean [52] 6/20 8/23
9/7 10/5 11/5 11/21
15/21 15/22 17/14
17/24 19/18 20/1 20/7
21/24 25/10 26/1 29/1
29/7 31/3 32/23 33/17
33/21 33/25 34/25 35/2
35/23 35/25 36/14 37/4
40/7 40/9 40/15 40/20
47/10 50/17 52/8 53/8
53/13 55/18 56/2 56/3
56/19 58/18 59/25
67/24 69/1 72/17 79/24

Case 1:18-cv-00872-APM Document 30 Filed 03/23/20 Page 95 of 100

**M**

mean... [4]  80/1 80/3 80/9 84/21
means [7]  10/11 12/3 33/5 51/6 51/18 52/12 80/4
meant [3]  10/5 36/10 63/17
mechanical [1]  2/20
mechanism [6]  48/25 54/11 55/21 56/4 57/16 85/17
mechanisms [3]  55/22 57/13 79/4
MEHTA [2]  1/9 3/3
member [1]  67/11
members [1]  52/21
mention [4]  25/25 64/16 73/17 73/18
mentioned [3]  57/22 67/2 72/5
merely [4]  53/20 61/1 72/14 74/22
Merit [1]  2/15
merits [2]  8/4 31/16
message [1]  64/22
met [3]  39/16 42/8 73/25
method [2]  22/21 43/14
metro [5]  14/3 15/4 20/11 21/1 80/16
Michelle [2]  2/2 3/25
Michelle.Bennett [1] 2/7
Michigan [1]  21/6
might [8]  20/18 27/22 42/6 56/21 65/19 77/5 80/22 80/24
million [1]  11/7
millions [3]  40/21 41/1 63/12
mind [1]  8/10
minimal [1]  10/9
minimalist [1]  38/8
minor [1]  28/1
minors [4]  25/19 41/11 41/13 48/17
mode [1]  32/8
model [1]  43/17
modification [1]  53/16
money [13]  18/4 44/7 44/12 66/15 70/8 70/12 70/14 71/5 71/14 72/18 73/15 79/21 80/3
monies [4]  10/25 23/9 63/12 69/4
moot [3]  13/6 66/17 79/16
mooted [1]  13/11
moral [2]  29/17 51/3
more [11]  10/9 11/19 19/3 23/7 23/22 42/14 42/14 76/9 78/19 79/1 83/9
morning [6]  3/4 3/6 3/15 3/22 4/3 4/8
most [1]  34/11

motion [3] 4/5 17/22
78/24
motions [1]  4/5
moving [1]  51/10
Mr. [2]  3/22 82/10
Mr. Raimer [2]  3/22 82/10
Ms. [2]  3/16 46/2
Ms. Glickman [1]  46/2
Ms. Gliksberg [1]  3/16
much [6]  39/14 39/25 41/2 42/5 42/5 69/13
multiple [1]  11/21
multitude [1]  56/8
must [2]  10/1 71/8
mutual [1]  13/13
my [14]  8/10 12/15 13/17 21/4 28/5 30/16 30/22 31/10 36/4 42/4 48/18 56/20 57/16 61/20
mystifying [1]  36/24

**N**

name [1]  16/19
narrow [3]  25/4 27/1 84/5
narrower [2]  4/19 11/16
National [1]  22/3
nationality [1]  18/6
nature [8]  13/3 19/6 23/4 31/24 34/1 35/11 35/11 54/6
Navy [13]  26/6 26/12 26/13 26/16 72/22 73/10 73/15 73/17 73/18 73/19 74/8 76/4 84/4
necessarily [5]  10/12 18/12 38/15 38/16 80/9
necessary [1]  54/25
need [18]  4/23 9/25 10/3 13/2 20/8 40/5 41/6 43/4 43/5 46/21 49/25 66/16 67/15 77/23 80/4 81/11 81/13 84/11
needs [13]  8/10 13/16 14/7 18/22 25/7 25/11 26/8 61/18 68/5 68/6 69/3 82/5 85/8
negative [1]  38/21
neither [2]  4/25 69/6
never [1]  30/20
new [3]  2/13 13/25 79/3
next [4]  32/1 80/15 81/4 81/6
nexus [7]  15/8 25/7 26/8 43/6 44/24 45/19 81/18
no [74]  1/4 5/12 5/22 10/1 10/7 11/12 12/6 12/7 15/14 17/9 17/19 22/12 22/14 23/1 23/12 23/15 24/17 25/22 25/25 26/16 27/9 28/1

32/24 32/25 33/22 33/25 35/25 36/2 36/16 38/2 38/24 39/7 41/16 42/8 42/16 44/25 47/23 48/25 49/4 52/22 55/6 55/7 55/9 57/9 57/12 57/19 59/1 59/23 60/6 60/9 60/10 60/22 60/25 61/18 65/5 67/19 68/6 69/20 72/1 72/4 73/17 74/12 74/13 77/17 79/4 82/8 83/12 84/6 84/14 85/6
nobody [2]  65/11 65/12
nominal [1]  27/12
non [3]  31/13 31/14 46/17
non-reviewable [1] 31/14
non-stigmatizing [1] 46/17
nonetheless [1]  22/24
not [146]
note [2]  12/11 75/16
noted [4]  51/5 81/23 82/1 82/2
nothing [9]  6/14 22/25 23/23 36/21 53/17 73/21 78/21 78/22 84/13
notice [3]  63/19 70/22 70/23
noting [1]  20/10
notion [2]  32/2 56/5
November [1]  1/5
now [14]  5/1 11/8 14/24 16/16 18/25 41/19 47/16 47/20 48/20 50/21 57/24 59/10 71/15 82/13
number [2]  11/8 11/10
numerous [1]  83/19
NW [4]  1/13 2/4 2/9 2/17
NY [1]  2/13

**O**

Obama [1]  83/22
Obergefell [1]  83/23
object [1]  78/25
objection [4]  28/1 28/9 77/18 77/21
objections [1]  49/6
objective [1]  38/17
obligation [2]  41/17 54/23
obstacles [5]  47/4 49/4 58/6 59/6 68/6
obviously [5]  19/1 23/16 29/6 38/9 44/2
occur [2]  14/7 55/8
occurred [1]  54/16
off [5]  42/19 45/17 56/20 82/13 82/16
offered [1]  39/7
office [1]  47/11

Official [1]  2/16
Oh [1]  13/23
okay [24]  3/18 5/16 5/25 6/16 11/4 21/2 24/22 25/21 27/14 46/9 48/22 49/15 49/19 59/15 62/21 62/25 65/7 68/19 75/14 76/15 78/16 81/21 84/16 85/21
one [47]  4/21 8/25 9/22 11/16 11/24 13/4 15/22 16/21 16/21 17/5 19/3 22/4 22/16 23/7 24/17 24/25 25/11 25/22 28/7 31/15 37/25 48/3 51/15 53/2 53/8 54/17 56/10 56/13 56/13 56/19 59/15 59/16 59/21 60/2 61/4 61/4 61/23 63/24 64/3 68/7 77/17 81/6 81/22 82/3 82/13 82/22 84/24
one's [2]  16/4 85/6
ones [3]  49/22 49/23 49/25
only [38]  8/2 9/1 9/2 10/18 10/21 14/18 14/18 16/9 16/10 16/21 20/2 21/3 23/8 24/11 25/4 28/17 28/18 29/10 36/25 38/20 39/6 44/6 44/9 47/17 47/21 48/2 48/20 51/18 51/18 53/14 57/22 62/4 64/19 65/3 65/17 66/2 67/7 70/21
open [2]  41/13 70/16
operate [8]  11/22 11/23 20/13 29/10 55/13 56/15 79/4 80/5
operates [1]  14/16
operating [2]  26/14 32/6
operations [3]  9/20 15/2 79/3
opinion [1]  29/23
opportunities [1]  77/9
opportunity [13]  4/21 13/4 17/21 18/5 35/17 53/3 64/18 66/20 66/21 67/5 76/23 79/14 85/1
opposed [2]  37/1 59/19
option [1]  77/20
options [3]  15/4 57/3 77/4
ORAL [1]  1/9
order [14]  3/3 5/4 10/3 12/8 17/7 17/16 19/9 32/17 34/10 42/6 54/8 54/12 79/5 80/15
ordered [4]  17/18 20/2 49/8 79/11
organization [17] 15/16 17/25 18/4 27/7 27/8 28/21 32/11 37/11

