# EXHIBIT 7

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-------------------------------------------X
FATMA MAROUF and BRYN ESPLIN,
a Married Couple,

PLAINTIFFS,

-against-

Case No.:
1:18-cv-378
(APM)

ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

DEFENDANT.
-------------------------------------------X
DATE: December 7, 2020

TIME: 9:05 A.M

REMOTE VIDEOTAPED DEPOSITION of KATHRYN KUENNEN, taken by the Plaintiffs, pursuant to a notice and to the Federal Rules of Civil Procedure, held remotely via Zoom Videoconference, before Suzanne Pastor, a Notary Public of the State of New York.

A P P E A R A N C E S:
(All appearances via Zoom Videoconference)

HOGAN LOVELLS U.S., LLP
Attorneys for the Plaintiffs
609 Main Street, Suite 4200
Houston, Texas 77002
BY: RUSSELL WELCH, ESQ.
713.632.1437
russell.welch@hoganlovells.com
AND: MIKE GENDALL, ESQ. (D.C. Office)
202.637.6458
mike.gendall@hoganlovells.com
AND: KATHERINE CULORA, ESQ. (D.C. Office)
202.804.7890
katherine.culora@hoganlovells.com

-and-

CAMILLA B. TAYLOR, ESQ.
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
65 E. Wacker Place, Suite 2000
Chicago, Illinois 60601-7245
312.663.4413
ctaylor@lambdalegal.org

-and-

KENNETH DALE UPTON, JR., ESQ.
AMERICANS UNITED FOR SEPARATION OF
CHURCH AND STATE
1310 L. Street N.W., Suite 200
Washington, D.C. 20005
202.466.3234
upton@au.org

U.S. DEPARTMENT OF JUSTICE - CIVIL DIVISION
Attorneys for the Federal Defendants and
the Witness
1100 L Street, N.W.
Washington, D.C. 20005
BY: JASON LYNCH, ESQ.
202.514.1359
jason.lynch@usdoj.gov

APPEARANCES OF COUNSEL (Continued)

JONES DAY, LLP
Attorneys for the Defendant
UNITED STATES CONFERENCE OF CATHOLIC
BISHOPS
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219-2514
BY: JOHN D. GOETZ, ESQ.
412.394.7911
jdgoetz@jonesday.com
AND: JOSHUA R. SALLMEN, ESQ.
412.394.7978
jsallmen@jonesday.com
AND: JASON E. CELLIER, ESQ. (Columbus Office)
614.281.381
jcellier@jonesday.com
AND: DAVID T. RAIMER, ESQ. (D.C. Office)
202.879.3890
dtraimer@jonesday.com

ALSO PRESENT:

KEVIN LAKE, ESQ., HHS

DARRAK LIGHTY, Videographer,
US LEGAL SUPPORT

subrecipient, but I would imagine that that agency was already providing at that time domestic foster care services and therefore had the expertise in that area of laws working with refugee populations, which were critical to having the skill set needed.

Q. And I assume you understand that CCFW is not providing those services in the Dallas/Ft. Worth area today, right?

A. Yes, correct.

Q. USCCB is now partnering with Catholic Charities Dallas for those services, right?

A. Yes.

Q. And if I say CCD, just to clarify at any point, that's what I'm referring to, Catholic Charities Dallas. Do you understand that?

A. Yes.

Q. Is there any difference in the services that CCFW -- or that CCD now provides that CCFW used to provide?

MR. GOETZ: Object to the form of the question.

A. Yes, I have.

Q. What is this document?

A. This is the application from USCCB MRS, Migration and Refugee Services, to -- basically an application to serve as the replacement designee for the URM program in Texas.

Q. And is this the application for fiscal year 2017?

A. Yes.

Q. Were you involved in the creation of this document at all?

A. No, I was not.

Q. At that time you were working in the -- sorry, I wrote it down but I don't have it in front of me. You were working in a different area than you are now, right?

A. That's correct, yes.

Q. Okay, but you understand this application was prepared by Krystin Peck, correct?

A. Yes.

Q. If you could turn to page 4 of this document, the Bates number at the

bottom right is HHS 17244.
A. Okay.
Q. At the top of that page, two lines down it says, "In addition, USCCB/MRS must ensure that services provided under this application are not contrary to the authentic teaching of the Catholic Church." Do you see that sentence there?
A. Yes.
Q. Why does USCCB include this language in its grant application?
A. USCCB provides services that are consistent with our sincerely held religious beliefs, and that's why this sentence was included here.
Q. Did anyone in the federal government ask USCCB to include this language, or was that something that USCCB puts in on its own?
A. We put that in on our own.
Q. Obviously, one reason that you put that in there is because you want the federal government to know that that's how you will run the program, right?
A. That's correct.

government before, right?