9/2 48/10 62/6 62/7 67/20 69/5 70/15 71/14 71/17
organizations [24] 10/11 20/2 25/23 26/1 26/2 28/10 34/6 48/3 48/3 69/17 69/21 69/24 70/2 70/4 70/20 70/25 71/1 72/1 72/2 72/4 73/6 74/5 75/3 75/1 74/22 47/4 47/24 48/9 48/25 49/5 53/7 53/8 54/20 55/22 57/13 57/25 58/7 59/7 59/23 60/9 61/4 61/8 61/22 61/24 62/22 63/25 66/14 66/15 71/24 74/18 81/6
orientation [2]  59/6 61/19
originally [1]  19/23
ORR [2]  34/14 41/25
other [45]  7/25 13/9 14/20 15/4 15/14 16/10 16/15 23/17 29/16 33/6 34/6 36/3 37/1 41/8 42/15 43/8 44/6 44/8 45/22 47/4 47/24 48/9 48/25 49/5 53/7 53/8 54/20 55/22 57/13 57/25 58/7 59/7 59/23 60/9 61/4 61/8 61/22 61/24 62/22 63/25 66/14 66/15 71/24 74/18 81/6
others [1]  24/16
otherwise [5]  8/21 27/15 31/22 34/5 70/15
ought [1]  15/19
our [14]  29/10 29/11 36/7 37/12 38/17 47/1 47/21 48/4 48/7 51/5 52/23 55/23 63/2 81/24
out [29]  7/16 7/17 8/7 13/11 13/16 15/1 17/24 19/24 19/24 21/5 23/14 24/18 28/6 35/6 37/20 40/6 41/9 41/16 44/15 45/18 53/6 55/16 55/16 62/7 65/16 66/17 77/20 78/25 81/7
outlet [2]  16/21 16/21
outlier [1]  71/16
outset [1]  4/11
over [8]  11/7 51/14 52/15 57/1 58/10 62/15 62/16 75/20
overly [1]  61/8
own [9]  9/20 28/18 51/9 51/10 52/2 52/5 63/5 75/21 77/6

**P**

page [1]  81/25
papers [2]  16/5 51/10
paperwork [1]  14/6
parallel [1]  59/14
parallels [1]  7/4
Pardon [1]  34/22
parent [2]  13/4 61/10
parents [8]  5/11 9/4 9/8 11/25 12/2 18/1 66/14 76/24
part [9]  11/17 36/20 65/14 71/7 72/21 72/23 75/6 77/18 83/18

**P**

participants [1] 41/19
participate [6] 6/8 10/6 50/5 66/1 66/21 67/10
participating [1] 66/3
participation [1] 64/24
particular [25] 10/22 12/8 12/10 15/3 18/23 19/16 19/16 20/17 24/3 24/21 25/9 32/7 35/13 36/1 38/20 40/13 41/17 43/22 44/13 57/17 79/6 80/16 82/25 83/3 84/8
particularly [3] 32/13 32/17 45/4
partnerships [2] 34/18 35/3
party [10] 16/10 16/10 21/20 22/20 22/20 22/22 22/25 32/4 38/4 43/21
pass [1] 76/6
payment [2] 73/11 73/13
payments [1] 75/19
pejoratively [1] 6/20
penalty [1] 40/25
pending [2] 4/5 24/21
people [7] 15/18 43/8 58/7 61/3 61/14 68/10 77/8
perhaps [4] 7/25 24/7 30/14 45/12
permit [1] 27/10
person [1] 60/16
personally [1] 67/15
Physicians [1] 22/3
piece [1] 27/12
place [15] 7/6 7/22 9/5 18/1 20/17 23/20 47/21 48/16 50/3 50/21 54/12 56/16 59/10 68/7 68/9
placed [5] 9/1 9/3 36/12 37/13 41/3
placement [15] 9/9 10/8 10/12 12/23 14/9 14/21 23/25 28/22 40/14 51/20 53/3 53/14 62/8 62/14 77/4
plaintiff [5] 23/12 23/16 24/3 33/11 74/10
plaintiffs [51] 1/4 1/12 3/12 4/12 4/15 5/19 5/24 6/14 6/21 8/21 10/6 10/21 10/25 11/12 14/25 15/4 17/4 17/19 17/19 21/12 22/15 22/19 23/23 25/2 25/2 27/16 28/1 28/8 28/14 28/16 30/7 31/4 31/15 31/23 33/3 33/13 35/13 38/10 42/8 42/12 42/22 63/3 77/2 77/19 78/23 79/14 80/11 82/12 85/1 85/17
plaintiffs' [6] 15/7 19/12 27/2 76/17 84/22 85/18

play [4] 6/24 62/22 79/4 43/19 81/7
played [1] 23/14
plays [2] 77/20 78/25
plead [1] 42/14
please [6] 3/3 3/4 3/9 4/9 27/20 46/8
pled [2] 17/1 42/13
point [14] 22/6 22/7 28/11 31/25 32/1 40/3 54/10 74/11 77/17 81/3 81/22 81/23 84/19 85/7
pointed [1] 41/16
pointing [1] 31/8
points [3] 15/6 42/11 77/16
police [1] 9/11 54/24
policies [1] 7/18 50/2 50/14 50/20 50/22 51/23
policy [20] 5/9 5/13 5/15 5/22 6/7 6/12 6/15 52/16 53/21 54/4 54/8 55/3 55/5 65/18 67/8 80/13 83/11 83/11 83/11 83/12
populations [1] 20/20
portion [4] 13/11 47/8 82/2 85/14
position [16] 5/9 5/19 5/21 8/25 22/22 32/23 35/20 37/15 43/22 43/25 44/2 56/12 56/23 60/8 65/4 76/16
positive [1] 35/4
possibilities [1] 56/8
possibility [5] 33/23 39/17 39/18 42/9 42/13
possible [5] 33/9 54/6 76/21 76/23 77/4
posture [1] 13/15
potential [6] 12/12 13/14 40/25 44/6 77/19 78/6
potentially [3] 20/11 38/22 40/21
power [7] 25/8 40/19 71/9 72/14 74/1 74/22 76/19
Powers [3] 2/2 3/23 4/9
practical [1] 40/8
practically [1] 33/16
prayer [1] 17/3
pre [4] 13/15 14/13 23/1 44/3
pre-dated [1] 23/1
pre-dates [1] 44/3
pre-decisional [1] 13/15
pre-existing [1] 14/13
precedent [4] 21/17 21/18 24/14 26/23
precise [1] 62/11
precisely [2] 16/8 44/15
predict [2] 40/25 54/6
predictive [1] 40/18