A. Yes.

Q. And in the operation of those programs previously, USCCB took the same approach as it had before, that USCCB was not going to provide services in a manner that was contrary to its religious beliefs, right?

MR. LYNCH: Object to form.

MR. GOETZ: Same objection.

A. Yes, services previously were also provided consistent with ACF's policy on grants to faith-based organizations.

Q. I guess what I'm getting at is, this was not news to the government at this time, that USCCB would also do that with the URM program.

MR. LYNCH: Object to form.

MR. GOETZ: Object to form.

A. No, it shouldn't have been.

Q. The four lines from the bottom of that top paragraph, it says "In instances where clients' needs or circumstances may require services including referrals that USCCB cannot

provide due to its religious convictions, USCCB/MRS will notify HHS/ORR."

Can you just explain to me what that notification process is?

A. The notification would be a direct communication to our ORR project officer to inform that a child or client had requested a service that we could not provide and we would immediately notify ORR via that communication that -- of the situation so that ORR could take action from there if they choose to do so.

Q. What happens after USCCB sends this notification?

A. USCCB takes -- I mean, we take no further action. At that point we follow the obligation to report and notify. And that's what we do. And at that point any further action is a decision of ORR.

Q. I see. The beginning of that sentence says "in instances where a client's needs or circumstances may require services," who is the client in that sentence?

A. The clients are the children

that we provide services for. They are the direct beneficiaries of our program.

Q. So the notification that you would send is tied specifically to the needs or circumstances of a child and no one else?

A. Yes, in that we -- the clients of our services and programming are the children that we care for. So in developing this language here, that was our understanding and interpretation, that the "client" refers to the children receiving the services.

Q. So to clarify that, USCCB did not understand this provision to require it to notify HHS or ORR if it had a religious objection to an interaction with a prospective foster parent applicant, correct?

MR. GOETZ: Object to the form of the question. Asked and answered.

MR. LYNCH: Same objection.

A. So the language was developed primarily to address issues of client request for services such as abortion and

contraception, which are not consistent with our religious beliefs. And those were the instances that really led to the development of this language.

And so I think I'm answering your question correctly in that the clients refer to the children in care. That is our interpretation and understanding of this language. USCCB is certainly prepared to revisit the scope of that definition and comply with the notification requirements as necessary to ORR.

Q. So at least in 2017 then, setting aside revisiting this, I just want to focus on 2017, at least in 2017 USCCB did not understand this provision to mean that USCCB should notify HHS or ORR if it had a religious objection to working with a prospective foster parent applicant.

MR. GOETZ: Object to the form of the question. Asked and answered three times.

MR. LYNCH: Same objection.

A. Correct.

Q. At the end of this paragraph

of that definition and expand the requirement notification -- or the notification requirement rather.

But that was our understanding at the time of developing this language here as it relates to the children for whom we provide services.

Q. If USCCB has a religious objection to working with a same sex couple who is applying to be foster parents, is there any other provision in this grant application that would require USCCB to notify the government of that objection?

A. No. It's never happened before, and therefore the language was crafted not explicitly to address that. And I don't believe there's any explicit language on that in this application.

Q. Ms. Kuennen, I'm going to drop another document for you in the chat here. This one's titled tab 4. We'll introduce it as Exhibit 4.

(Whereupon, HHS 14638 through 15641 was marked as Kuennen Exhibit 4 for identification as of this date by

of the question. Asked and answered.
A. So we would not be able to -- can you repeat the question? I'm sorry.
Q. Yeah, if a child had indicated that they want to be placed with a same sex couple, USCCB would have a religious objection to doing that, correct?
MR. GOETZ: Objection, hypothetical, lacks foundation, asked and answered.
A. Yes, in that that's not consistent with our sincerely held religious beliefs.
Q. And USCCB as a factual matter has never received a preference like that from one of the children within its care?
MR. GOETZ: Objection; scope, asked and answered at least three times before now.
A. Yes, that's correct.
Q. Are you aware of a child within California who was placed with same sex couple parents --
MR. GOETZ: Objection. Outside the scope of the deposition and not

DECLARATION

I hereby certify that having been first duly sworn to testify to the truth, I gave the above testimony.