preferred [1] 41/25
premier [2] 28/7 38/1
premise [2] 32/1 42/19
prepared [1] 13/8
preparing [1] 21/5
present [2] 78/8 78/17
presiding [1] 3/3
presume [1] 41/8
presumptively [1] 32/11
pretty [4] 34/2 37/21 70/16 80/6
prevail [1] 8/4
prevent [4] 30/3 43/7 45/17 52/20
preventing [1] 53/24
principle [2] 8/1 17/13
private [3] 34/18 35/3 71/16
private-public [2] 34/18 35/3
probably [1] 35/5
problem [10] 31/10 49/17 56/25 60/6 61/13 61/21 61/24 68/18 72/21 80/21
proceed [1] 10/4
proceedings [1] 1/9 2/20 6/13 33/10 86/3 87/4
process [42] 13/15 14/7 14/7 14/11 47/19 49/1 49/1 50/15 54/14 57/2 57/2 57/2 58/2 58/4 58/11 58/15 58/17 58/19 58/19 58/20 58/23 59/3 59/9 59/10 59/14 59/15 59/25 60/14 60/17 60/19 61/7 61/18 62/1 62/14 62/15 62/16 65/21 66/18 67/1 68/5 68/9 78/25
processed [2] 55/24 60/23
processes [4] 50/3 50/21 63/7 65/19
processing [2] 47/18 49/12
produce [1] 24/19
produced [1] 22/20
program [72] 6/8 10/1 10/7 12/19 14/16 18/4 18/21 19/20 19/23 20/12 20/13 23/9 24/7 25/16 25/20 25/24 26/14 27/25 28/2 28/3 28/4 29/10 29/10 35/1 36/4 36/6 39/3 41/20 41/20 41/23 41/25 46/16 47/20 48/1 48/2 48/20 49/23 49/25 50/6 52/6 52/9 52/13 53/7 55/13 55/17 56/24 57/23 57/25 64/6 64/9 64/11 64/24 66/1 66/22 66/25 67/12 67/19 69/2 69/7 69/7 69/22 73/19

premise [2] 28/7 38/1 78/5 78/5 78/7 78/9 78/17 80/5
programmatic [1] 83/6
programs [24] 2/3 5/11 12/10 17/9 44/4 48/5 51/1 52/20 53/25 63/19 70/1 70/19 70/20 73/3 74/16 75/1 77/1 78/4 78/11 78/12 78/15 79/4 79/7 79/7
prohibition [2] 30/21 31/20
prong [1] 33/3
proper [1] 43/9
proportions [1] 36/11
proposal [1] 39/14
propose [1] 39/7
proposed [1] 12/22
proposes [1] 10/18
proposing [2] 33/14 82/16
protection [3] 8/8 65/21 67/1
provide [30] 10/19 10/24 12/19 12/13 16/14 18/3 20/2 24/20 27/6 28/20 28/21 33/5 34/8 34/18 37/20 41/10 41/11 41/12 41/17 46/21 53/14 54/16 56/21 57/3 57/10 60/10 62/8 62/19 67/19 76/12
provided [6] 30/4 39/15 41/14 54/18 59/20 60/18
provider [4] 19/16 57/8 57/17 68/13
providers [8] 17/11 20/22 20/24 28/7 38/1 42/16 42/16 43/1
provides [2] 6/9 11/11
providing [11] 14/3 18/5 29/12 32/21 50/19 51/6 53/6 55/22 58/23 62/13 68/4
provision [1] 30/24
public [5] 34/18 35/3 52/21 67/11 77/1
purely [2] 38/25 53/19
pursuant [1] 77/24
pursuing [1] 17/21
put [9] 5/20 7/11 8/17 18/17 49/4 49/5 55/12 59/10 63/18
puts [3] 55/14 67/8 78/19
putting [1] 53/21

**Q**

qualified [1] 36/25
qualify [1] 6/1
question [22] 5/7 6/18 8/10 11/14 12/16 14/15 16/16 30/1 30/16 41/13 42/3 42/4 42/4 42/23 50/8 57/16 61/21 66/12 82/21 83/10 83/16 84/1

questions [5] 7/16 29/16 29/16 45/23 82/7
quick [2] 27/23 77/16
quite [1] 7/7
quote [1] 69/12

**R**

race [1] 37/6
radically [1] 76/17
radio [1] 22/17
Raimer [5] 2/8 3/19 3/22 27/20 82/10
raised [1] 46/7
raising [1] 15/19
ratification [1] 64/14
ratified [2] 63/11 65/24
ratify [1] 75/5
ratifying [2] 50/25 53/23
re [2] 26/6 26/12
reach [1] 85/20
reached [1] 21/12
read [2] 32/18 69/1
realities [1] 20/21
really [7] 22/9 33/13 50/20 56/2 60/9 70/7 85/6
Realtime [1] 2/16
reason [6] 7/1 23/24 24/4 30/17 31/7 57/22
reasonable [1] 11/19
reasonably [1] 35/20
reasoning [1] 16/6
rebuttal [1] 77/12
receipt [1] 44/10
receive [1] 10/12
received [1] 44/15
receiving [3] 44/12 44/20 83/19
recipient [4] 29/1 29/2 29/4 61/23
recipients [1] 61/23
recognize [1] 54/24
recognized [2] 52/1 52/17
record [2] 3/10 87/3
recorded [1] 2/20
redress [16] 9/8 19/8 24/9 33/12 35/15 35/17 38/20 39/18 42/9 49/25 52/13 54/9 54/12 54/14 54/15 65/20
redressability [14] 7/14 9/16 15/8 21/16 21/22 22/8 32/25 33/2 35/12 38/7 42/12 42/18 54/2 54/21
redressable [3] 49/21 63/6 65/14
redressed [3] 67/7 67/15 82/22
redressing [1] 19/11
reference [5] 25/23 26/18 57/21 71/13 83/10
refugee [7] 25/19 28/8 34/6 38/1 38/22 47/22 48/12

**R**

refugees [1] 33/20
regard [2] 10/22 78/9
regarding [4] 4/19 4/20
54/21 66/11
regardless [4] 20/13
77/24 84/24 85/16
region [1] 41/17
Registered [1] 2/15
regulated [1] 32/3
regulation [6] 6/19
30/3 30/18 32/18 50/9
50/11
regulations [8] 7/9
7/13 31/4 31/8 31/9
31/12 31/13 31/17
relationship [2] 11/12
18/23
relatively [1] 41/3
relevant [1] 43/11
relief [65] 9/23 9/24
9/25 10/8 10/9 10/15
10/16 10/18 16/9 16/11
16/11 16/17 17/2 17/3
17/4 17/7 17/20 18/2
18/3 19/7 25/4 27/5
27/10 33/3 33/14 33/23
34/5 35/11 35/12 36/25
38/13 39/6 39/8 39/20
40/1 40/6 40/12 42/6
46/22 47/13 53/1 54/7
54/16 54/18 55/11 56/3
67/18 77/24 78/21
78/22 78/23 79/2 79/13
80/7 81/5 82/12 82/16
82/18 83/3 83/6 83/7
83/8
religion [6] 57/14
65/24 66/3 66/7 67/2
77/8
religious [55] 15/14
15/16 15/19 26/1 26/1
28/9 29/11 32/6 32/13
32/19 32/21 36/7 36/9
37/12 39/2 39/4 39/13
48/3 48/9 50/4 51/12
52/19 53/23 54/19
56/17 56/18 63/15
65/25 66/4 67/9 68/3
69/4 69/14 69/17 69/21
69/24 70/2 70/4 70/14
70/20 70/24 71/1 71/14
71/17 72/1 72/2 72/4
73/6 74/5 75/3 75/6
75/11 76/25 77/7 82/20
religious-based [7]
50/4 53/23 54/19 65/25
67/9 75/6 76/25
rely [1] 31/5
remarks [1] 76/13
remedied [2] 66/16
66/19
remedy [16] 10/16
52/12 52/15 52/22
53/20 53/25 55/1 55/2
57/21 57/22 60/9 62/11
64/10 66/13 79/23 83/3