I FURTHER CERTIFY that the foregoing transcript is a true and correct transcript of the testimony given by me at the time and place specified hereinbefore.

KATHRYN KUENNEN

Subscribed and sworn to before me

this 23 day of Jan. 2021.

NOTARY PUBLIC

CRYSTAL MARIE SPERLING
Notary Public
Montgomery County
Maryland
My Commission Expires Mar. 21, 2021

C E R T I F I C A T E

STATE OF NEW YORK )
: SS.:
COUNTY OF ALBANY )

I, SUZANNE PASTOR, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn and that such examination is a true record of the testimony given by that witness.

I further certify that I am not related to any of the parties to this action by blood or by marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this day, December 23, 2020.

Suzanne Pastor
___________________________
SUZANNE PASTOR

**ERRATA SHEET TO THE DEPOSITION
TRANSCRIPT OF KATHRYN KUENNEN
Deposition Date: December 7, 2020**

***Fatma Marouf and Bryn Esplin v. Alex Azar*, Case No. 1:18-cv-378**

I, Kathryn Kuennen, do hereby certify that I have read all questions propounded to me and all answers given by me on the 7th day of December, 2020, and the following corrections should be made in the transcript:

| Page:Line | From: | To: | Reason |
|---|---|---|---|
| 5:3 | his | her | Correction |
| 5:22 | K E U N N E N | K U E N N E N | Misspelled name |
| 10:10 | Settlement | Resettlement | Correction |
| 18:24 | Krystin | Kristyn | Misspelled name |
| 21:24 | Children | Children's | Correction |
| 25:1 | "there a" | "there is a" | Correction |
| 25:17 | migrant | migrants | Correction |
| 25:18 | asylumees | asylees | Correction |
| 33:4 | laws | law | Correction |
| 36:2 | agreement | agreements | Correction |
| 42:21 | Krystin | Kristyn | Misspelled name |
| 56:19 | reference | preference | Correction |
| 63:11 | Krystin | Kristyn | Misspelled name |
| 64:1 | URB | URM | Misspelled name |
| 64:10 | Krystin | Kristyn | Misspelled name |
| 67:15 | clients' | client's | Correction |
| 77:22 | recipient | subrecipients' | Correction |
| 85:3 | beliefs | belief | Correction |
| 88:12 | has | had | Correction |
| 88:16-18 | obtained information about UCF service which contradicts Catholic teaching | obtains information about youth who need a service which contradicts Catholic teaching | Correction from Exhibit 7 language |
| 89:18 | subrecipients | procedures | Correction |
| 90:6 | interview | interviews | Correction |
| 90:22 | and that would | and that would have | Correction |

| | | | |
|---|---|---|---|
| 93:18 | continuing mechanism | Continuing quality improvement mechanism | Correction |
| 99:9 | so | and | Correction |
| 108:23 | include | includes | Correction |
| 114:12 | recruitments | recruitment | Correction |
| 117:16 | parent | parents | Correction |
| 123:15 | Danielle Mullooly | Danielle Bulaich | This may be a typo or possibly the name was misread during the deposition; correction based on names as written in Exhibit 8, as referenced |
| 126:2 | Ms. Mullooly | Ms. Bulaich | This may be a typo or possibly the name was misread during the deposition; correction based on names as written in Exhibit 8, as referenced |
| 129:8 | USCC's | USCCB's | Misspelled name |
| 135:22 | applications | application | Correction |
| 143:23 | Clients are the services | Clients are the recipients of the services | Correction |
| 144:13 | read the interpretation of | reinterpret | Correction |
| 159:22 | Subrecipient | the subrecipient | Correction |
| 163:8 | notified | notify | Correction |
| 169:2 | Krystin | Kristyn | Misspelled name |
| 169:16 | Krystin | Kristyn | Misspelled name |
| 169:22 | Krystin | Kristyn | Misspelled name |
| 172:5 | Krystin | Kristyn | Misspelled name |

Subject to the above corrections, my testimony reads as given by me in the foregoing deposition.

AFFIANT SAYETH FURTHER NOT.

SIGNED at PNC Bank, Maryland., this 23rd day of January, 2021.

Kathryn Kuennen

STATE OF Maryland )
)
COUNTY OF Montgomery )

Sworn to and subscribed before me this January 23, 2021

Notary Public in and for the
State of Maryland

Commission expires: March 21, 2021

CRYSTAL MARIE SPERLING
Notary Public
Montgomery County
Maryland
My Commission Expires Mar. 21, 2021