remedying [1] 83/2
remember [1] 27/23
remove [1] 53/10
removed [2] 43/8
83/15
removes [1] 82/18
Renal [1] 22/3
rendered [3] 20/15
20/18 80/11
repeated [1] 66/9
repeatedly [2] 24/2
83/10
report [6] 11/7 11/20
33/19 42/1 82/1 85/23
Reporter [4] 2/15 2/15
2/16 2/16
reports [3] 71/3 72/8
74/5
represent [1] 3/20
Republican [3] 16/9
16/10 43/21
Republicans [19] 16/6
16/20 22/2 22/19 23/5
36/18 39/22 39/24
40/20 43/4 43/10 44/11
44/23 45/15 51/21
51/24 51/25 52/14
78/20
request [2] 38/13 39/6
requested [4] 17/2
34/8 40/1 42/19
requesting [3] 38/10
42/22 82/12
require [4] 21/21 35/2
39/20 67/18
required [6] 31/9 35/7
56/16 57/8 57/10 81/2
requirement [1] 72/1
requiring [1] 82/19
Reservists [1] 73/15
reside [1] 15/4
resolution [2] 58/10
62/4
resolve [6] 12/24 13/6
60/6 80/2 85/4 85/13
resolved [2] 52/22
84/24
respect [4] 35/21 49/9
64/25 65/3
respectfully [1] 38/5
respond [4] 22/23
27/15 63/25 64/2
response [1] 22/16
responsibilities [1]
52/8
responsibility [2] 16/1
52/9
responsible [5] 49/23
52/6 52/11 64/8 64/10
responsiveness [1]
22/15
Restoration [1] 32/19
result [5] 16/5 26/19
55/18 59/25 63/5
resulted [1] 26/19
results [3] 24/19 26/10
61/7
retirement [1] 73/18

reverse [1] 5/3
reviewable [1] 31/14
reviewing [1] 81/15
right [51] 4/3 4/4 6/4
7/16 8/4 8/5 10/2 10/8
11/3 11/15 15/12 16/2
16/13 16/18 19/20
19/21 23/14 25/1 25/16
27/3 27/9 27/11 27/19
32/20 35/1 38/23 40/2
41/19 41/21 44/5 45/25
46/2 46/25 47/16 47/20
48/20 50/21 53/7 57/5
57/11 57/15 57/23 59/2
59/11 60/4 60/20 64/7
77/10 77/12 78/1 79/10
rightly [1] 7/1
rights [2] 77/3 77/9
rise [2] 3/2 86/1
RMR [2] 87/2 87/8
road [1] 10/20
role [1] 47/25
Room [2] 2/5 2/18
rule [10] 6/19 7/6 7/22
7/25 8/11 8/19 30/3
30/18 50/9 50/11
rules [2] 7/18 50/14
run [7] 10/1 34/25
46/16 57/23 69/19 70/2
81/8
running [3] 12/18
59/16 59/16

**S**

said [26] 18/1 29/9
35/22 36/3 36/19 38/14
45/5 45/19 47/9 47/10
51/23 54/1 54/2 67/23
67/24 68/12 69/12
69/16 74/10 74/21
82/23 84/2 84/5 84/9
84/25 85/2
same [52] 5/10 5/21
6/7 6/22 7/7 7/11 10/2
17/25 20/3 23/20 24/8
24/9 27/8 28/22 29/13
30/5 30/18 32/9 32/23
35/21 45/9 45/14 45/16
45/20 47/12 48/17
49/10 50/7 51/7 51/13
56/16 58/5 58/11 58/16
58/17 59/6 59/15 59/25
59/25 60/1 60/11 61/1
61/7 61/9 62/8 63/21
64/23 67/20 68/15
69/25 83/22 83/24
same-sex [34] 5/10
5/21 6/7 6/22 7/7 10/2
17/25 20/3 23/20 24/8
24/9 27/8 28/22 30/5
30/18 35/21 47/12
48/17 49/10 51/7 51/13
56/16 58/11 59/6 60/1
60/11 61/1 61/9 62/8
63/21 64/23 67/20
68/15 83/24
sand [1] 15/22 16/4

satisfied [1] 49/8
satisfies [2] 70/15 85/1
satisfy [2] 68/15 85/17
say [26] 8/23 8/25
11/19 13/9 17/25 25/2
28/17 29/15 34/10
36/11 37/10 38/5 50/16
51/17 58/1 58/8 58/9
59/9 59/14 68/12 69/2
69/10 71/20 72/6 79/19
84/10
saying [12] 13/25
15/23 31/8 37/5 37/12
55/10 56/14 57/21 60/1
62/1 62/4 74/20
says [7] 31/21 40/11
43/4 44/23 70/9 81/10
84/2
scenario [6] 19/1 22/23
56/13 57/7 58/18 60/13
scheme [9] 70/18 73/4
73/8 73/23 74/7 74/8
74/13 75/1 75/25
school [3] 69/19 71/16
71/19
schools [1] 69/14
scope [1] 14/22
screening [6] 47/19
57/2 58/19 60/13 60/18
62/14
seamless [3] 46/16
68/6 68/17
seamlessly [3] 49/12
52/23 55/24
seated [2] 3/3 3/4
second [6] 4/19 6/17
11/16 22/7 27/1 68/7
secondly [1] 70/11
section [1] 17/3
see [4] 13/23 14/5 43/5
43/12
seeing [1] 68/24
seek [4] 17/4 27/3 27/4
79/15
seeking [6] 17/20
38/15 38/16 53/1 78/13
78/23
seeks [1] 13/3
seem [1] 45/11
seems [2] 6/8 7/4 7/7
10/9 15/23 21/10 53/2
56/5 69/2 80/6 85/5
85/20
seize [1] 17/18
selection [2] 43/14
43/16
sense [7] 6/5 7/5 15/12
40/9 40/10 71/21 82/4
sent [2] 60/24 64/22
separate [7] 60/7 61/3
63/1 67/4 67/13 75/7
75/19
series [1] 4/20
serve [3] 5/10 47/25
77/5
service [6] 19/16 20/15
20/22 20/24 48/13 57/8

services [25] 11/11
12/9 12/13 14/3 14/13
17/10 20/18 28/8 30/4
32/21 33/7 34/8 37/21
38/1 41/12 41/14 41/17
51/6 55/23 68/4 78/10
79/6 79/9 80/8 80/10
Services' [1] 5/9
set [17] 6/9 16/5 25/4
25/5 28/4 33/13 34/14
47/15 47/16 47/20 48/7
48/24 49/1 49/2 50/15
73/24 76/19
sets [1] 4/15
setting [1] 19/2
sewed [1] 51/21
sex [35] 5/10 5/21 6/7
6/22 7/7 10/2 17/25
20/3 23/20 24/8 24/9
27/8 28/22 30/5 30/18
35/21 47/12 48/17
49/10 51/7 51/13 56/16
58/11 59/6 60/1 60/11
61/1 61/9 61/19 62/8
63/21 64/23 67/20
68/15 83/24
sexual [2] 59/6 61/19
shape [4] 34/15 36/22
43/20 43/24
sharing [1] 29/13
should [19] 4/11 9/1
9/2 15/14 20/9 25/2
36/12 41/8 46/11 47/11
58/4 58/20 58/21 61/14
69/18 72/9 80/18 80/20
80/23
shouldn't [3] 33/21
37/13 41/8
show [6] 23/5 33/11
35/16 39/16 41/3 42/8
showing [1] 21/21
21/24
shown [2] 8/22 23/2
shows [1] 23/5
sic [1] 59/4
side [2] 12/21 38/11
sides [3] 83/20 85/24
85/24
significantly [1] 79/17
silence [1] 22/17
similar [4] 38/2 42/16
43/23 47/25
similarly [1] 66/11
Simon [2] 36/19 40/20
simplistic [1] 61/8
simply [2] 24/13
32/10 38/2 43/8 44/19
46/13 54/18 57/23
59/21 65/15 68/5 83/21
sincere [1] 37/12
sincerely [4] 32/6
32/13 39/4 39/13
situation [6] 7/8 16/24
44/14 45/15 56/22
79/17
Sixth [3] 21/17 21/17
21/25
slow [1] 4/23

**S**

**small** [1] 81/22
**so** [125]
**so I think** [6] 5/17 12/6
17/5 18/22 22/5 82/18
**So it's** [1] 74/7
**softening** [1] 47/9
**sole** [2] 78/18 78/18
**solution** [2] 56/24
84/25
**some** [30] 6/5 7/4
11/22 14/20 17/17 20/4
22/10 23/4 23/6 28/5
29/12 29/15 33/6 33/18
33/22 40/7 40/18 41/2
43/5 46/7 50/10 53/6
53/15 53/16 70/14 82/4
83/2 84/1 85/5 85/16
**somehow** [6] 32/3
54/22 54/25 56/3 64/23
64/24
**someone** [1] 62/16
**something** [14] 8/20
11/18 13/7 20/18 23/4
32/11 33/16 36/19
36/25 37/20 41/18 45/6
84/11 85/15
**sometimes** [1] 29/22
**somewhat** [1] 79/25
**sorry** [6] 13/19 28/24
32/15 46/4 60/17 84/18
**sort** [40] 5/13 7/11 8/9
9/22 9/22 15/2 15/7
16/21 18/11 25/11
25/12 29/13 30/8 31/17
31/19 31/24 33/19 34/4
34/15 35/14 38/4 39/11
40/7 42/22 43/5 46/22
50/10 71/15 78/20 79/2
81/8 81/12 81/15 81/17
82/3 82/12 82/15 82/21
82/24 83/3
**sorts** [3] 31/23 34/3
44/4
**sought** [3] 15/1 30/20
77/24
**speak** [2] 23/16 29/20
**speaking** [1] 28/23
**specific** [22] 8/10
25/13 25/23 25/25
35/10 35/11 44/21 45/1
48/1 63/8 69/2 70/18
73/2 73/2 73/4 73/8
73/13 73/23 74/17 75/1
83/7 84/9
**specifically** [9] 23/19
65/13 69/3 69/11 71/9
72/24 72/25 73/21 74/1
**specificity** [2] 40/6
73/21
**specifics** [9] 29/13
33/15 35/15 39/7 39/10
39/14 39/15 39/25 40/4
**specify** [1] 35/24
**speculate** [8] 6/24 6/24
41/6 51/22 51/24 80/18
80/20 81/13
**speculation** [4] 20/8

**speculative** [4] 23/24
34/7 38/25 53/19
**spell** [1] 40/6
**spend** [4] 27/6 34/17
41/10 80/3
**spending** [7] 25/8
66/15 71/9 72/14 74/1
74/22 79/21
**spit** [1] 24/18
**spoke** [1] 25/11
**squarely** [1] 51/20
**stage** [5] 6/13 8/2
33/10 53/19 62/10
**stake** [1] 40/21
**stand** [2] 27/13 85/12
**standard** [2] 21/25
22/2
**standing** [54] 4/12
4/16 4/18 4/25 5/1 5/6
6/6 8/3 8/14 9/9 10/19
12/19 12/25 21/8 21/13
23/13 24/3 24/4 24/15
24/17 24/21 24/23 25/3
26/4 26/8 26/23 28/16
31/6 31/16 31/22 34/4
37/5 45/22 45/24 46/21
46/24 46/24 63/1 63/3
65/4 68/22 68/25 69/16
71/12 72/16 76/10
77/22 81/20 81/23
83/25 84/12 84/23
85/14 85/15
**start** [2] 46/10 46/11
**started** [2] 43/17 46/6
**state** [6] 20/24 21/9
42/25 47/24 74/5 78/19
**stated** [6] 51/4 53/19
63/13 65/13 66/24
73/16
**statement** [1] 69/20
**states** [4] 1/1 1/10 4/10
51/10
**stating** [1] 68/5
**status** [3] 63/2 67/13
85/23
**statute** [11] 26/16
26/19 34/16 69/6 69/13
72/5 73/2 73/13 74/11
74/14 84/12
**statutory** [10] 70/18
73/4 73/8 73/23 74/7
74/8 74/13 75/1 75/25
82/5
**stenography** [1] 2/20
**step** [8] 27/23 34/7
39/1 40/8 76/5 80/15
81/4 81/6
**steps** [4] 16/14 43/8
45/17 76/6
**stick** [4] 15/21 36/14
36/16 37/11
**sticking** [1] 16/4
**stigma** [6] 59/18 62/1
65/8 65/21 66/22 66/25
**stigmatic** [3] 82/21
82/24 83/1
**stigmatization** [2] 60/6

**stigmatize** [1] 49/3
**stigmatized** [5] 47/3
58/5 58/9 59/4 61/16
**stigmatizes** [1] 64/25
**stigmatizing** [2] 46/17
58/12
**still** [5] 13/15 14/6 41/1
61/20 82/11
**stole** [1] 24/23
**stop** [3] 53/21 67/8
85/8
**stopped** [1] 54/18
**stops** [1] 53/22
**straight** [1] 73/11
**straightforward** [1]
80/6
**Street** [4] 1/13 1/17 2/4
2/12
**strong** [1] 37/21
**structured** [1] 70/7
**stuff** [1] 34/18
**subgrant** [2] 28/12
63/20
**subgrantee** [6] 10/23
11/6 15/25 16/18 29/21
83/15
**subgrantees** [7] 4/21
10/14 11/1 11/12 17/5
23/10 29/12
**subgranting** [1] 51/11
**subjected** [1] 65/9
**subjects** [1] 65/2
**submission** [1] 27/13
**submit** [11] 31/18 32/5
38/11 43/8 44/17 44/18
45/9 45/14 66/4 68/10
83/21
**subsequently** [1] 31/5
**substantial** [1] 11/6
11/9 21/21 21/24
**substantially** [1] 27/1
**such** [10] 5/15 10/1
30/21 32/17 36/6 40/6
48/7 63/20 70/7 71/18
**suffered** [1] 83/4
**suffices** [1] 4/25
**sufficient** [2] 43/6
45/19
**suggest** [3] 38/25
43/20 43/24
**suggested** [3] 42/15
47/8 85/18
**suggesting** [2] 14/12
27/5
**suggestion** [2] 81/11
81/12
**suit** [1] 23/11
**Suite** [1] 1/18
**sum** [3] 73/11 73/13
75/19
**super** [1] 84/9
**superintend** [1] 79/3
**supplemental** [3]
77/19 78/6 79/17
**supposed** [3] 41/11
64/10 81/14
**Supreme** [8] 24/1

36/18 66/24 82/23
**Supreme Court** [7]
24/1 24/20 34/2 36/17
36/18 66/24 82/23
**Supreme Court's** [1]
24/15
**sure** [18] 5/5 18/10
21/14 23/15 27/17 29/3
29/14 30/12 33/1 33/8
36/5 36/8 37/8 62/24
68/19 68/23 77/14
82/12
**surely** [3] 20/21 69/12
72/17
**surprise** [3] 15/15 29/7
29/11
**surprised** [1] 37/15
**surreptitiously** [1]
83/23
**sweeping** [1] 83/6
**synonymous** [1] 71/17
**system** [7] 44/13 47/15
48/6 48/23 69/19 70/23
84/11

**T**

**table** [3] 3/25 82/14
82/16
**tacit** [3] 8/17 45/11
45/12
**tacitly** [1] 8/12
**tailored** [1] 83/7
**take** [24] 5/3 8/23 9/19
11/18 12/17 16/14
16/25 17/24 18/8 18/10
27/23 32/12 37/15 40/7
43/19 43/23 45/16
54/25 57/1 62/15 62/16
68/2 80/23 82/17
**taken** [1] 32/23
**takes** [1] 58/10
**taking** [2] 22/23 78/8
**talk** [1] 45/21
**talked** [2] 25/14 69/11
**talking** [5] 38/8 55/11
55/19 65/6 83/13
**tangible** [1] 68/11
**taught** [1] 24/20
**Tax** [1] 76/9
**taxing** [6] 25/8 71/9
72/13 72/24 73/25
74/22
**taxpayer** [29] 4/18 5/1
10/19 12/19 24/23 25/3
26/3 26/8 26/23 27/6
27/6 45/21 45/24 46/21
46/24 63/3 65/4 68/22
68/24 71/12 72/16
76/10 77/7 77/22 81/23
83/25 84/12 84/23
85/15
**taxpayers** [2] 63/2
67/14
**taxpayers'** [1] 66/5
**Taylor** [2] 1/16 3/14
**teaching** [1] 29/24
**teachings** [3] 24/15

**tell** [4] 9/7 20/1 21/11
46/11
**telling** [3] 50/25 61/2
61/3
**tensions** [1] 84/1
**tenuous** [1] 44/19
**term** [4] 6/20 12/13
71/16 78/7
**terms** [7] 7/18 14/16
15/17 25/11 25/16
46/12 60/9
**terrible** [2] 19/1 19/3
**test** [17] 36/19 50/4
53/23 54/19 55/15
65/25 67/9 71/6 71/7
71/8 72/21 72/23 75/6
75/7 76/5 76/6 76/25
**Texas** [8] 11/23 20/22
20/24 41/22 47/16
49/18 48/21 78/19
**text** [1] 82/6
**than** [14] 6/10 7/20
7/21 19/3 22/4 23/17
23/23 39/21 39/24 57/6
59/23 60/7 60/9 66/14
**thank** [15] 3/18 27/18
27/19 45/25 46/1 46/5
77/10 77/11 77/15 82/8
82/9 84/14 84/15 84/17
85/25
**thank you** [10] 3/18
27/18 45/25 46/1 46/5
77/11 77/15 84/15
84/17 85/25
**that** [660]
**that's** [77] 5/23 6/10
6/11 6/17 7/15 8/9
12/19 15/22 16/7 16/13
16/23 17/2 17/5 17/15
18/11 18/23 19/6 20/7
20/15 21/23 21/25
21/25 22/18 23/5 25/9
26/5 26/9 26/20 30/9
30/11 30/24 31/24 35/5
35/9 37/21 39/24 40/16
41/23 42/2 42/7 45/8
45/19 45/20 46/16
46/16 47/13 47/14 49/6
49/20 52/16 55/2 55/18
57/6 57/20 59/24 60/5
60/6 60/8 60/15 64/3
64/16 64/19 64/22
65/17 66/5 66/8 71/6
75/12 75/21 75/23
80/13 80/17 80/21 81/2
81/17 81/18 82/5
**their** [58] 9/24 11/25
12/2 12/24 14/17 15/13
15/13 15/19 23/18
28/14 31/3 31/5 31/16
34/3 35/16 38/12 38/20
39/4 39/16 40/11 40/16
42/8 44/18 44/22 48/24
50/3 52/13 55/24 56/17
56/18 56/24 57/14 59/6
59/7 60/22 61/2 62/20

**T**

**their...** [17] 63/2 65/14 65/16 65/20 65/22 66/19 67/5 67/13 68/4 68/10 68/17 77/2 77/5 79/23 82/16 82/20 83/5
**theirs** [1] 36/4
**them** [31] 9/5 9/25 10/7 11/22 14/20 15/10 16/16 22/22 23/17 27/4 33/22 37/23 41/3 41/22 42/15 47/4 47/21 51/1 58/1 58/6 61/3 64/25 65/2 65/9 66/4 70/3 76/25 79/11 82/19 83/3 85/1
**themselves** [1] 26/3
**then** [40] 4/19 6/17 7/14 8/9 10/3 10/5 12/16 15/25 16/18 19/17 20/1 20/4 22/17 25/12 25/24 27/4 29/12 31/4 38/16 42/20 46/20 51/20 51/21 52/21 54/5 55/15 57/2 58/22 58/23 60/8 60/8 60/14 60/23 62/4 70/11 74/6 75/4 80/8 83/9 83/25
**theories** [1] 4/16
**theory** [7] 4/18 7/11 10/19 23/10 27/9 63/22 81/18
**there** [110]
**there's** [77] 4/17 4/19 6/6 8/16 8/19 9/18 11/10 11/17 11/18 14/13 15/17 17/9 21/22 21/22 23/23 25/15 25/20 25/22 25/25 29/17 29/21 29/22 30/15 31/1 31/7 31/20 31/22 32/24 32/25 33/22 35/17 36/21 36/25 37/18 38/2 38/5 38/24 39/1 39/16 41/2 41/18 41/22 42/7 42/9 43/5 44/25 47/8 48/25 54/17 56/7 56/8 57/13 59/20 60/25 61/22 62/12 63/23 63/23 64/2 68/9 70/17 71/4 71/12 72/20 74/13 76/9 76/10 76/21 78/4 78/4 79/4 81/1 81/11 81/12 83/12 84/6 84/13
**therefore** [3] 4/13 9/3 22/8
**these** [33] 5/11 8/18 10/6 10/12 11/11 12/9 13/4 17/9 17/11 17/19 20/19 23/23 33/3 35/3 36/4 37/5 44/4 47/17 47/18 50/19 65/5 67/4 69/1 70/25 75/1 75/2 78/10 78/22 79/6 79/8 82/3 83/19 85/8
**they** [120]
**They'd** [1] 52/23

they're [33] 9/20 12/2
9/13 16/14 17/20 17/21
34/20 35/7 38/10 38/14
40/10 41/10 41/16
47/19 49/22 49/23
49/25 50/14 50/16
50/17 52/5 52/11 52/12
62/19 64/23 64/24
75/24 76/23 78/14
78/23 82/17
**they've** [12] 10/16 15/1
19/4 23/18 23/19 34/16
42/17 67/14 70/11
73/20 82/15 85/2
**thing** [5] 57/20 64/3
64/16 69/25 82/13
**things** [4] 39/11 53/2
80/2 85/12
**think** [85] 5/17 6/23
7/20 8/15 8/16 8/18
9/10 9/15 10/17 10/19
11/10 12/6 13/1 13/13
14/22 14/24 14/24 15/1
15/5 15/6 16/4 16/18
16/25 17/5 17/6 18/7
18/22 19/5 20/5 20/9
22/1 22/4 22/5 23/4
24/1 24/10 24/16 24/25
24/25 25/10 25/14
25/17 25/19 25/20 26/5
26/12 26/24 30/9 30/13
31/7 31/10 37/4 37/18
38/9 38/17 39/23 39/24
40/5 41/23 42/23 43/9
43/23 45/20 56/19
57/16 71/4 71/5 71/15
77/22 78/19 79/24
80/17 80/20 80/21 81/1
81/3 81/16 81/18 82/13
82/18 83/21 84/3 84/20
85/3 85/10
**thinking** [2] 50/10
56/20
**third** [2] 21/20 54/1
**Third Circuit** [1] 54/1
**this** [106]
**those** [43] 7/15 10/15
10/24 11/12 11/13 12/1
12/3 13/6 14/13 15/8
20/18 21/21 24/16 28/5
29/13 29/18 31/8 31/9
31/23 34/3 34/6 35/15
38/18 39/11 39/15 40/4
40/22 40/22 40/24 41/1
41/14 48/5 50/22 52/7
67/7 67/14 70/19 73/9
73/10 74/18 75/10 76/1
81/19
**though** [7] 9/15 15/5
58/3 64/19 65/13 74/19
79/16
**thought** [3] 14/12
27/22 47/8
**thoughts** [1] 9/22
**thousands** [1] 38/22
**threatens** [1] 76/17
**three** [2] 11/24 85/24
**through** [37] 11/25

16/15 16/15 16/17 17/4
33/5 33/6 34/11 49/16
51/19 53/4 56/4 57/17
58/1 58/16 58/20 59/5
59/11 59/15 59/24 60/2
60/3 61/3 62/2 62/20
70/10 74/23 80/5 85/3
85/8 85/9 85/19 85/19
**thunder** [1] 24/23
**tie** [1] 83/2
**tied** [3] 74/7 75/24
82/25
**time** [2] 68/24 83/22
**Timothy** [1] 2/8
**titled** [1] 87/4
**today** [1] 85/22
**told** [3] 23/19 53/13
64/6
**tomorrow** [1] 68/13
**too** [2] 43/9 44/19
**took** [1] 84/18
**top** [1] 56/20
**tout** [1] 33/19
**towards** [1] 22/22
**traceability** [10] 15/8
21/16 22/8 23/2 36/19
38/6 42/23 43/9 43/10
83/9
**traceable** [6] 36/20
43/13 63/9 63/9 83/17
83/17
**track** [1] 74/21
**transcript** [3] 1/9 2/20
87/3
**transcription** [1] 2/20
**treated** [4] 52/25 58/5
61/5 68/18
**treatment** [7] 7/7 60/25
62/19 65/10 65/22
66/23 68/17
**treats** [1] 49/3
**true** [3] 17/15 70/6
78/18
**truth** [1] 56/9
**try** [2] 63/16 85/20
**trying** [2] 7/16 31/11
**turn** [3] 14/20 37/10
61/10
**turned** [2] 22/9 52/24
**turning** [1] 37/1
**turns** [4] 28/6 39/13
42/5 45/13
**two** [22] 4/15 7/15 9/22
10/15 11/23 11/24
13/10 25/11 43/8 48/2
53/2 61/3 61/22 63/8
63/23 63/23 67/4 71/7
78/4 78/12 83/15 85/22
**two-part** [1] 71/7
**type** [1] 18/18
**types** [1] 63/23

**U**

**U.S** [6] 2/3 2/17 3/20
27/21 28/5 37/25
**UAC** [4] 20/12 41/23
78/5 78/7

16/15 16/15 16/17 17/4
33/5 33/6 34/11 49/16
ultimately [3] 52/11
52/12 79/20
**unaccompanied** [11]
12/10 13/5 17/11 20/15
25/18 28/1 41/11 47/22
48/17 73/7 80/9
**uncompanied** [1]
41/13
**unconstitutional** [1]
18/21
**under** [15] 5/11 20/12
23/8 23/9 23/10 25/8
31/10 32/21 41/16 66/8
66/25 67/3 78/10 79/6
80/1
**underlying** [1] 22/24
**understand** [12] 12/5
15/11 16/23 17/23
18/14 34/11 61/6 63/22
79/18 79/19 79/22
85/15
**understanding** [3] 6/6
13/17 70/22
**understood** [3] 14/10
35/7 69/13
**unequal** [2] 65/9 66/23
**UNITED** [3] 1/1 1/10
4/10
**United States** [1] 4/10
**universe** [1] 76/21
**unlawful** [3] 7/23 8/21
17/18
**unless** [3] 27/7 37/23
82/7
**unlikely** [1] 56/6
**until** [1] 43/19
**unusual** [1] 45/4
**unwilling** [1] 40/25
**unworthy** [1] 64/23
**up** [17] 12/15 28/4
34/14 37/5 38/5 47/15
47/16 47/20 48/7 48/24
49/1 49/2 50/15 54/21
73/24 75/14 81/9
**upon** [6] 10/13 29/24
37/6 37/7 47/12 69/16
**URM** [7] 41/20 48/2
48/8 73/3 78/5 78/9
78/17
**us** [7] 1/12 35/14 40/12
40/13 45/6 45/6 64/9
**usage** [3] 70/19 73/5
75/5
**USCCB** [33] 10/23 11/2
11/11 17/4 19/10 47/17
48/4 48/20 49/9 50/4
51/9 51/17 53/5 53/6
53/11 53/14 55/22
56/15 57/7 57/22 58/13
63/12 63/13 63/18 68/2
71/1 77/6 78/18 82/17
82/19 83/19 83/24 85/9
**USCCB's** [4] 4/21
11/13 51/12 64/14
**usdoj.gov** [2] 2/6 2/7
**use** [9] 50/4 53/23
54/19 65/25 67/8 75/5

9/21 75/24 77/6
**used** [2] 37/2 70/20
**uses** [1] 76/2
**using** [1] 72/18

**V**

**various** [1] 29/23
**versus** [7] 3/7 25/5
25/6 26/10 30/5 59/21
81/15
**very** [12] 7/1 25/4
39/13 39/25 41/2 42/5
67/17 73/8 73/23 74/17
82/22 84/18
**Vesey** [1] 2/12
**via** [1] 63/6
**viable** [1] 83/2
**view** [6] 6/18 6/18 23/8
35/19 58/12 59/18
**vindicate** [1] 77/2
**violates** [2] 8/13 30/18
**violating** [5] 6/19 39/4
50/22 50/22 51/12
**violation** [9] 8/7 8/8
9/19 17/12 39/12 56/17
79/21 80/4 82/20
**violative** [1] 7/17
**virtue** [5] 5/20 14/17
**void** [1] 20/4
**vs** [1] 1/5

**W**

**walk** [12] 46/14 47/11
48/8 48/24 55/15 55/23
58/4 59/2 59/24 60/21
61/15 65/15
**walking** [1] 62/20
**want** [11] 5/1 9/4 37/23
40/12 47/13 64/3 64/17
68/19 75/16 76/10
85/10
**wanted** [5] 10/6 48/4
77/18 78/2 79/1
**wants** [1] 78/24
**was** [81] 7/9 7/11 7/13
7/14 7/22 7/23 10/4
12/14 17/17 17/22 18/1
21/12 21/16 21/19
22/10 22/16 22/20
22/20 22/21 22/22
22/25 23/1 23/1 26/13
26/14 26/16 27/5 28/12
28/17 32/12 33/11
33/25 37/6 37/7 39/20
42/18 42/19 43/12 45/9
45/14 45/15 45/18
46/22 47/21 49/16
53/18 54/22 55/11 58/2
59/14 62/3 65/23 69/19
69/20 69/21 70/21
71/16 71/25 72/18 73/5
73/7 73/8 73/11 73/11
73/13 73/17 73/17
73/21 73/24 74/14
74/20 74/21 74/24
74/25 75/9 81/23 82/1
82/2 82/3 83/10 83/22
**Washington** [5] 1/5

Case 1:18-cv-00373-ABJ   Document 89-4   Filed 08/31/20   Page 100 of 160

**W**

**Washington... [4]** 1/13 2/5 2/9 2/18
**wasn't [3]** 26/18 44/12 73/12
**way [38]** 5/20 10/1 12/18 18/17 20/4 22/4 30/7 30/18 32/9 33/4 34/15 36/7 36/22 37/1 39/20 43/20 43/24 47/15 47/16 47/20 48/6 48/23 49/2 50/15 50/23 51/23 53/7 55/16 57/23 69/14 69/18 70/7 73/12 80/21 81/2 81/6 82/22 84/24
**ways [1]** 67/17
**we [56]** 3/6 3/20 4/6 9/1 9/5 11/4 11/5 12/16 15/24 16/13 16/25 19/21 21/4 23/19 24/18 27/23 29/10 30/13 34/10 36/3 36/6 36/11 40/3 40/7 40/12 43/23 44/14 46/23 49/6 51/4 51/5 53/20 54/5 54/10 54/12 54/13 55/13 55/14 55/14 55/20 58/1 62/7 68/1 68/3 72/9 73/2 73/5 73/23 75/8 75/12 76/5 77/20 77/22 78/25 82/13 85/10
**we believe [1]** 9/1
**we will [4]** 9/5 23/19 29/10 36/3
**we'd [2]** 13/1 58/1
**we'll [2]** 4/7 85/16
**we're [21]** 4/4 8/2 13/15 18/25 19/22 37/13 44/8 46/13 47/1 49/22 52/3 52/4 52/4 53/10 56/3 56/11 57/19 68/5 72/11 83/5 83/13
**we've [2]** 16/5 25/14
**website [1]** 36/11
**weeks [3]** 13/10 85/12 85/22
**welfare [2]** 70/1 76/17
**well [32]** 5/14 5/19 6/1 6/11 7/20 8/15 9/10 9/15 10/17 11/14 11/14 15/25 16/7 16/25 18/7 18/17 19/18 20/5 22/1 23/17 24/25 26/10 27/3 30/23 33/17 40/12 45/22 61/12 68/22 70/17 71/19 81/10
**were [49]** 7/9 7/12 9/9 14/12 17/16 19/9 21/5 21/9 23/24 29/12 37/19 38/8 38/19 40/4 40/21 40/24 42/14 42/15 43/16 44/12 45/16 49/4 52/14 54/20 56/16 57/20 57/25 58/8 60/13 60/14 61/7 64/6 66/13 70/5 70/21 70/24 70/24 70/25 72/4 72/19 74/12

75/10 79/20 79/20 83/23 84/9
**weren't [2]** 29/13 49/5
**West [1]** 1/17
**what [79]** 7/5 9/13 9/18 9/24 10/5 10/5 11/20 12/22 13/19 15/23 16/13 16/14 16/22 17/6 17/7 17/11 19/6 19/7 19/17 22/18 29/9 29/15 29/24 33/14 35/15 35/21 37/12 38/10 39/7 40/4 40/9 40/10 40/15 41/6 43/4 45/4 46/12 46/13 47/9 49/9 50/10 50/23 51/14 53/13 53/20 54/11 55/10 55/18 57/6 57/18 58/18 59/8 59/9 61/19 61/19 62/3 63/17 70/5 70/17 71/20 72/6 72/8 72/9 72/21 73/25 74/24 75/12 75/22 75/23 76/2 79/20 81/14 81/18 84/2 84/2 84/20 85/11 85/18 85/22
**what's [7]** 6/2 16/19 26/20 48/9 49/6 64/21 78/3
**whatever [3]** 58/4 59/9 85/23
**whatsoever [1]** 28/2
**when [15]** 11/18 32/13 32/17 32/21 37/1 41/4 43/6 45/18 50/16 53/18 63/11 63/25 64/5 65/24 66/2
**where [23]** 7/8 7/22 11/11 11/11 15/4 17/22 20/17 21/19 32/5 38/4 43/1 43/2 57/3 57/3 60/23 69/22 70/8 71/5 80/11 80/17 82/1 85/7 85/12
**whereas [3]** 37/24 54/3 61/2
**whether [24]** 5/14 6/6 7/17 13/10 19/15 29/20 33/5 34/19 35/12 36/19 39/11 41/13 42/20 43/5 43/12 47/23 48/16 81/13 82/21 83/16 85/2 85/7 85/13 85/18
**which [65]** 5/8 7/12 10/11 10/25 11/19 12/15 12/22 12/23 13/10 14/15 15/23 16/17 17/20 17/23 21/6 22/15 23/8 23/24 25/1 27/5 28/14 29/19 30/16 32/19 32/24 33/18 37/25 41/20 44/14 50/8 51/10 51/19 52/1 52/17 53/13 55/10 55/11 55/13 55/14 55/14 55/22 56/4 56/14 57/7 57/7 57/17 58/24 59/23

65/9 71/11 71/12 73/5 74/8 75/1 75/3 76/22 78/10 78/12 78/19 80/4 81/23
**while [4]** 24/7 54/5 55/20 78/24
**White [1]** 72/18
**White House [1]** 72/18
**who [21]** 9/4 9/8 10/6 15/18 23/12 23/17 29/12 42/22 49/23 49/25 50/5 58/23 58/24 59/1 60/14 60/17 60/22 61/19 65/25 67/9 70/12
**who's [2]** 48/20 62/20
**whoever [3]** 29/1 58/2 61/17
**whole [3]** 32/1 47/19 65/19
**why [27]** 4/6 7/15 7/24 8/10 8/14 9/21 10/15 11/18 11/24 12/1 12/16 18/2 18/14 18/15 18/17 18/20 19/13 33/3 34/9 34/10 49/20 51/20 61/6 61/24 65/14 72/15 79/23
**wide [1]** 70/16
**will [16]** 3/16 8/3 8/6 9/5 12/11 15/17 23/19 29/10 29/10 36/3 36/6 41/9 62/7 77/4 81/14 85/17
**William [4]** 2/15 87/2 87/7 87/8
**willing [1]** 34/7 39/1 62/19
**within [2]** 51/21 84/5
**without [10]** 9/7 24/9 49/12 54/7 54/8 55/24 56/11 59/3 66/18 68/10
**woman [1]** 36/10
**word [1]** 29/2
**words [9]** 7/25 13/9 16/10 36/4 41/8 44/8 61/8 61/22 82/16
**work [5]** 14/23 33/20 34/11 34/15 84/4
**worked [1]** 59/12
**working [1]** 48/6
**workings [1]** 56/23
**worry [1]** 84/3
**Worth [12]** 4/22 10/23 12/13 14/17 14/17 14/19 28/12 41/14 53/15 68/13 80/19 80/24
**would [155]**
**wouldn't [20]** 6/25 18/2 18/12 19/11 20/4 41/1 47/5 49/6 49/16 54/17 55/1 56/2 60/15 65/15 72/15 77/20 78/25 80/9 80/14 81/5
**wrap [1]** 75/14
**Wrestling [1]** 22/3
**Wright [1]** 82/23

**watten Page [1]** 27/10

**X**

**X particular [1]** 40/13

**Y**

**yanking [1]** 82/19
**Yeah [2]** 40/17 55/6
**year [2]** 74/4 74/4
**years [3]** 83/20
**yes [6]** 3/17 15/12 30/13 49/13 49/14 66/5
**yesterday [1]** 21/4
**York [1]** 2/13
**you [136]**
**you know [6]** 11/10 11/20 13/14 15/5 61/12 77/20
**you're [28]** 8/2 13/25 15/12 15/23 16/18 17/14 20/21 28/25 29/24 31/8 31/11 31/18 33/14 42/24 43/6 53/1 55/10 55/18 57/18 60/1 61/2 61/3 61/20 63/23 64/8 64/9 67/24 68/25
**you've [18]** 11/20 11/23 12/22 13/10 23/13 25/14 31/10 32/23 43/1 43/2 44/15 47/9 47/10 53/13 59/24 67/23 67/24 85/13
**your [77]** 3/23 4/8 6/1 6/18 8/17 8/25 10/18 11/20 17/15 19/1 21/14 23/8 23/10 23/20 24/23 25/22 27/18 29/5 31/18 33/4 33/9 33/9 34/6 34/13 35/11 35/19 35/20 37/17 38/9 39/20 40/18 41/6 42/6 42/10 45/21 46/5 46/18 47/8 47/10 47/14 48/15 50/8 51/4 52/1 52/17 53/18 55/20 58/8 58/12 58/13 58/18 59/18 59/18 60/8 61/10 61/14 62/1 63/25 64/6 64/15 65/4 65/4 65/12 66/13 67/22 67/23 67/24 68/14 68/21 76/9 77/11 77/13 82/9 82/11 83/12 84/15 84/17
**Your Honor [34]** 3/23 4/8 8/17 10/18 17/15 19/1 21/14 27/18 29/5 31/18 33/9 33/9 34/6 34/13 37/17 38/9 45/21 46/5 47/14 48/15 51/4 52/1 52/17 53/18 55/20 61/14 64/15 68/21 77/11 77/13 82/9 82/11 83/12 84/15
**Your Honor's [3]** 35/11 40/18 42/10
**yourself [1]** 34/12
**yourselves [3]** 3/10
**youth [3]** 20/15 73/7

**youths [3]** 12/10 13/5 17/11

**Z**

**Zaremba [4]** 2/15 87/2 87/7 87/8
**zoos [1]** 7/12